1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GIDDENS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUISUN, ET AL.,<br><br>Defendants. | No.  2:14-cv-0943-TLN-AC<br><br><br>FINDINGS & RECOMMENDATIONS |

On October 15, 2014, the court held a hearing on defendants' motion to dismiss.  Plaintiff Richard Giddens appeared in pro per and Danielle K. Lewis appeared for defendants.  On review of the motions, the documents filed in support and opposition, upon hearing the arguments of plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Allegations of the Complaint

On April 18, 2012, plaintiff left his home to attend a "crime conference" being held by the Suisun Police Department at the Nelson Community Center.  ECF No. 1 at 5.  Around 6:45 P.M. plaintiff backed out of his driveway, where he noticed his neighbor, Mr. Bluford, was playing basketball with a group of people in the street.  Id.  Mr. Bluford and plaintiff have had a number of disagreements in the past, some of which involving false claims regarding plaintiff by Mr.

1

1   Bluford.  Id. at 4.  Plaintiff backed out slowly and avoided Mr. Bluford and the others in the street

2   before driving away.  Id. at 5.  Fifteen minutes after plaintiff drove away Mr. Bluford called the

3   Suisun Police and claimed that plaintiff had tried to hit him with his car.  Id.

4        At approximately 6:55 P.M. plaintiff arrived at the crime conference, where he saw

5   defendant Sergeant Andrew White waiting outside the community center.  Id.  Plaintiff then

6   waited outside of the community center for a short time with another individual, George Guynn,

7   before entering.  Id.  At the conference, plaintiff and Mr. Guynn asked defendants Chief Edmond

8   Dashido and Commander Tim Mattos several "harsh" questions on topics ranging from crime

9   reporting and statistics to biased policing.  Id.  After the conference ended at about 8:00 P.M.,

10  plaintiff and Mr. Guynn spoke with a member of the local media near the back of the building.

11  Id. at 6.  Plaintiff then exited the room and entered a hallway where another member of the media

12  was interviewing an attendee.  Id.  There, he was greeted by defendants Officer Michael Urlaub

13  and Commander Mattos, who asked to speak with him.  Id.  Plaintiff agreed and walked down the

14  hallway with Mr. Guynn, Officer Urlaub, and Commander Mattos.  Id.  At that point, Commander

15  Mattos requested that plaintiff move into a corner where he could not be seen by anyone else.  Id.

16  Feeling uncomfortable with the request, plaintiff twice asked Officer Urlaub and Commander

17  Mattos what it is they wanted.  Id.

18       Plaintiff then turned and began walking toward a television film crew, exclaiming "hey

19  news media!"  Id.  Commander Mattos then came up behind plaintiff, slammed his head into the

20  wall, and threw him to the ground, causing blood to fill his left ear.  Id.  Upon being thrown to the

21  ground plaintiff immediately and repeatedly screamed, "What are you doing? Stop it, you're

22  hurting me!"  Id.  Sgt. White and Chief Dashido were both present and witnessed the event.  Id.

23  Officer Urlaub and Commander Mattos then escorted plaintiff to a squad car, where he asked,

24  "Why didn't you just tell me that I was under arrest?" but neither responded.  Id.  Officer Urlaub

25  and Commander Mattos then escorted plaintiff to jail, however the jail refused to accept plaintiff

26  into custody because of his head injuries.  Id.  Plaintiff was then taken to a hospital by another

27  officer, but plaintiff refused treatment because of the cost.  Id. at 7.

28       The next morning, plaintiff made bail and sought treatment at the Travis AFB DGMC

2

1    Emergency Room.  Id.  At the ER, plaintiff had a photograph taken of himself with dried blood

2    on his ear.  Id.  Several days later, plaintiff returned to the ER to document bruises caused by his

3    altercation with the Suisun Police Department.  Id.  To this day, plaintiff experiences concussive

4    symptoms including, dizziness, headaches, tinnitus, sensitivity and pain from noise, as well as

5    nightmares that cause severe emotional distress.  Id.  On or about April 21, 2012, plaintiff was

6    criminally charged by the Solano County District Attorney's Office based on a complaint filed by

7    Sgt. White, Commander Mattos, and Chief Dashido.  Id.  On February 7, 2014, plaintiff was

8    acquitted of Count 1, assault with a deadly weapon, in part because he had submitted to the court

9    a home security camera video showing him leaving his home for the crime conference peacefully

10   on April 18, 2012.  Id.[1]  The jury was hung with regards to the other three counts against plaintiff.

