RICHARD GIDDENS,
SUA SPONTE/IN PRO-PER
RDGiddens@sbcglobal.net
1505 EL PRADO LANE
SUISUN CITY, CA 94585
TELEPHONE (707) 434-1066

For Plaintiff

**FILED**

JUN - 5 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

RICHARD GIDDENS,

        Plaintiff.

        VS.

CITY OF SUISUN CITY; SUISUN CITY
COUNCIL: MAYOR PEDRO SANCHEZ
(DOE 3); CITY COUNCIL MEMBERS
JANE DAY (DOE 4); MIKE HUDSON
(DOE 5); MIKE SEGALA (DOE 6); LORI
WILSON (DOE 7); CITY MANAGER
SUZANNE BRAGDON; SUISUN CITY
ATTORNEY ANTHONY TAYLOR (DOE
1); SUISUN CITY POLICE DEPT.;
EDMOND DADISHO POLICE CHIEF;
COMMANDER TIM MATTOS; OFFICER
ANDREW WHITE; OFFICER MICHAEL
URLAUB, BRANDON BLUFORD (DOE 2)
& DOES 8-10,

        Defendants.

Case No.: 2:14-cv-0943 TLN AC (PS)

**A VERIFIED SECOND AMENDED
COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

**INJUNCTIVE RELIEF REQUESTED**

**REQUEST FOR PUNITIVE DAMAGES**

Hearing Date:
Hearing Time:
Judge/Magistrate:  Hon. Allison Claire
Courtroom:  26

Verified Second Amended Complaint - 1

Plaintiff, RICHARD GIDDENS, in pro per complains as follows:

//

## I. PRELIMINARY STATEMENT

1. This case arises out of the ongoing hostility and mal actions by the CITY of SUISUN CITY, California, its City Council, its Police Officers and other Agencies and Agents hired by the CITY OF SUISUN CITY, which has resulted in infringing upon Plaintiff's enjoyment of his constitutionally protected rights under the US Constitution.

2. This case also arises out of an illegal arrest, unnecessary assault and battery against Plaintiff, as well as the wrongful, false and malicious prosecution with the intent to cause intentional and negligent infliction of emotional distress.

3. Plaintiff has spoken out about these abuses in various forums including city hall as well as a Police forum and has detailed the abuses. Plaintiff asserts that he has been retaliated against for expressing his views under the First Amendment.

4. Plaintiff also alleges vicarious liability by several Defendants including the failure to train, supervise and discipline the Officers who harmed the Plaintiff in their presence.

5. Plaintiff seeks relief from this Court against the named Defendants above and wishes to be made whole due to the damages they have caused him.

//

## II. JURISDICTION

6. This action arises under Title 42 USC 1983. Jurisdiction is conferred upon this Court by Title 28 USC 1331 and 1343. The unlawful acts and practices alleged occurred in Solano County, State of California, which is within this Judicial District. This Court has jurisdiction in the matter because jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. §1983, §1985, §1986 and §1988.

7. This Court has supplemental jurisdiction over Plaintiff's pendent State claims pursuant to 28 U.S.C. 1367(a) because they are part of this same case and described by Plaintiffs' Federal claims and such claims may be raised concurrently in Federal Court.

//

Verified Second Amended Complaint - 2

## III. VENUE

8. Venue is proper under 28 U.S.C. § 1391(b) because the underlying acts and injuries upon which the present action is based upon occurred in the Eastern District of California.

//

## IV. PARTIES

**A. PLAINTIFF**

9. Plaintiff RICHARD GIDDENS (or "GIDDENS" or "Plaintiff") is a 59 year old disabled citizen of the United States. Plaintiff is also a retired veteran of the US Air Force and at all times herein mentioned Plaintiff is a resident of the City of SUISUN CITY, State of California and a resident of the Eastern District of California and a member of a "class of one".

//

**B. DEFENDANTS**

10. Defendant CITY OF SUISUN CITY (or "SUISUN CITY" or "SUISUN" of "CITY"); is a political subdivision of the State of California, duly organized and existing under the laws of the State of California. At all relevant times, Defendant CITY and CITY COUNCIL of SUISUN CITY was responsible for the appointment, training, supervision, promotion and discipline of the Police Department and its Employees.

11. Defendant SUISUN CITY COUNCIL (or "CITY COUNCIL" or "COUNCIL"); are the Mayor and four legislative members elected at large by the citizens who in turn represent the Citizens of SUISUN. They are effectively the Board of Directors for the Governmental Municipal Corporation of SUISUN. They meet on a semi-regular basis and hold Hearings to discuss policy directly affecting the Citizens of SUISUN CITY and in those Hearings citizens have an opportunity to petition and bring to their attention grievances for redress. Their duties include protecting the health and safety of the citizens, enforcing the State and Federal Constitution and conducting investigations and oversight of matters in their purview. The SUISUN CITY Council includes Mayor PEDRO SANCHEZ ("SANCHEZ" or "MAYOR") (DOE 3); CITY COUNCIL MEMBERS JANE DAY ("JANE" or "DAY") (DOE 4); MIKE

Verified Second Amended Complaint - 3

HUDSON ("HUDSON") (DOE 5); MIKE SEGALA ("SEGALA") (DOE 6) and LORI WILSON ("WILSON") (DOE 7).

12. ANTHONY TAYLOR (DOE 1) The SUISUN CITY ATTORNEY (or "CITY ATTORNEY" or "TAYLOR") chosen by the City Council to legally advise and represent the SUISUN CITY COUNCIL and apparently the CITY administrative members.

13. Defendant SUZANNE BRAGDON (or "BRAGDON"), The City Manager for SUISUN CITY, appointed to her seat by Defendant CITY COUNCIL.

14. Defendant SUISUN CITY POLICE DEPARTMENT ("POLICE DEPT.") of Suisun City; is a political subdivision and/or agency of SUISUN CITY and has its principal offices there. This agency employed Defendant Police Officers during the time of the incident.

15. Defendant EDMOND DADISHO ("DADISHO"), was the appointed Police Chief of SUISUN CITY Police Department and Policy maker for the Police Department of SUISUN CITY.

16. Defendants COMMANDER MATTOS, SERGEANT ANDREW WHITE and OFFICER MICHAEL URLAUB ("MATTOS", "WHITE" and "URLAUB") are at all times relevant to this action Police Officers employed by the SUISUN CITY POLICE DEPT.

17. Defendant BRANDON BLUFORD ("BLUFORD") is at all times a private individual who lived in the proximity of the Plaintiff during all times relevant to this case.

18. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 8-10, and therefore sue these Defendants by such fictitious name; Plaintiff will amend this complaint to allege said Defendant's true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries were proximately caused by acts and/or omissions of said fictitiously named Defendants.

19. All Persons named as Defendants herein are sued in their individual capacities. All persons sued who are public officials are also sued in their official capacities.

20. At all times relevant, the Defendants were acting under the color of their authority as Officers and Agents of SUISUN CITY.

//

## V. FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A. IN GENERAL

21. Plaintiff has been a resident of SUISUN CITY since May 1992. He is an active citizen and is an outspoken individual and active in his community.[1] He has been critical of actions of both the members of the SUISUN CITY COUNCIL as well as members of the SUISUN CITY POLICE DEPT. He has been repeatedly spoken to the SUISUN CITY COUNCIL during public comments, to individual Council Members and to the Police often to redress his grievances only to have his redress petitions ignored.

//

### B. FALSE ARREST INCIDENT

22. Plaintiff has had ongoing hostilities with some of his neighbors, specifically a Mr. BLUFORD over a period of time involving the complaint. Mr. BLUFORD had filed numerous wrongful false complaints against Plaintiff with the POLICE DEPT over many years.

23. On April 18th, 2012 at or about 6:45PM, Plaintiff was going to attend a Crime Conference being held by the SUISUN CITY POLICE DEPT at the Nelson Community Center in SUISUN CITY.