11   Id.

12   B.      Procedural Background

13          On April 17, 2014, plaintiff filed his complaint against defendants, asserting claims of (1)

14   Fourth Amendment-Unlawful Arrest, 42 U.S.C. §1983; (2) Fourth Amendment-Excessive Force,

15   42 U.S.C. §1983, (3) Conspiracy to Commit Constitutional Violations, 42 U.S.C. §1985, (4)

16   Equal Protection, Fourteenth Amendment, 42 U.S.C. §1983, (5) Monell Liability Supervisor

17   Liability (Respondeat Superior), 42 U.S.C. §1983, (6) Monell Liability Failure to Train,

18   Supervise, and Discipline, 42 U.S.C. §1983, (7) Malicious Prosecution, 42 U.S.C. §1983, (8)

19   Assault, (9) Battery, (10) False Imprisonment, (11) Intentional Infliction of Emotional Distress,

20   (12) Violation of Separation of Powers, (13)  Dilution of Vote, and (14) Dilution of

21   Representation.  ECF No. 1.[2]

22          On September 2, 2014, defendants filed their motion to dismiss the following causes of

23

---

24   [1] Although plaintiff's complaint alleges that he was acquitted on February 7, 2012, at the court's
25   October 15, 2014, hearing plaintiff explained that he had made a typographical error, and that he
     was in fact acquitted on February 7, 2014.
26   [2] The cover page of plaintiff's complaint lists his eighth cause of action as assault and his ninth
     cause of action as battery.  ECF No. 1 at 1.  However, in the body of plaintiff's complaint he
27   designates battery as his eighth cause of action and skips his ninth cause of action entirely.  Id. at
     14.  If plaintiff decides to file an amended complaint, he must consecutively number and discuss
28   individually all of his claims.

1   action: third (conspiracy), fourth (violation of the Equal Protection Clause of the Fourteenth

2   Amendment), fifth (Monell liability supervisor liability), sixth (Monell Liability failure to train,

3   supervise & discipline), seventh (malicious prosecution), eleventh (intentional infliction of

4   emotional distress), twelfth (violation of separation of powers), thirteenth (dilution of vote), and

5   fourteenth (dilution of representation).  ECF No. 6.  On September 16, 2014, plaintiff filed its

6   opposition.  ECF No. 14.  On October 8, 2014, defendants filed their reply.  ECF No. 17.

7                                              LEGAL STANDARDS

8          The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

9   is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d

10  578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the

11  absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police

12  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a

13  claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

14  (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief

15  on the plaintiff's claims, even if the plaintiff's allegations are true.

16         In determining whether a complaint states a claim on which relief may be granted, the

17  court accepts as true the allegations in the complaint and construes the allegations in the light

18  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

19  United States, 915 F.2d 1242, 1245 (9th Cir. 1989); see also Rodriguez v. Panayiotou, 314 F.3d

20  979, 983 (9th Cir. 2002).  A court is not "required to accept as true allegations that are merely

21  conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden

22  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

23         If a Rule 12(b)(6) motion is granted, "[the] district court should grant leave to amend even

24  if no request to amend the pleading was made, unless it determines that the pleading could not

25  possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.

26  2000) (en banc).  That is, leave to amend need not be granted where amendment would be futile.