24. At about 6:45PM Plaintiff stepped into his Jeep Cherokee and proceeded to back slowly out of his driveway.

25. Mr. BLUFORD and other neighbors were in the street playing basketball next to Plaintiff's driveway while Plaintiff was slowly backing his Jeep out.

---

[1] Commonly paraphrased as "The most important office is that of the private citizen" or "The most important political office is that of the private citizen", and sometimes misattributed to his dissenting opinion in *Olmstead v. United States, 277 US 438 (1928)*. It is properly attributed to *A Free Man's Life*: "What I have desired to do is to make the people of Boston realize that the most important office, and the one which all of us can and should fill, is that of private citizen. The duties of the office of private citizen cannot under a republican form of government be neglected without serious injury to the public." Statement to a reporter in the *Boston Record*, 14 April 1903. (quoted in Alpheus Thomas Mason, *Brandeis: A Free Man's Life* (1946), p. 122.)

26. Plaintiff came to a stop in the middle of the street, turned his vehicle's wheels opposite direction and away from the people in the street and then drove forward while BLUFORD and others were still playing Basketball.

27. The players left little room for Plaintiff to back out. Then Plaintiff drove foreword and headed directly to the Suisun Crime Conference. The players continued to play basketball after Plaintiff drove away. About 15 minutes later, Mr. BLUFORD called the POLICE DEPT. and falsely reported that Plaintiff attempted to hit Mr. BLUFORD with his Jeep.

28. At no point in time did Plaintiff hit anyone or try and hit anyone with his Jeep or any other object.

29. At about 6:55 PM, Plaintiff arrived at the Suisun Community Center and parked.

30. Plaintiff saw SERGEANT WHITE standing outside the venue.

31. Plaintiff then met up with George Guynn at the entrance to the Community Center and stood outside for a bit before entering the forum. Plaintiff took time speaking to local youth about their education and career aspirations.

32. Plaintiff listened to the presentation given by the SUISUN CITY Police Department.

33. At the end of the presentation, Plaintiff and his friend George Guynn asked several harsh questions of Chief DADISHO and Commander MATTOS during the question and answer session on everything from crime reporting integrity and statistics along with cost effectiveness and biased policing. Plaintiff's remarks were critical and vocal.

34. The meeting adjourned at about 8PM. Plaintiff and Mr. Guynn walked to the back of the room and spoke with a media personality from a local television station for a moment. The cameras were on him.

35. Plaintiff then exited the room directly to the hallway where Chris Riva (local NBC Channel 3 TV personality) and his cameraman were interviewing an attendee.

36. Defendants MATTOS and URLAUB were there waiting in the hallway.

37. MATTOS said he wanted to talk to Plaintiff and Plaintiff told him "Yes sir".

38. Plaintiff Giddens, his friend George Guynn, MATTOS and URLAUB walked down the hallway to the hall intersection.

39. At the intersection of the hallway, MATTOS pointed to the wall opposite of him, effectively a blind spot where no one could see and said "step over here". At no point did either Commander MATTOS or Officer URLAUB tell Plaintiff he was under arrest.

40. Plaintiff felt extremely uncomfortable with the Defendant MATTOS asking him to go into a blind spot and twice requested both Officers explain what they wanted. Neither one would say what they wanted from Plaintiff. So, Plaintiff then turned away and walked towards the filming TV Crew and said, "Hey News Media!"

41. At that very moment, COMMANDER MATTOS and URLAUB came up behind Plaintiff. Without cause, MATTOS grabbed Plaintiff and slammed his head into the wall with great force, causing head trauma and then threw Plaintiff onto the ground. Then both men grabbed Plaintiff while he was on the ground.

42. When Plaintiff fell to the floor, blood immediately filled Plaintiff's left inner ear and he suffered a concussion from having his left side of head impact into the wall with such great force and no protection to prevent the brain injury Plaintiff suffered in the assault.

43. Plaintiff's glasses, paperwork and other items fell to the floor and George Guynn went and picked up his scattered personal effects.

44. Plaintiff repeatedly screamed "what are you doing!? Stop it, you're hurting me!" while the Officers who were now on Camera both yelled "Stop Resisting"!

45. The news media was right there and filmed the incident as it happened.

46. Defendants DADISHO and WHITE stood there witnessing the incident.

47. As URLAUB and MATTOS were taking Plaintiff out to the Squad Car, Plaintiff asked "why didn't you just tell me that I was under arrest"? Neither responded. Defendants did not tell Plaintiff he was under arrest before they assaulted him and only declared an arrest after they assaulted him. Plaintiff declared at that time that a false arrest was in fact, taking place.

48. The POLICE put Plaintiff in a police car to be transported to Jail. After looking at the Plaintiff's apparent head injuries, the Jail refused to accept the Plaintiff into their custody.

49. A Suisun Police Officer took Plaintiff to the North Bay Hospital and Plaintiff told them that he was refusing and not consenting to treatment there because he didn't want pay for it

and because he was medically insured and empanelled at Kaiser and the Travis AFB Hospital. Not treated or examined by North Bay, they still billed Kaiser and the Plaintiff for services not delivered or agreed to as a result of the Police officer taking him there against his wishes.

50. Plaintiff was bailed out the next morning.

51. At about 11 am on April 19th, 2012, Plaintiff went to the Travis AFB DGMC Hospital Emergency Room and was medically examined, treated and CAT scanned.

52. Plaintiff had a photo taken of himself in the hospital bed with the dried blood visible in his inner ear canal. Several days later, Plaintiff went back to the emergency room to show and have Air Force Doctors document the developed bruises on his body so it would be in the medical records. Plaintiff had his wife take photos of the bruises and a head abrasion at home.

53. Plaintiff is still under the care of Air Force Doctors including an Air Force Neurologist for his still occurring concussive symptoms----dizziness, headaches, tinnitus, memory loss, sensitivity and pain from noise along with nightmares as a result of the severe emotional distress brought from the acts of Defendants MATTOS and URLAUB.

54. On or about April 19th 2012, Plaintiff learned that his neighbor BLUFORD had called the SUISUN CITY POLICE DEPT after Plaintiff had left for the Crime Conference and had falsely accused Plaintiff of trying to hit him with his Jeep on the way to the Crime Conference.

55. On or about April 21st 2012 Plaintiff was criminally charged by the Solano County District Attorney's Office based on a false complaint made by Brandon BLUFORD and filed by Officers WHITE, MATTOS and DADISHO.

56. Plaintiff retained the services of Criminal Defense Attorney John F. Baumgardner.

57. On or about July 3rd, 2012, a Preliminary Hearing was held in which Plaintiff showed his home security camera video taken from his home that showed him leaving for the Crime Conference. At that point, all parties could see that Plaintiff slowly backed out of his driveway, turned his car's wheels away from his accusers and drove forward uneventfully.

58. The video showed that Plaintiff did not hit anyone nor did he try to hit anyone. The motion by the video was straight and did not move the steering wheel at all.

59. The video also showed that Mr. BLUFORD did not react immediately as though he got hit or anyone had tried to hit him. Mr. BLUFORD continued to play Basketball and even went for more layups with a basketball into the hoop. Mr. BLUFORD was clearly not shocked about Plaintiff's uneventful departure from his home and BLUFORD continued to play basketball. Additional camera footage showed him later going to another person's home. Plaintiff upon information and belief asserts that Mr. BLUFORD finally went to his home to make a false Police Report.

60. At this point at the July 3, 2012 Preliminary Hearing, the SUISUN CITY Police Officers and Mr. BLUFORD had the opportunity to acknowledge that the evidence showed they had made a mistake and should have dropped the charges, but they did not. Upon seeing the home video footage for the first time, Commander MATTOS visibly reacted in anger along with the Deputy District Attorney. The viewing of the exculpatory video was first seen before the Prelim Hearing began as Attorney Baumgardner set up his video projector for the Court to view the video.

61. Before the Hearing on July 3rd, 2012 started, the Deputy District Attorney in the case, Commander MATTOS, Judge Nelson and Mr. Baumgardner went into closed chambers for 15 minutes. Plaintiff does not know what was discussed in that hearing.