27  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

28  ////

                                                    4

DISCUSSION

A.      1983 Claims

In order to sue a local government entity or its employees in a federal court for civil rights violations, a plaintiff must rely on statutory provisions that permit individuals to seek relief in federal court.  The federal civil rights statute, 42 U.S.C. § 1983, provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 "creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002).  "In order to allege a claim upon which relief may be granted under § 1983, a plaintiff must show that he or she has been deprived of a 'right secured by the Constitution and . . . law of the United States' and that the deprivation was 'under color' of state law." Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978) (quoting 42 U.S.C. § 1983)).

Defendants do not seek dismissal of plaintiff's §1983 claims alleging unlawful arrest and use of excessive force in violation of his Fourth Amendment rights by individual officers (plaintiff's first and second causes of action).  They do challenge the sufficiency of plaintiff's other § 1983 claims, which the court now addresses in turn.

1.      Equal Protection Clause

Defendants argue that plaintiff has failed to state a cause of action against defendants Dashido and Mattos for violation of the Equal Protection Clause, because plaintiff has not alleged that he belongs to a protected class.  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff alleges that the Suisun Police Department has a policy of recording officers' interactions

5

1   with him, and no one else.  ECF No. 1 at 10.  For equal protection purposes, protected classes are

2   those based on race, national origin, religion, sex and, at least in the Ninth Circuit, sexual

3   orientation.  See, e.g., Bingham v. City of Manhattan Beach, 341 F.3d 939, 948-49 (9th Cir.

4   2003) (race); Oona . McCaffrey, 143 F.3d 473, 476 (9th Cir. 1998) (sex); SmithKline Beecham

5   Corp. v. Abbott Labs, 740 F.3d 471 (9th Cir. 2014) (sexual orientation).  Plaintiff does not allege

6   that he belongs to a protected class, or that he has been discriminated against on the basis of his

7   membership in a protected class.[3]  Accordingly, the court finds that plaintiff has failed to state a

8   cause of action for a violation of the Equal Protection Clause.

9       At hearing on the motion, plaintiff indicated that he seeks to state an equal protection

10  claim as a "class of one."  Where a governmental entity distinguishes among citizens on grounds

11  other than membership in a protected class, the Equal Protection Clause requires only that it have

12  a rational basis for doing so.  See Kadrmas v. Dickerson Public Schools, 487 U.S. 450, 457-58

13  (1988).  Accordingly, although an equal protection claim may be brought by a "class of one," the

14  plaintiff bears the burden of proving that he "has been intentionally treated differently from others

15  similarly situated and that there is no rational basis for the difference in treatment."  SeaRiver

16  Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).  "An equal protection

17  claim will not lie by conflating all persons not injured into a preferred class receiving better

18  treatment than the plaintiff."  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.

19  2005).  Because plaintiff does not identify similarly situation individuals who have been treated

20  more favorably for no rational reason, the claim must be dismissed.

21      Defendants request that the court deny leave to amend.  However, the court does not find

22  at this stage of the proceeding that plaintiff's claim could not possibly be cured by the allegation

23  of other facts.  Lopez, 203 F.3d at 1127.  Accordingly, the court will grant plaintiff leave to

24  amend his Equal Protection Claim.  If plaintiff wishes to file an amended Equal Protection Claim

---

25  [3] At the court's October 15, 2014, hearing plaintiff argued that as a person with a disability he
26  belongs to a protected class; however, "the disabled do not constitute a protected class."  Lee v.
    City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (citation omitted).  Plaintiff also argued
27  that he belongs to a protected class as an elderly person, but the elderly also do not constitute a
    protected class for equal protection purposes.  Lamb v. Scripps College, 627 F.2d 1015, 1018 (9th
28  Cir. 1980).

1   he must allege (1) that he is a member of a protected class; and (2) facts demonstrating that

2   defendants  Dashido and Mattos discriminated against him because of his membership in a

3   protected class.  In the alternative, if he does not claim membership in a protected class, plaintiff

4   must plead facts demonstrating (1) that other individuals are similarly situated and (2) have been

5   treated more favorably, and (3) that the defendants have no rational basis for treating plaintiff

6   differently than the similarly situated others.