62. Also at this point, Defendants had an opportunity to also press charges on Mr. BLUFORD because it was clear that Mr. BLUFORD had perjured himself when he called to falsely claim that Plaintiff tried to hit him with his Jeep. But the Officers did not.

63. In an Orwellian and Kafkaesque move, the Defendant Officers did not change their stance and instead, continued to push the criminal case against Plaintiff.

64. During two subsequent trials, Officer Michael O'Brien, a member of the SUISUN CITY POLICE DEPT testified several times that he was the responding Officer to the incident where Plaintiff was accused of trying to hit Mr. BLUFORD with the Jeep.

65. After the call by BLUFORD, Officer O'Brien was dispatched to El Prado Lane the day of the incident while Plaintiff was at the Crime Conference. O'Brien went to the place of the claimed incident on El Prado Lane and met with the witnesses.

Verified Second Amended Complaint - 9

66. Officer O'Brien arrived and interviewed Erik Pareja, Deon Morgan and Brandon BLUFORD as to what happened. They were all witnesses at the time and place of the incident.

67. Erik Pareja, a neighbor living at 1504 El Prado Lane told Officer O'Brien that "He couldn't really see anything" because he was watering his yard and not looking as the Plaintiff's Jeep passed between his view and where the Mr. BLUFORD was standing. Pareja repeated that

//

testimony at the Probable Cause Hearing but later recanted and changed his testimony at trial to claim Plaintiff had attempted to run Mr. BLUFORD over with his vehicle.

68. Deon Morgan, who was seen in the exculpatory video, was there at the place and time where the purported incident that BLUFORD claimed the Plaintiff tried to hit him, told Officer O'Brien essentially that "nothing happened" and "I didn't see anything" repeatedly.

69. Brandon BLUFORD told Officer O'Brien that he "had to jump out of the way" to avoid getting hit and affirmed that Plaintiff tried to intentionally hit him with the Jeep.

70. After Officer O'Brien investigated the incident, he summated that there were clearly conflicting reports and conflicting testimony by the witnesses.

71. Through information and belief, Police Officer O'Brien then called the SUISUN CITY Police Department and spoke with the dispatcher. O'Brien then radio called Sergeant WHITE and reported his investigative findings into whether Plaintiff had tried to hit Mr. BLUFORD. O'Brien's summative response was it was "really borderline" because of the conflicting testimony between the three testifying witnesses that Officer O'Brien had interviewed. There were not enough facts or information to show whether Plaintiff had or had not in fact tried to hit Mr. BLUFORD with his Jeep. In fact, much of the evidence at that time suggested it did not happen. So Defendants knew this and proceeded even so.

72. In making the decision on whether to arrest Plaintiff, the Officers involved in the arrest, especially WHITE, MATTOS and DADISHO as Supervisors at the POLICE DEPARTMENT of SUISUN CITY and all Officers should have been aware that there was ongoing hostility between Plaintiff and BLUFORD, which included BLUFORD making false accusations against Plaintiff just two days before. Plaintiff previously provided the POLICE

DEPT with several videos of BLUFORD cursing and threatening Plaintiff and screaming racial epithets in the road angrily. They should have also been aware of the complaint by Plaintiff to the California Air Resource Board on Mr. BLUFORD that resulted in a Joint State / Local no notice inspection of Mr. BLUFORD's rental home on October 11, 2011. The Suisun Officers also knew Mr. BLUFORD had been cited and given a cease and desist order at that time. Plaintiff also had previously on October 12, 2011 written and delivered a proof of service letter to MATTOS requesting Police Sponsored Mediation with Mr. BLUFORD.

73. With no reply to Plaintiff's letter requesting mediation forthcoming, a subsequent meeting was held at the SUISUN POLICE DEPT with WHITE and DADISHO in January 2012. Plaintiff's request for mediation was denied by DADISHO at that meeting. There had been much hostility and many accusations between Plaintiff and Mr. BLUFORD, and any allegation such as the one made, especially with conflicting testimony should have been scrutinized closely. It clearly appears Mr. BLUFORD sought revenge for his illegal business being shut down by the authorities on October 11th, 2011.

74. In light of this, we can reconstruct what had happened prior to the arrest. Officer O'Brien reported that the case was "really borderline" and only reported this (This statement was replayed on audio in Court and through testimony at trial). Based on testimony from Sergeant WHITE, O'Brien made the radio call and ended up speaking to WHITE about the event. Sergeant WHITE made the decision to arrest and then communicated this to MATTOS to take Plaintiff into custody instead of offering to give Plaintiff the opportunity to be told of what happened and rebut, especially since the investigating Officer noted the claim was "really borderline". They did not give Plaintiff the opportunity to tell them about his video camera which could have explained the matter away without leading to the wrongful and harmful arrest of Plaintiff. Plaintiff had previously given the SUISUN CITY POLICE DEPT the videos of BLUFORD showing BLUFORD cursing and threatening Plaintiff.

75. There was no audio provided detailing the discussion between Officer O'Brien and Officer WHITE and MATTOS or detailing how or why they decided to arrest Plaintiff or what was said to justify why an arrest would be warranted with the conflicting evidence.

76. Plaintiff was at the Crime Conference when all of this happened. He was not attempting to hide himself or evade the Police in any way. He was openly critical of the actions of the local government as he often is. Instead of approaching Plaintiff in a straight forward manner and telling him he was under arrest, MATTOS and URLAUB lured Plaintiff away from the Media Cameras and other people in the public, told him to go to a blind spot.

77. When Plaintiff asked MATTOS and URLAUB why they wanted to talk to him, they would not tell Plaintiff. Plaintiff did not have the knowledge that he had been accused of a crime nor did he know what was going on.

78. Plaintiff did not feel comfortable with MATTOS, especially when he asked MATTOS twice what he wanted of him. Plaintiff turned, walked away back to the meeting room and called on the Media to turn their cameras on the situation. At that moment COMMANDER MATTOS assaulted Plaintiff from behind and slammed Plaintiff's head into the wall violently. Then both Officers (MATTOS and URLAUB) threw Plaintiff to the ground violently yelling "Stop Resisting" even though at no point was Plaintiff informed that he was under arrest.

79. When Plaintiff was calling to the media, he was not under arrest as such had not been communicated to him. Plaintiff further was not trying to escape, he was very concerned with what was going on and wanted a record of the unfolding untoward Police conduct. MATTOS then attacked Plaintiff.

80. COMMANDER MATTOS then gave a television interview to Reporters and explained that Plaintiff had "Pushed their hand" and caused them to arrest Plaintiff.

81. As a result of being falsely arrested and imprisoned overnight Plaintiff suffered severe emotional stress and public embarrassment.

82. On or about February 7th, 2014 Plaintiff was acquitted on Count 1, assault with a deadly weapon. Plaintiff produced and again showed the Court the home security camera video showing him leaving his home uneventfully, proving his accuser, Mr. BLUFORD had lied.

83. On or about February 7th, 2014 a Jury reached a hung verdict on the other 3 charges against him. In the second trial in July 2014, Plaintiff was later acquitted on all underlying charges. Plaintiff was convicted of a sole overlapping charge for vandalism due to damage done

to the Police car inner door seal after Plaintiff was assaulted, falsely arrested, falsely imprisoned and was reporting he was asphyxiating and overheating in the back of the cramped Police cruiser.

## C. MR. BRANDON BLUFORD

84. On or about Spring 2010, Mr. BLUFORD moved into 1502 El Prado Lane across and down from Plaintiff's home. Soon after Mr. BLUFORD moved in, Plaintiff went to visit Mr. BLUFORD and extended a gift.

85. Not long after this, Plaintiff noticed Mr. BLUFORD had begun working on other people's cars. Effectively this was a car repair business in violation of State and City Codes.