7          2.      Fifth Cause of Action

8          Defendants argue that plaintiff's fifth cause of action against defendants the City of

9   Suisun, Suisun City Council, the Suisun Police Department, Mr. Dashido, Mr. Mattos, and Mr.

10  White should be dismissed because plaintiff has failed to allege facts sufficient to establish a

11  policy, custom, or practice.  "[A] municipality cannot be held liable under § 1983 on a respondeat

12  superior theory."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).

13  A plaintiff must establish that the municipality "had a deliberate policy, custom, or practice that

14  was the moving force behind the constitutional violation he suffered."  Whitaker v. Garcetti, 486

15  F.3d 572, 581 (9th Cir. 2007) (citation omitted).  "In this circuit, a claim of municipal liability

16  under [§ ] 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing

17  more than a bare allegation that the individual officers' conduct conformed to official policy,

18  custom, or practice."  Id. (citation omitted).  However, that policy or custom must, in accordance

19  with the standards at the motion to dismiss stage, be a plausible one.  Bell Atl. Corp., 550 U.S. at

20  555.

21         Plaintiff alleges that defendants have a policy of prosecuting people who they know have

22  been wrongfully arrested.  ECF No. 1 at 11.  Plaintiff also alleges that defendants encourage the

23  Suisun Police Department to arrest and convict people without any probable cause in order to

24  make a profit and insulate themselves from liability.  Id.  Plaintiff fails to explain, however, why

25  defendants would have a policy of arresting and convicting innocent people in the first place, or

26  how they would make a profit from doing so.  Id.  Nor does plaintiff allege how his constitutional

27  rights have been violated by this policy, other than to say that "[p]laintiff was deprived of his

28  constitutional rights as aforesaid."  Id.  Accordingly, the court finds that plaintiff's fifth cause of

1 action does not allege facts sufficient to state a plausible claim for relief.

2       Defendants request that the court dismiss plaintiff's fifth cause of action without leave to

3 amend.  However, the court does not find that plaintiff's claim could not possibly be cured by the

4 allegation of other facts.  Lopez, 203 F.3d at 1127.  Accordingly, the court will grant plaintiff

5 leave to amend its fifth cause of action.  If plaintiff wishes to file an amended fifth cause of action

6 he must allege (1) that defendants have a plausible policy or practice; and (2) how defendants'

7 policy or practice violated his constitutional or federal statutory rights.

8         3.     Sixth Cause of Action

9       Defendants also argue that plaintiff's sixth cause of action against defendants the City of

10 Suisun, Suisun City Council, the Suisun Police Department, Dashido, and Mattos fails to allege

11 facts sufficient to establish a policy, custom, or practice.  Plaintiff's sixth cause of action alleges

12 that defendants have a policy of refusing to investigate excessive force complaints and that

13 defendant Mattos used excessive force during his arrest because of this policy.  ECF No. 1 at 12–

14 13.  In the Ninth Circuit even a bare allegation that an officer's conduct conformed to an official

15 policy is enough to establish that a policy existed at the motion to dismiss stage.  Whitaker, 486

16 F.3d at 581.  Accordingly, the court finds that plaintiff has stated a claim for relief under § 1983

17 because he has alleged that his Fourth Amendment rights were violated pursuant to an official

18 policy.

19 B.    Conspiracy

20       Defendants argue that plaintiff has failed to state a cause of action for conspiracy under 42

21 U.S.C. § 1985 because he does not allege that he was discriminated against for being a member of

22 a protected class.  To prove a conspiracy in violation of the first clause of § 1985(3), a plaintiff

23 must show "(1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory

24 animus [lay] behind the conspirators' action, . . . and (2) that the conspiracy 'aimed at interfering

25 with rights' that are 'protected against private, as well as official, encroachment.'"  Bray v.

26 Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993) (citation omitted).  Further, the

27 court need not accept as true, even at the motion to dismiss stage, conclusory allegations of

28 conspiracy.  Bell Atl. Corp., 550 U.S. 544, 556–57 (2007).  To state a claim for conspiracy a

1    plaintiff must allege facts demonstrating that a conspiracy existed.  Id.