86. The property began getting trashed and blighted with auto, truck and boat parts along with trash in the front yard. Repaired cars were being put on the street with "for sale" signs on them. Mr. BLUFORD had also set up a plastic tent against the home to catch paint mist since he was performing body work and painting cars there inside the garage. Plaintiff video recorded those activities and gave the videos to the SUISUN CITY POLICE DEPT.

87. Plaintiff also contacted the SUISUN CITY POLICE DEPT. on about four different occasions by phone and in person. He directly spoke to MATTOS and WHITE and they did nothing.

88. Then, Plaintiff went to the SUISUN CITY COUNCIL to complain on at least three different occasions regarding BLUFORD'S car repair nexus and they did nothing (those appearances before the SUISUN CITY COUNCIL were video recorded).

89. Finally, Plaintiff went to the California Air Resources Board and filed a complaint with them. They inspected Mr. BLUFORD'S home and ordered the operation be shut down. Plaintiff collected video and other evidence and presented it to the SUISUN CITY Police and City Council, they did not act, so the California Air Resource Board did.

90. There was much hostility by Mr. BLUFORD against Plaintiff due to this.

//

## D. DOG INCIDENT

91. In the Spring of 2010, Mr. Erik P. Pareja moved into a home across the street from Plaintiff at 1504 El Prado Lane in Suisun City.

92. Mr. Pareja owns two Mixed Mastiff/Pitbull Dogs and the dogs frequently got loose.

93. The dogs in 2011 attacked another neighbor's dog (there's a Police Report).

94. The dogs in 2011 got loose and did damage to the back yard fence of another neighbor's house.

95. On September 7th of 2013, Mr. Pareja's dogs were intentionally let loose and they charged at Plaintiff and Plaintiff maced the dogs (This incident was recorded on Video).

96. Plaintiff contacted Solano County Animal Control Services via telephone and complaint letters and Plaintiff presented them the video as well.

97. The Animal Control Services found Probable Cause and referred the case to POLICE DEPT. for a Dangerous Animal Hearing.

98. Chief DADISHO rejected the case and would not allow a hearing to be held.

99. Plaintiff then appeared before the SUISUN CITY COUNCIL to complain about this.

100. After the City Council Meeting, DADISHO reversed himself and held a Hearing.

101. Plaintiff went to the hearing as did Mr. Pareja also appeared.

102. A hearing was held. Mr. Pareja was allowed to present evidence showing the dogs with children at Christmas. Plaintiff was allowed to present his video tape, but the Hearing Officer said that since there was no audio, they would not declare the video evidence as *prima facie* evidence of a dog attack. The Hearing Officer would not allow Plaintiff's admittance of two reports of previous attacks by the dogs along with an audio recording of Mr. Pareja's profane and threatening remarks about the attack, then dismissed the case. It was effectively a sham and farcical show hearing, but not substantive nor objective in it's conduct.

103. On September 27, 2013 Plaintiff Citizen arrested Mr. Pareja for disturbing the peace, cursing Plaintiff repeatedly and communicating threats as Plaintiff was working in his front yard. Police were dispatched. Mr. Pareja left the scene and went to Corrections Officer Kenton T. Wann's home. Officer Wann was drinking beer in his front yard and called Plaintiff "an idiot". Mr. Pareja then returned to his home. When the Police arrived, Plaintiff played an

audio recording of Mr. Pareja cursing and threatening Plaintiff. Plaintiff requested Mr. Pareja be arrested. The Police then called persons unknown on their cellular telephones multiple times but then refused to take Mr. Pareja into custody. One Police Officer, Ronald Aiello, explained to Plaintiff, "one day I will explain to you over coffee what this was all about".

//

## E. NEIGHBORS

104. Between January 2005 and 2008, Plaintiff had to deal with his neighbors who turned their rental house into a Party House (Legally referred to as a "A Disorderly House") in violation of CA Health & Safety Codes and PC316 and it was a huge nuisance. The SUISUN CITY POLICE and the SUISUN CITY COUNCIL would not and did not redress the matter at all.

105. On or about 3 January, 2005—Home Owner Suhkdev Singh informed Plaintiff that he is renting his home at 1507 El Prado Lane (next door to Plaintiff's house), to 2 individuals, Melissa Hoye and Caesare Gattis. Singh told Plaintiff that a child will be living there too. Melissa Hoye is the daughter of now former California Corrections Officer Kenton T. Wann, a former sworn California Peace Officer who then was working for the Department of Corrections.

106. When Melissa Hoye lived at her father Officer Wann's house, Plaintiff observed that there were many large parties with people coming and going and cars parked up and down the street. The parties were at all hours of the night and were loud with lots of people coming and going from them. Plaintiff called the Police often. Few responses were made.

107. On or about 10 January, 2005 — In an effort to establish diplomatic, cordial and reciprocal relations with the new neighbors, Plaintiff gave the new tenants his contact info along with 2 boxes of young children's books and a child's study desk.

108. On or about 20 January, 2005— Plaintiff noticed that many people are coming and going from 1507 El Prado Lane next door at all hours. Plaintiff's wife and son who worked swing and grave shift also reported loud parties at night. Numerous unknown people began gathering outside Plaintiff's home late at night. Plaintiff continued to monitor their activity.

109. From this point forward, those parties would occur often and Plaintiff would have his home damaged in various ways due to these parties and the participants in them. This

includes tearing down his rain gutters on Plaintiff's house walls (Plaintiff's property is in excellent condition and is inspected and maintained on a regular basis). Plaintiff witnessed two persons having sex in the driveway next to his home. Party goers would trespass upon Plaintiff's home, people at the parties would yell, scream obscenities, racial epithets and fight. On a few occasions, the partiers would vomit on Plaintiff's driveway and on one horrid occasion a trail of human excrement was trailed between neighbors' driveway and Plaintiff's driveway.

110. Plaintiff then spoke with Corrections Officer Kenton T. Wann when he was at 1507 El Prado Lane during another party there. Officer Wann assured Plaintiff that none of their partygoer friends would enter onto Plaintiff's property at any time and couldn't be responsible for the damage Plaintiff discovered because they were all of good character and they had control over their numerous party guests. Often the parties would run for days.

111. On or about March 7, 2006 – Plaintiff sent a registered letter to the owner of 1507 El Prado Lane about the nuisances asking them to stop. No response is given.

112. Between 2005 and 2008, Plaintiff filed around 40 Police Reports over the acts detailed by Plaintiff above.

113. On or about March 8th 2007 upon the advice of the Police, Plaintiff was told to place persons disturbing the peace late at night under "Citizens Arrest".

114. Plaintiff arrested a convicted drug felon parolee, Alphonzo Decarlos Washington late one night outside the disorderedly home for disturbing the peace April 2nd 2007. Plaintiff filled out the citation but the Police would not act upon it or take Mr. Washington into custody.

115. On about April 3rd, 2007 upon the advice of the POLICE DEPT, Plaintiff filed in Superior Court for and was granted a Restraining Order placed against neighbors Melissa Hoye and Ryan Hoye. During that same hearing, his neighbors were granted a counter restraining order against Plaintiff. On April 15th, 2007, Residents at 1507 El Prado Lane disturbed the peace by playing loud music late and police were called at 0030 and 0330 hours. Police responding were shown the in effect Restraining Order but nothing was done even though the SUISUN CITY Police openly discussed witnessing the noise. Six hours later, guests arrive playing loud music. Plaintiff complained that they yelled obscenities and racial epithets at him.

Verified Second Amended Complaint - 16

116. In attempt to change tactics, the SUISUN CITY POLICE DEPT then suggested neighborhood mediation. The Wann's and Hoye family agreed to mediation, but then showed bad faith when they failed to show up for the mediation meeting.

117. The Police would not enforce the restraining order.

118. On another occasion in December 2007, Plaintiff attempted to enforce the restraining order late at night when there was screaming, fighting, glass breaking with loud music blaring in the background. The Police would not do it.