2           Plaintiff alleges that defendants Dashido, Mattos and White conspired to violate his due

3    process rights.  ECF No. 1 at 9–10.  However, plaintiff does not allege facts that demonstrate such

4    a conspiracy existed.  Plaintiff also does not allege that he belongs to a protected class, or that he

5    was discriminated against for belonging to a protected class.  Accordingly, the court finds that

6    plaintiff has failed to state a claim for conspiracy in violation of § 1985.

7           Defendants request that the court dismiss plaintiff's claim for conspiracy without leave to

8    amend.  However, the court does not find that plaintiff's claim could not possibly be cured by the

9    allegation of other facts.  Lopez, 203 F.3d at 1127.  Accordingly, the court will allow plaintiff

10   leave to amend its claim for conspiracy.  If plaintiff files an amended claim for conspiracy under

11   § 1985 he must allege facts demonstrating that defendants entered into a conspiracy to

12   discriminate against him based on his membership in a protected class.

13   C.     Malicious Prosecution and Intentional Infliction of Emotional Distress

14          Defendants argue that plaintiff's claims for malicious prosecution and intentional

15   infliction of emotional distress (IIED) against defendants Dashido, Mattos and White ("Officers")

16   are barred by California Government Code § 821.6.[4]  Section 821.6 immunizes "the

17   [municipality] and its employees from liability for the actions or omissions of the investigating

18   officers if: (1) the officers were employees of the County; (2) [the plaintiffs'] injuries were caused

19   by acts committed by the officers to institute or prosecute a judicial or administrative proceeding;

20   and (3) the conduct of the officers while instituting or prosecuting the proceeding was within the

21   scope of their employment."  Cnty. of Los Angeles v. Superior Court, 181 Cal. App. 4th 218, 228

22   (2009), as modified (Jan. 22, 2010) (citing Amylou R. v. Cnty. of Riverside, 28 Cal. App. 4th

23   1205, 1209 (1994)).  § 821.6 immunizes public employees even if they have acted maliciously or

24   without probable cause.  Id.  Further, § 821.6 immunity broadly extends to liability under all state

25   statutory and common law causes of action.  Gillan v. City of San Marino, 147 Cal. App. 4th

26

27   [4] California Government Code § 821.6 states "[a] public employee is not liable for injury caused
     by instituting or prosecuting any judicial administrative proceeding within the scope of his
28   employment, even if he acts maliciously or without probable cause."

1    1033, 1047-48 (applying § 821.6 immunity to causes of action for defamation and IIED).  Based

2    on the facts alleged in plaintiff's complaint, the court finds both that the Officers are employees

3    of the City of Suisun and that they were acting within the scope of their employment at all times.

4    ECF No. 1 at 13–14, 15.

5            Whether plaintiff's injuries were caused by the Officers' conduct in instituting or

6    prosecuting a judicial proceeding is less certain.  Plaintiff's incorporation of facts by reference in

7    the complaint makes the substance of his claims unclear.[5]  Plaintiff seems to allege that the

8    Officers are liable for malicious prosecution because they filed Mr. Bluford's complaint knowing

9    that it was meritless.  See ECF No. 1 at 13–14.  Plaintiff further alleges that in doing so the

10   Officers engaged in a conspiracy to falsely convict him that amounted to extreme and outrageous

11   conduct, causing him severe emotional distress.  Id. at 15.  Based on these allegations it appears

12   that plaintiff's claim of malicious prosecution and IIED both arise out of the Officers'

13   involvement in plaintiff's criminal prosecution.  Accordingly, the court will recommend

14   dismissing plaintiff's claims of malicious prosecution and IIED.[6]

15           Defendants request that the court dismiss plaintiff's malicious prosecution and IIED

16   claims without leave to amend.  The court finds that plaintiff's malicious prosecution claim

17   cannot be cured because it is precluded by the plain language of California Government Code §

18

19   [5] Plaintiff incorporates facts by reference throughout his complaint.  However, allegations that
     incorporate each preceding paragraph, regardless of relevancy, are not permitted.  Byrne v.
20   Nezhat, 261 F.3d 1075, 1129–1130 (11th Cir. 2001).  If plaintiff decides to file an amended
     complaint, he must include in each cause of action a short and plain statement outlining the
21   relevant facts.