119. On or about January 11th, 2008 Plaintiff complained to neighbors that there was trash on their front yard because the neighbors were not putting trash out on trash day and were instead just throwing it into the front yard on the ground. Plaintiff had complained to the SUISUN CITY POLICE Code Enforcement unit about the trash piling up in the front yard before. As usual, the neighbors ignored Plaintiff as did Code Enforcement Officers.

120. Over this incident, the neighbors then made a false accusation to the Police about Plaintiff and they claimed that Plaintiff had called them racist remarks (which he did not) on the occasion that he complained to them directly about the trash. Plaintiff has the incident on tape.

121. Sergeant WHITE came over and arrested Plaintiff based on the complaint filed by his neighbors. They charged Plaintiff with Disturbing the Peace. The Police would enforce acts against Plaintiff on the neighbor's behalf, but would not enforce Plaintiff's interests.

122. Plaintiff filed no fewer than four Biased Policing reports against the SUISUN CITY POLICE DEPT. and Plaintiff brought these same problems of the Disorderly House as well as the Biased Policing to the SUISUN CITY COUNCIL. No remedy came from anyone at the SUISUN CITY COUNCIL.

123. The disorderedly party house ended when Plaintiff contacted the California Dept. of Corrections and its Internal Affairs Division by phone and mail. Plaintiff also contacted the Office of Warden Suzanne Hubbard at the Vacaville California Prison and they made inquiries into Officer Wann's conduct and culpability in the matter. The errant renters moved out and the nuisances ceased. Officer Kenton T. Wann shortly thereafter no longer appeared to be working as a Corrections Officer for the State of California.

//

## F. CITY COUNCIL

124. On numerous occasions, Plaintiff would Petition the SUISUN CITY COUNCIL about these various grievances and other problems. Substantive relief was not given. In many occasions while appealing to City Council, Plaintiff was ignored or harassed for doing so. One City Councilman, Michael Hudson, wrote denigrating and disparaging age and disability discriminatory remarks at Plaintiff's YouTube social media channel and wrote specifically: "go home and take your meds, you will feel better" showing he did not take Plaintiff seriously. Councilman Hudson also slandered the Plaintiff at a Solano County Sewer Board Meeting by publically saying in front of attendees: "you were kicked out of the Air Force and given a dishonorable discharge" --- a statement that is not true as evidenced by the Plaintiff's DD214 Honorable Discharge Documents that also show Plaintiff's eligibility to re-enlist or to be recalled back to active military service by Order of the Secretary of the Air Force.

125. When Plaintiff presented issues having to do with the disorderedly party house next door to Plaintiff's home, Plaintiff was not given his full 3 minutes as other people giving presentations before CITY COUNCIL are given. City Councilwoman JANE DAY simply rushed Plaintiff off the lectern and told him he could not speak. This is on video and it shows Plaintiff protesting that he was not given his full time to air his problem.

126. Police officers including DADISHO and MATTOS would threaten and give Plaintiff menacing stares and order him to leave the meeting on false pretenses. (The acts of DASHIDO are on tape) This happened at the City Council meetings.

127. Police Chief DADISHO on one instance, got up and approached Plaintiff in a menacing manner, told Plaintiff to leave the meeting, but when he saw that Plaintiff's son had a video camera recording him, DADISHO backed off.

128. At subsequent meetings, DADISHO would call the entire Police Force and they would pour into the meeting to intimidate Plaintiff (this was reported in the Newspaper).

129. Plaintiff has had many problems in SUISUN CITY with either his neighbor's illegal nuisance activities and with their never ending house parties, the Police Officer's Biased Policing

Verified Second Amended Complaint - 18

conduct and the problem with regards to Mr. BLUFORD and his Car Repair Business. No relief has been given due to the incidents with regard to the Neighbor's dogs. Plaintiff has brought these problems to the CITY COUNCIL numerous times searching for redress of his grievances.

130. Plaintiff has been forced to appeal to Agencies outside of the City to get any form of substantive redress. The party house went on for three years and was only resolved when Plaintiff complained to the Dept. of Corrections Internal Affairs and Warden Suzanne Hubbard. The loose dangerous dog problem only gained any traction because the County stepped in. Otherwise, the City Officials continually ignored Plaintiffs complaints. Mr. BLUFORD only had his car operation shut down when Plaintiff complained to the California Air Resources Board. The complaints have gone ignored by Defendants.

//

**G. CONCLUSION**

131. Remedies only come when Plaintiff seeks redress outside of the CITY of SUISUN CITY. Agencies in SUISUN CITY discriminate against Plaintiff directly. The acts and inactions of the SUISUN CITY COUNCIL have effectively shown that they have no interest in protecting or honoring his right to petition for redress of grievances.

132. As a result of Defendant's unlawful conduct, intentional, negligent and reckless behavior and violations of State and Federal laws, Plaintiff was deprived of his freedom, was made to suffer physical and emotional injuries, great pain and suffering and was subjected to great fear and terror, personal humiliation, degradation and continues to suffer physical pain and severe emotional distress.

133. Being assaulted and falsely arrested in front of TV Cameras had the effect of humiliating Plaintiff. Hundreds of thousands of television viewers in Northern California witnessed Plaintiff being assaulted on the Evening News under the assumption that he had done something wrong. The lead story extensive television nightly news coverage on 2 different Sacramento TV Stations characterized Plaintiff in a negative light which caused Plaintiff and his family members to be under continuing embarrassment, humiliation and damage to his

Verified Second Amended Complaint - 19

reputation and special damages, including but not limited to costs associated with the excessive bail set based on Defendant's false statements.

//

# VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### FOURTH AMENDMENT-UNLAWFUL ARREST, 42 USC §1983;

### AGAINST DADISHO, MATTOS; WHITE & URLAUB

134. Plaintiff incorporates by reference the preceding allegations.

135. Defendants detained Plaintiff April 18th, 2012 without reasonable suspicion or probable cause in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to them under the 4th Amendment to the US Constitution. The actions of Defendants infringed on these rights.

136. Defendants were acting or purporting to act in the performance of their official duties and further were acting under Color of Law when engaged in these acts.

137. Plaintiff was harmed due to the acts of the Defendants.

138. Defendants actions were a proximate and substantial factor in causing the harm.

139. The conduct of Defendants MATTOS and URLAUB was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## SECOND CAUSE OF ACTION

### FOURTH AMENDMENT- EXCESSIVE FORCE, 42 USC §1983;

### AGAINST MATTOS & URLAUB

140. Plaintiff incorporates by reference the preceding allegations.

141. This action is brought pursuant to 42 U.S.C. §1983 and the 4th Amendment to the US Constitution. This right protects against the use of excessive force by Law Enforcement and the actions of Defendants violated that right for Plaintiff.

Verified Second Amended Complaint - 20

142. On April 18th, 2012 at or about 8pm Defendant MATTOS without any justification, used excessive force against Plaintiff before arresting him by maliciously slamming his head first into the wall in such a violent manner as to unreasonably cause him injury, trauma and pain. Defendant MATTOS then violently jumped on Plaintiff's back and neck with his shoes and legs causing trauma and injury. The unjustified use of force against Plaintiff and caused him to suffer serious injuries and aggravated previous military service injuries to include back injury.

143. During the incident, URLAUB (according to trial testimony) was being directed by MATTOS and he himself torqued Plaintiff's legs and arms with MATTOS during the false arrest.

144. At the time of the use of excessive force against Plaintiff, he was not engaged in any hostile or combative behavior toward any Police Officers or any other person or persons. As a direct and proximate result of the acts of MATTOS and URLAUB injury and damages were grossly inflicted upon the Plaintiff.

145. MATTOS and URLAUB were engaged as Officers within their official duties when they used excessive force against Plaintiff and their actions proximately caused Plaintiff harm.

146. Plaintiff was harmed and suffered permanent physical injuries and emotional impairments which were proximately caused by the actions of Defendants.

147. Plaintiff posed no immediate threat to the safety of anyone during the incident, so officers had no cause to act as they did.

148. All Officers involved had time to consider the conflicting reports of the accusers.

149. The aforementioned acts of MATTOS and URLAUB were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights, and manifested a complete indifference to the safety of Plaintiff; thereby justifying the award of punitive damages.