22   [6] Plaintiff argues in his opposition that the Officers are not immune because they violated his
     clearly established constitutional rights.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).
23   However, plaintiff seems to misunderstand the immunity to which defendants are referring.
     Plaintiff refers to qualified immunity, which protects government employees from federal and
24   constitutional claims.  See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Goleta Union
     Elementary Sch. Dist. v. Ordway, 166 F. Supp. 2d 1287, 1298 (C.D. Cal. 2001) (noting that the
25   qualified immunity doctrine applies solely to federal and constitutional claims).  Defendants,
     however, argue that the Officers are protected by § 821.6 immunity, which protects California
26   agencies and their employees from state and common law claims.  Gillan, 147 Cal. App. 4th at
     1048.  Malicious prosecution and IIED are common law claims governed by state law even when
27   they are brought in federal court.  See id. (IIED); Javor v. Taggart, 98 Cal. App. 4th 795, 808
     (2002) (malicious prosecution).

28

                                                10

821.6.  Accordingly, the undersigned will recommend dismissal of this claim without leave to amend.

The court also finds that plaintiff's IIED claim cannot be cured to the extent that it is based on allegations regarding the Officers' involvement in his criminal prosecution.  If, however, plaintiff alleges in an amended complaint that he suffered extreme emotional distress that arose from acts of the defendants independent of involvement in his criminal charges, § 821.6 will not bar the claim.  Accordingly, the undersigned will recommend that the IIED be dismissed without leave to amend only insofar as it is predicated on the defendants' involvement in initiating and/or pursuing criminal charges, and with leave to amend as to any other predicate injury alleged in the complaint.

D.      Dilution of Vote and Dilution of Representation

Defendants argue that plaintiff's causes of action against defendants City of Suisun and Suisun City Council for dilution of vote and dilution of representation (hereinafter "Voting Claims") should be dismissed because plaintiff fails to explain their statutory, constitutional, or common law basis.[7]  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri, 901 F.2d at 699. Plaintiff bases his Voting Claims on policy arguments regarding the size of Suisun City Council. ECF No. 1 at 18–19.  Specifically, plaintiff claims that many of the City of Suisun's problems arise out of the high ratio of citizens to city councilmembers.  Id.

Plaintiff's opposition, which mostly repeats his policy arguments, points to Department of Commerce, et al. v. U.S. House of Representatives, et al., 525 U.S. 316 (1999), to support his claims.  ECF No. 14 at 10–11.  Department of Commerce held that state residents have standing to challenge the use of Census data that would cause them to lose a state representative, thus diluting their voting power.  525 U.S. at 330.  Appellees in Department of Commerce, however, brought a claim under the Census Act, 13 U.S.C. § 1 et seq.  Id. at 320.  Plaintiff has not brought

---

[7] Plaintiff's cause of action for dilution of representation does not state who it is being brought against, however, based on its similarity to his dilution of vote claim the court concludes that plaintiff intended to bring both claims against the same parties.

1   such a claim.

2          Indeed, nowhere does plaintiff explain what legal theory supports his Voting Claims.  Nor

3   does plaintiff identify any legal basis for a private right of action to enforce the political rights he

4   is concerned with.  The court is aware of no such basis for suit.  Accordingly, the court will

5   recommend dismissal of plaintiff's claims for dilution of vote and dilution of representation.

6          Defendants request that the court dismiss the Voting Claims without leave to amend.  The

7   undersigned is highly skeptical that a basis for suit can be identified.  However, in light of

8   petitioner's pro se status and the Circuit's policy of liberally permitting amendment, the court will

9   recommend that plaintiff be afforded an opportunity to articulate a cognizable legal theory.  If

10  plaintiff files an amended claim for dilution of vote or dilution of representation he must explain

11  their statutory, constitutional, or common law basis.