//

## THIRD CAUSE OF ACTION

EQUAL PROTECTION, FOURTEENTH AMENDMENT 42 USC §1983;

AGAINST CITY OF SUISUN THE POLICE DEPARTMENT OF SUISUN CITY AND

THOSE OFFICERS UNDER ITS EMPLOYMENT AS WELL AS DADISHO & MATTOS.

150. Plaintiff incorporates by reference the preceding allegations.

151. Plaintiff as an individual and "class of one" has been subjected to ongoing rights disparate treatment without a rational basis.

152. Plaintiff has been subjected to unfair, prejudicial and inequitable treatment by Defendants. The SUISUN CITY POLICE DEPT. and the SUISUN CITY COUNCIL have ignored his complaints on his neighbors and those complaints were actionable substantiated complaints by other Agencies. Others involved in disputes with Plaintiff have enjoyed the protection of the SUISUN CITY POLICE DEPT and has had them act immediately on behalf of their interests and in the same circumstances against Plaintiff with no rational basis other than their own prejudice and or animus against Plaintiff.

153. Plaintiff asserts a violation of equal protection on the following facts.

154. Others individuals similarly situated have enjoyed the Protection of the SUISUN CITY POLICE DEPT and have been treated more favorably than Plaintiff. This includes (but is not limited to) Mr. BLUFORD, Mr. Pareja, Melissa Hoye, Ryan Hoye and their father, former Officer Kenton T. Wann. Plaintiff was similarly situated to each of these people and they were given favorable treatment in circumstances noted above. Defendants treated Petitioner less equitably.

155. In the instance of Corrections Officer Kenton T. Wann, Plaintiff believes that through his connections as a sworn California Peace Officer working for the Department of Corrections, the SUISUN CITY POLICE clearly treated him and his family more favorably with regard to Police protection despite their documented and horrific conduct against Plaintiff.

156. There is no rational basis for more favorably treating these individuals and these actions and pattern of actions amounts to a deprivation of Plaintiff's constitutional rights under the color of law as protected by the 14th Amendment of the US Constitution.

157. The aforementioned acts of these Defendants were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights, and manifested a complete indifference to the safety of Plaintiff; thereby justifying the award of punitive damages.

//

Verified Second Amended Complaint - 22

## FOURTH CAUSE OF ACTION[2]

### DEPRIVATION OF FIRST AMENDMENT CHILLING EFFECT; 42 USC §1983

### AGAINST THE CITY OF SUISUN CITY, DADISHO, URLAUB

158. Plaintiff incorporates by reference the preceding allegations.

159. DADISHO and or the SUISUN CITY COUNCIL had Police Officers come to the City Council Hearings to intimidate him when he spoke. Having Police Officers go to him in the Hearings and threaten him as they did (this is video-taped) has had the effect of intimidating Plaintiff at these open and public meetings which in turn has had a chilling effect on his ability to exercise his First Amendment rights.

160. The actions of Defendants were done under color of authority and infringed on Plaintiff's Constitutional rights under the First Amendment.

161. After the Crime Conference and after Mr. Giddens spoke, Officer Mattos and Urlaub retaliated against Mr. Giddens and in fact beat him up in front of TV Cameras.

162. The aforementioned acts of MATTOS and URLAUB were willful, wanton, malicious, and in reckless disregard of Plaintiff's rights, and manifested a complete indifference to the safety of Plaintiff; thereby justifying the award of punitive damages.

//

## FIFTH CAUSE OF ACTION

### CONSPIRACY AGAINST PLAINTIFF'S CONSTITUTIONAL RIGHTS 42 USC §1985(3)

### AGAINST ALL DEFENDANTS

163. Plaintiff incorporates by reference the preceding allegations.

164. Plaintiff notes that there were several conspiracies in this case.

165. Title 42 U.S.C. §1985 makes it unlawful for any two or more persons to conspire to commit a constitutional violation and/or to deprive another of their constitutional rights.

166. On information or belief, Plaintiff believes that these conspiracies were entered into in part due to the animus by some or all Defendants. Plaintiff asserts this was due to him

---

[2] The Fourth Cause of Action was originally based upon the right to Petition and dismissed. This first amendment claim is based on "Chilling effect" and is thus a new claim based on similar facts/information, but different.

in part to him being vocally outspoken and in so doing, he incurred the wrath of Defendants and through this animus, Defendants conspired against Plaintiff.

### CONSPIRACY 1 (FALSE ARREST/PROSECUTION)[3]

167. During the arrest on April 18th, 2012, the Officers MATTOS and URLAUB conspired with Defendant BLUFORD to falsely arrest, prosecute and convict Plaintiff.

168. The purpose of the conspiracy was to squelch Plaintiff's complaints and in the process, deprive Plaintiff of his right to due process, his right to freedom and enjoyment of his life by placing him in prison (Due Process, Equal Protection and Ninth and Tenth Amendment Rights and privileges to live, travel and be free).

169. Defendants DADISHO, WHITE and MATTOS knowing that evidence established that the BLUFORD charges against Plaintiff were false, knowingly refused to drop the charges against Plaintiff and knowing that the evidence established that the GIDDENS charges against BLUFORD were well founded, refused to charge BLUFORD. Instead, these Defendants conspired to use BLUFORD as their key witness in the false criminal case against Plaintiff. Defendants took the matter to trial and GIDDENS' counsel caught BLUFORD in several lies and was impeached in this process (his credibility was utterly destroyed).

170. Another purpose of the prosecution was to give Defendants "Collateral Estoppel" cover for their illicit actions against GIDDENS ((See Heck v. Humphrey), 512 US 477 (1994)).[4]

---

[3] "To state make out a violation of § 1985(3), as construed in Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971), the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Broth. Of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott , 463 U.S. 825, 828-29 (1983).

[4] In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 1983 Plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a Federal Court's issuance of a writ of habeas corpus, 28 U.S.C. 2254.

171. Plaintiff was wrongfully prosecuted; deprived of Liberty, his reputation was slurred he incurred a large amount of Attorney's Fees and Court costs as well as severe emotional distress, loss of time and the ability to live and enjoy life because of suffering emotional distress.

172. On information and belief, Defendants have conspired against Plaintiff to deprive him of his constitutionally protected rights which include his rights to be free from false arrest (under the 4th Amendment), to enjoy due process and equal protection of the laws (under the 14th Amendment) and not have excessive force inflicted upon Plaintiff by false statements in their reports to justify the false arrest and imprisonment. The Conspiracy also extended to Plaintiff's right to Safety and Peaceful enjoyment of his life and liberty (a 9th Amendment Right).

//

## CONSPIRACY 2 (DOG INCIDENT)

173. On information and belief, Defendant DADISHO and other DOE or DOES agreed and conspired and shared the same conspiratorial objective with each other to violate the aforementioned constitutional rights of Plaintiff.

174. The County had made a finding of probable cause that my neighbor's dog had wrongly attacked Plaintiff and that incident needed to be investigated.

175. DADISHO had no intention to do so and refused to.

176. Plaintiff then took the matter to the SUISUN CITY COUNCIL.

177. DADISHO reversed himself and held a Hearing.

178. DADISHO intentionally arranged a hearing that was a farce and a sham with the intent on not being fair and depriving Plaintiff of his right to due process and equal protection of the laws. Plaintiff was not allowed to present his evidence due to DADISHO and DOE.

179. Plaintiff was injured by not having his right to Due Process enforced.

## CONSPIRACY 3 (NEIGHBORS)

180. The ongoing actions and nuisances of the Neighbors went unchecked.

181. Plaintiff sought protection on numerous occasions from the Police and they would not give any aid or equal protection to Plaintiff.

Verified Second Amended Complaint - 25

182. Plaintiff's neighbors were given full aid and Plaintiff was given no aid. The actions by the SUISUN CITY POLICE DEPT and all Officers thereunder deprived Plaintiff of his right to equal protection of the laws.