12  E.      Violation of Separation of Powers

13         Defendants also argue that plaintiff's cause of action against defendants Suisun City

14  Attorney, Suisun City Council, City Manager Suzanne Bragdon, and Chief Dashido for separation

15  of powers violations should be dismissed because plaintiff fails to explain its statutory or

16  common law basis.

17         The factual basis of this claim is as unclear as its legal basis.  Plaintiff alleges that the City

18  Attorney meets with members of Suisun City Council and members of the executive branch

19  (including the City Manager) in "closed door sessions" to discuss policy.  ECF No. 1 at 16–18.

20  Plaintiff alleges that these discussions encourage collusion and erode "the separation of powers"

21  because they are shielded from public view.  Id.  However, plaintiff does not explain precisely

22  what meetings he is referring to or what he means by "closed door sessions."  At the court's

23  October 17, 2014, hearing plaintiff argued that the City of Suisun's lack of separation of powers

24  is the cause of the unconstitutional policies alleged in his Fifth and Sixth Causes of Action.

25  However, plaintiff did not explain how the city's relationship with the Suisun City Police

26  Department or other city actors has led to the policies or practices at issue here.  Plaintiff

27  nonetheless contends that the city's policies violate Article 3 Section 3 of the California

28  Constitution ("Art. 3 § 3"), which establishes the State of California's separation of powers

1  doctrine.  ECF No. 1 at 16–18.

2       As with the Voting Claims, plaintiff has failed to articulate a cognizable legal theory or

3  identify a private right of action.  Accordingly, the claim must be dismissed.  Again, the court is

4  highly skeptical that a claim can be stated.  The separation of powers provision in the California

5  Constitution is, with exceptions not relevant here, "inapplicable to the government below the state

6  level."  Strumsky v. San Diego Cnty. Emps. Ret. Assn., 11 Cal. 3d 28, 36 (1974).  This means

7  that "in establishing a governmental structure for the purpose of managing municipal affairs, the

8  Legislature (through statutes) or local entities (through charter provisions and the like) may

9  combine executive, legislative, and judicial functions in a manner different from the structure that

10  the California Constitution prescribes for state government."  Lockyer v. City and Cnty. of San

11  Francisco, 33 Cal. 4th 1055, 1093, n.23 (2004).

12       To the extent that plaintiff seeks to state a claim based on Art. 3 § 3, the court finds that

13  giving leave to amend would be futile.  Accordingly, the court will recommend that plaintiff's

14  claim for violation of separation of powers be dismissed without leave to amend to the extent it is

15  based on an alleged violation of Art. 3 § 3.

16                                    CONCLUSION

17       Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' September

18  2, 2014, motion to dismiss (ECF No. 6) be GRANTED IN PART and DENIED IN PART as

19  follows:

20       1.       GRANTED as to Plaintiff's third (Conspiracy), fourth (Equal Protection), fifth

21  (Unconstitutional Policy), thirteenth (Dilution of Vote) and fourteenth (Dilution of

22  Representation) causes of action, which should be dismissed with leave to amend;

23       2.       GRANTED as to Plaintiff's seventh (Malicious Prosecution) cause of action,

24  which should be dismissed without leave to amend;

25       3.       GRANTED as to Plaintiff's eleventh (Intentional Infliction of Emotional Distress)

26  cause of action, without leave to amend insofar as it is predicated on malicious prosecution but

27  without prejudice to an IIED claim based on injuries outside the scope of Cal. Gov. Code § 821.6

28  immunity;

13

1    4.    GRANTED as to Plaintiff's twelfth (Separation of Powers) causes of action,

2    without leave to amend insofar as it is predicated on Article 3 Section 3 of the California

3    Constitution, but without prejudice to a related claim with a different legal basis; and

4    5.    DENIED as to plaintiff's sixth cause of action.

5    These findings and recommendations are submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

7    after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10   shall be served and filed within fourteen days after service of the objections.  The parties are

11   advised that failure to file objections within the specified time may waive the right to appeal the

12   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   DATED: October 20, 2014

14

15   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

14