183. This pattern of giving the neighbors aid and protection, even though their actions infringed on Petitioner's rights, went on for years. The obviousness of this circumstance could not have been overlooked or happened by accident.

184. Plaintiff was damaged by these circumstances.

185. The conduct of Defendants was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## SIXTH CAUSE OF ACTION

ACTION FOR NEGLECT TO PREVENT; 42 USC §1986

AGAINST SUISUN CITY COUNCIL; SUISUN CITY MANAGER SUZANNE BRAGDON;

EDMOND DADISHO; TIM MATTOS; ANDREW WHITE;

186. Plaintiff incorporates by reference the preceding allegations.

187. The above named Defendants had knowledge of the wrongs that Plaintiff has listed within this complaint, specifically in the Fifth Cause of Action.

188. The above mentioned persons had the ability, if they acted with due and reasonable diligence at any point in time could have stopped and/or prevented the conspiratorial acts that damaged Plaintiff's US Constitutionally protected rights.

189. The above named chose not to prevent the deprivations from occurring.

190. Defendant SUISUN CITY COUNCIL has a policy of not investigating actions of the SUISUN CITY POLICE, even after Plaintiff had brought the actions of the police to their attention on many occasions at City Council Meetings. They neglected to prevent the false prosecution and other actions from happening to Plaintiff even though they had a duty to protect Plaintiff's health and safety as well as investigate harms caused by the Defendants to Plaintiff.

//

## SEVENTH CAUSE OF ACTION

### SUPERVISOR (MONELL) LIABILITY; 42 USC §1983;

### AGAINST SUISUN CITY; SUISUN CITY COUNCIL; POLICE DEPARTMENT OF SUISUN CITY; DADISHO, MATTOS & WHITE.

191. Plaintiff incorporates by reference the preceding allegations.

192. Defendant SUISUN CITY is and at all times herein mentioned has been a public entity and an incorporated Municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendants SUISUN CITY COUNCIL, MAYOR PEDRO SANCHEZ, BRAGDON & DADISHO possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of SUISUN CITY Government and Police along with it's tactics, methods, practices, customs and usages related to internal investigations, personnel supervision, records maintenance as well as the proper use of force by its Police rank and file generally.

193. At all times herein mentioned, Defendants MATTOS, URLAUB, WHITE and other DOE Officers were part of the SUISUN CITY POLICE DEPT acting under DADISHO's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned encouraged the employment, deployment and retention of persons as Peace Officers who have a propensity for brutality, dishonesty, and numerous other abuses of their duties as Peace Officers in the employment of the CITY OF SUISUN CITY and its Police Department.

194. Defendants SUISUN CITY and DADISHO knowingly maintain and permit official *sub-rosa* policies or customs of permitting the occurrence of the kinds of wrongs set forth above, by deliberate indifference to widespread Police abuses, failing and refusing to fairly and impartially investigate, discipline or prosecute Peace Officers who commit acts of felonious dishonesty and violence, each ratified and approved by SUISUN CITY and DADISHO.

195. The unconstitutional policies, practices or customs promulgated, sanction or tolerated by Defendants SUISUN CITY and DADISHO include, but are not limited to:

(A) Defendants are responsible for ensuring that independent investigative and review procedures are in place and that measures are taken to investigate the statements and reports of Police Officers are proper and to ensure that false statements are discovered and that their authors are disciplined and restrained.

(B) Specifically, Plaintiff was singled out as a class of one and Defendant's policy is to both actively and passively single out Plaintiff as an undesirable and worked to marginalize him, not protect him or prosecute others when they harmed him. This is specifically true with regard to the ongoing incident between Plaintiff and his neighbors.

(C) Defendants are also responsible for ensuring that policies and procedures are in place that independently reviews the circumstances of force used by Officers and to ensure that when Officers use excessive force that they are disciplined and retrained. Plaintiff believes and is informed that no review into the use of force has been done.

(D) On information and belief, Defendants are either aware that the current policy and procedure for independently reviewing Officer's statements and reports concerning arrests and the use of force is that there is no adequate policy or procedure for independent review or sufficient investigation of the claims made by Officers following an incident.

(E) Defendants SUISUN CITY and DADISHO refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by Department employees.

(F) Defendants SUISUN CITY, DADISHO and the SUISUN CITY POLICE DEPT reprimand, threatened, intimated, demoted and fired Officers who report acts of abuse or testify honestly (URLAUB).

(G) Defendants SUISUN CITY and DADISHO covered up acts of misconduct and abuse by SUISUN CITY Officers and sanctioned a blue code of silence by and among Officers and management.

(H) Defendants SUISUN CITY, DADISHO and the SUISUN CITY POLICE DEPT failed to adequately supervise the actions of Officers under their control and guidance.

(I) Defendants SUISUN CITY, DADISHO and the SUISUN CITY POLICE DEPT condoned and participated in the practice of prosecuting groundless criminal charges for the purpose of insulating SUISUN CITY and the SUISUN CITY POLICE DEPT and its Officers from civil liability and reducing or dismissing charges against individuals in return for releasing them from civil liability.

(J) Defendants SUISUN CITY, DADISHO and the SUISUN CITY POLICE DEPT and its officers engaged in the custom and practice of refusing to provide Public Prosecutors and Criminal Defendants exculpatory and impeaching evidence as required by law.

(K) Defendants SUISUN CITY, DADISHO and the SUISUN POLICE DEPARTMENT fail and refuse to comply with California Penal Code Section 832.5 and Section 12201€ by withholding from the California Department of Justice known citizen complaints of misconduct, thereby evading the Department's statutory duty to report all known citizen complaints to the California Department of Justice and to mislead the Department of Justice with substantial under reporting known citizen complaints, including the Plaintiff's.

(L) Defendants SUISUN CITY, DADISHO & SUISUN CITY POLICE DEPT fostered and encouraged an atmosphere of lawlessness, abuse and misconduct which represented the unconstitutional policies, practices and customs they engaged in.

196. There is a causal connection between the actions and inactions of the Defendant's wrongful conduct as Supervisors and the constitutional violations committed against Plaintiff. In their definitive those mal actions are so egregious that the unwritten policy of misconduct constituted a manifested acceptance of the Conspirator's conduct that violated Plaintiff's rights to the 1st, 4th and 14th Amendments to the US Constitution.

197. The ongoing conduct specifically against Plaintiff through all of the incidents he endured amounted to a policy in which Plaintiff has been harmed on an ongoing basis and Defendants were engaged in a conspiracy to effectuate them and in this process harm Plaintiff's Constitutional rights. Again, these include Plaintiff's rights to Due Process and Equal Protection

Verified Second Amended Complaint - 29

198. The decision of Defendants not to conduct unbiased internal reviews and other oversight into the actions of Officers amounts to a deliberate policy that infringes on Plaintiff's right to due process. This policy was the link and moving force behind the deprivations of Plaintiff's constitutional rights and harms unjustly inflicted upon Plaintiff.

199. Supervisor Liability amounts to a violation of the aforementioned constitutional rights as applied to the Plaintiff's as per 42 USC §1983.

200. The conduct of Defendants was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants.  Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## EIGHTH CAUSE OF ACTION

## MALICIOUS PROSECUTION, 28 USC 1367(a)

## AGAINST BRANDON BLUFORD

201. Plaintiff incorporates by reference the preceding allegations.

202. Defendant Brandon BLUFORD was actively involved in bringing or continuing the wrongful prosecution of Plaintiff.

203. The Criminal Prosecution ended in Plaintiff's favor.

204. No reasonable person in Defendant's circumstances would have believed that there were reasonable grounds to bring the lawsuit against Plaintiff.

205. Plaintiff was harmed by the Prosecution.

206. The actions of Defendant BLUFORD were a substantial (primary) factor in causing harm to Plaintiff. The conduct of Defendant BLUFORD was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants.  Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## NINTH CAUSE OF ACTION

Verified Second Amended Complaint - 30

ASSAULT & BATTERY; 28 USC 1367(a)

AGAINST MATTOS & URLAUB

207. Plaintiff incorporates by reference the preceding allegations.

208. That MATTOS and URLAUB touched GIDDENS with the intent to harm him.

209 Defendants touched (assaulted) Plaintiff without his consent.

210. Plaintiff was harmed substantially by the actions MATTOS and URLAUB.

211. The Defendants used unnecessary and unreasonable force when attempting to arrest Plaintiff thereby substantially harming him. The use of unreasonable force by the Defendants was substantial factor in causing harm to Plaintiff.

212. A reasonable person would be offended by the assault and force used against Plaintiff, especially due to the harm caused.

213. The conduct of Defendants MATTOS and URLAUB was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including for severe emotional distress, attorney fees and punitive damages.

//

## TENTH CAUSE OF ACTION

### FALSE IMPRISONMENT/FALSEARREST; 28 USC 1367(a)

### MATTOS & URLAUB

212. Plaintiff incorporates by reference the preceding allegations.

213. Plaintiff was wrongfully arrested by Defendants.

214. The arrest was without probable cause or a warrant.

215. Plaintiff was egregiously harmed by the arrest.

216. Defendant's conduct was a substantial factor in causing harm to Plaintiff.

217. The conduct of Defendants MATTOS and URLAUB was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

Verified Second Amended Complaint - 31

//

## ELEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; 28 USC 1367(a)

### AGAINST BLUFORD

218. Plaintiff incorporates by reference the preceding allegations.

219. The actions of Defendant which included the Assault and Battery of Plaintiff as well as the wrongful prosecution through a conspiracy to falsely convict him was outrageous and Defendants had refused to review or revise policies to prevent such abuse amounted to outrageous conduct against Plaintiff.

220. The actions or omissions of each individual Defendant aware of the circumstances was intended to cause defendant emotional distress which includes documented suffering, anguish, fright, horror, anxiety, depression, withdrawal, fear, humiliation, worry and shame.

221. An ordinary person would not be able to cope with the actions noted above.

222. The actions and inactions of Defendant's negligence was a substantial factor in causing the severe emotional distress of Plaintiff. Plaintiff is still suffering because of this. The conduct of Defendant BLUFORD was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## TWELVTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; 28 USC 1367(a)

### AGAINST BLUFORD

223. Plaintiff incorporates by reference the preceding allegations of false arrest, false prosecution and assault and battery upon Plaintiff.

224. The actions of the named Defendant were negligent.

225. That Plaintiff suffered serious emotional distress.

Verified Second Amended Complaint - 32

226. That Defendant's negligence was a substantial factor in causing Plaintiff's serious emotional distress and specifically, this includes emotional distress from suffering, anguish, fright, horror, nervousness, grief, anxiety, withdrawal, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it and would need to seek medical diagnosis and treatment. Defendant inflicted upon Plaintiff acts that were outside the normal scope of human experience.

227. The conduct of Defendants MATTOS and URLAUB was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## THIRTEENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; 28 USC 1367(a)

### AGAINST BLUFORD, MATTOS & URLAUB

228. Plaintiff incorporates by reference the preceding allegations.

229. The actions of Defendants which included the Assault and Battery of Plaintiff as well as the wrongful prosecution through a conspiracy to falsely convict him was outrageous and Defendants had refused to review or revise policies to prevent such abuse amounted to outrageous demonstrated intentional violent conduct against Plaintiff. It was also negligent.

230. The actions or omissions of each individual Defendant aware of the circumstances was intended to cause Defendant severe emotional distress which includes documented suffering, anguish, fright, horror anxiety, depression, withdrawal, fear, humiliation, worry and shame.

231. The Action of Defendant BLUFORD by fabricating the story that Plaintiff had tried to hit him with Plaintiff's Jeep and calling the false arrest in and causing Plaintiff to endure the false arrest and ongoing suffering amounted to Intentional Infliction of Emotional Distress.

232. The Direct actions of Defendant MATTOS and URLAUB by assaulting Plaintiff and not even telling him he was arrested when there was ample opportunity to do so. In lieu of effecting a proper arrest, Defendant MATTOS assaulted Plaintiff directly and intentionally by

slamming Plaintiff violently headfirst into the wall. URLAUB then assisted MATTOS in this false arrest and helped to torque Plaintiff's body including his back, thereby causing Plaintiff intense harm and great pain. These actions by the these Defendants inflicted severe emotional distress and it was their intention to do so.

233. An ordinary person would not be able to cope with the actions noted above.

234. The actions and inactions of Defendants demonstrates intention and was a substantial factor in causing the severe emotional distress of Plaintiff. Plaintiff is still suffering because of this.

The conduct of Defendants MATTOS and URLAUB was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

### FOURTEENTH CAUSE OF ACTION[5]

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; 28 USC 1367(a)

### AGAINST BLUFORD, MATTOS & URLAUB

235. Plaintiff incorporates by reference the preceding allegations of false arrest, false prosecution and assault and battery upon Plaintiff.

236. The actions of the named Defendants were negligent.

237. That Plaintiff suffered serious emotional distress; and

238. That Defendant's negligence was a substantial factor in causing Plaintiff's serious emotional distress and specifically, this includes emotional distress includes suffering, anguish, fright, horror, nervousness, grief, withdrawal, anxiety, worry, shock, humiliation, and shame. Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it.

---

[5] The Separation of Powers Cause of Action was dismissed with Prejudice. This is a new Cause of Action.

239. The botched arrest by MATTOS and URLAUB was negligent and their negligent actions directly harmed Plaintiff.

240. The conduct of Defendants MATTOS and URLAUB was malicious, oppressive and in reckless disregard for Plaintiff's rights and therefore warrants the imposition of exemplary and punitive damages as to Defendants. Plaintiff seeks compensatory damages, including emotional distress, attorney fees and punitive damages.

//

## FIFTEENTH CAUSE OF ACTION

### UNRUH CIVIL RIGHTS ACT CC 52.1 & 57; 28 USC 1367(a)

### AGAINST ALL DEFENDANTS

241. Plaintiff incorporates by reference the preceding allegations.

242. On or about the above State dates, and sometime prior thereto, Defendants and each of them violated Plaintiff's civil rights, guaranteed by the US Constitution, Federal Law, the California Constitution and the laws of the State of California thereby violating the California Civil Code Sections 52.1 and 57 by conducting themselves against the Plaintiff as described above.

243. As a proximate result of the aforementioned acts of Defendants and each of them, Plaintiff suffered damage in a sum according to proof, and is entitled to the damages, statutory damages, treble damages, attorney's fees and costs provided for by California Civil Code Sections 52 and 52.1.

//

## VII. JURY TRIAL DEMANDED

Plaintiff Demands a Jury Trial.

//

## VIII. PRAYER

WHEREFORE, Plaintiff prays for relief as follows:

1. General damages according to proof at trial;

2. Punitive damages (Treble Damages based on Uruh Act) according to proof at trial;

Verified Second Amended Complaint - 35

3. Special damages according to proof at trial;

4. Exemplary damages according to proof at trial;

5. Pain and suffering damages;

6. The Cost of the Criminal Defense;

7. Costs incurred from this suit herein;

8. Attorney's fees under U.S.C. § 1988;

9. Such other and further relief as the Court may deem just and proper.

Dated this __4th___ Day of June 2015 A.D.

Respectfully submitted,

By:_____

Richard Giddens, *Pro Se*
RDGiddens@sbcglobal.net
1505 El Prado Lane
Suisun City, Ca 94585
(707) 434-1066

## VERIFICATION

IT IS HEREBY certified that the facts in the foregoing *Complaint* are true and correct under penalty of perjury to the best of my knowledge and belief.

Dated this __4th___ Day of June 2015.

By: _____

Richard Giddens, *Pro Se*
RDGiddens@sbcglobal.net
1505 El Prado Lane
Suisun City, Ca 94585
(707) 434-1066

Verified Second Amended Complaint - 36