UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GIDDENS, | No. 2:14-cv-0943 TLN AC |
| Plaintiff, | |
| v. | ORDER |
| CITY OF SUISUN, et al., | |
| Defendants. | |

Pending before the court is defendants' Motion to Compel a Mental Examination of pro se plaintiff Richard Giddens, pursuant to Fed. R. Civ. P. 35(a).  ECF No. 83.  The parties filed a Joint Statement including plaintiff's objection to the examination as well as defendants' reason for filing the Motion.  ECF No. 87.  This discovery matter was referred to the undersigned by E.D. Cal. R. ("Local Rule") 302(c)(1).

I.   BACKGROUND

Plaintiff filed his complaint on May 23, 2016, alleging multiple causes of action against several defendants.  ECF No. 1.  Plaintiff's second amended complaint ("SAC") was adopted by this court as the operative complaint.  ECF No. 44.  The SAC alleges ongoing hostility by defendants against plaintiff, an illegal arrest, assault and battery, false prosecution, and both intentional and negligent infliction of emotional distress.  ECF No. 39 at 2.

////

1    Plaintiff alleges that as a result of defendants' conduct, he is currently "under the care of
2    Air Force Doctors including an Air Force Neurologist for his still occurring concussive symptoms
3    – dizziness, headaches, tinnitus, memory loss, sensitivity and pain from noise along with
4    nightmares as a result of the severe emotional distress brought from the acts of Defendants Mattos
5    and Urlab." Id. at 8, ¶ 53. Plaintiff claims to suffer, as a result of defendants' conduct, "physical
6    and emotional injuries, great pain and suffering" and alleges he was "subjected to great fear and
7    terror, personal humiliation, degradation" and he "continues to suffer physical pain and severe
8    emotional distress." Id. at 19, ¶ 132. Plaintiff seeks damages for intentional and negligent
9    infliction of emotional distress, asserting that he has experienced "documented suffering, anguish,
10   fright, horror anxiety, depression, withdrawal, fear, humiliation, worry, and shame." Id. at 33,
11   ¶230, see also ¶¶ 228-240.
12        On June 19, 2017, defendants filed a motion to compel a mental examination of plaintiff
13   pursuant to Federal Rule of Civil Procedure 35. ECF No. 83 at 1. The parties filed a joint
14   statement regarding the discovery disagreement on July 5, 2017. ECF No. 87. The joint
15   statement indicates that the parties adequately engaged in the meet and confer process, and
16   describes their efforts in sufficient detail. Id. at 2-3. Plaintiff filed a separate opposition to the
17   motion to compel on July 11, 2017. ECF No. 95. The court held a hearing on the motion on July
18   12, 2017. ECF No. 96. At the hearing, the court informed the plaintiff that it would disregard his
19   opposition to the motion to compel as procedurally improper under Local Rule 251.

20   II.   DISCUSSION
21   a.    Rule 35 Mental Examination

22   Plaintiff makes specific allegations regarding emotional distress and ongoing psychiatric
23   symptoms and distress, and therefore a mental health examination is warranted. Rule 35 of the
24   Federal Rules of Civil Procedure allows a court, upon motion and for good cause, to order a
25   mental examination by a suitably licensed or certified examiner of a party whose mental
26   condition is "in controversy." Fed. R. Civ. P. 35(a); (1964). The requirements "are not met by
27   mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an
28   affirmative showing by the movant that each condition as to which the examination is sought is

really and genuinely in controversy and that good cause exists for ordering each particular examination." Schlagenhauf, 379 U.S. at 118.

To establish that a mental condition is "in controversy," the moving party should demonstrate one or more of the following factors:

(1) a cause of action for intentional or negligent infliction of emotional distress;

(2) an allegation of a specific mental or psychiatric injury or disorder;

(3) a claim of unusually severe emotional distress;

(4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or

(5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

Turner v. Imperial Stores, 161 F.R.D. 89, 95 (S.D.Cal.1995).

Although Rule 35 "is to be construed liberally in favor of granting discovery," "garden-variety" emotional distress is insufficient to put plaintiff's mental state in controversy. Turner, 161 F.R.D. at 96; see also Schlagenhauf, 379 U.S. at 118. "Garden-variety" emotional distress related claims have been characterized as "claims of generalized insult, hurt feelings, and lingering resentment' that 'do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life." Ortiz v. Potter, 2010 WL 796960, at *3 (E.D.Cal. Mar.5, 2010) (quoting Javeed v. Covenant Medical Center Inc., 218 F.R.D. 178, 179 (N.D. Iowa, Apr.3, 2001). Other courts have distinguished "garden-variety" emotional distress from claims of "psychic injury or psychiatric disorder." Houghton v. M & F Fishing, Inc., 198 F.R.D. 666, 668 (S.D. Cal. Jan.10, 2001).

Here, plaintiff's mental condition is plainly "in controversy." Plaintiff specifies in the SAC that his concussive symptoms are still present and he is still under the care of Air Force medical staff. ECF No. 39 at 8, ¶ 53. Though some of his allegations may involve garden-variety emotional distress, symptoms such as memory loss and nightmares are significantly more serious. Id. at ¶53. As detailed above, plaintiff alleges specific forms of psychiatric impairment that significantly disrupt his life and that he attributes to defendants' actions. See, e.g., ECF No. 39 at ¶¶ 53, 132. Therefore, plaintiff's mental condition is "in controversy."

3

Additionally, defendants have shown good cause to compel the mental health examination. "To establish 'good cause' exists for the [mental health examination], the moving party generally must offer specific facts showing the examination is necessary and relevant to the case." Nguyen v. Qualcomm Inc., No. CIV. 09-1925-MMA WVG, 2013 WL 3353840, at *3 (S.D. Cal. July 3, 2013). However, "regardless of whether the 'good cause' requirement is met, it is within the Court's discretion to determine whether to order an examination." Id. In this case, defendants have offered ample facts to establish good cause. A mental examination is necessary for this case because it is the only way to determine whether plaintiff has actually experienced the emotional and psychological injuries alleged. There are very few ways, if any, to obtain information about plaintiff's emotional and psychological injuries besides a mental examination. Therefore, defendants' motion to compel plaintiff to undergo a mental health examination will be GRANTED.

### b. Presence of ADA Advocate During Mental Examination

Plaintiff has insisted that his "ADA Advocate" be permitted to remain with him in the exam room during the examination. Defendant seeks an order excluding the advocate. Since the presence of "[t]hird party observers may, regardless of their good intentions, contaminate a mental examination," they are usually not allowed in the exam room. Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609-10 (C.D. Cal. 1995). The majority of federal courts have prohibited third parties – whether attorneys, stenographers, videographers, or other observers – from attending Rule 35 medical and psychiatric examinations. See Holland v. United States, 182 F.R.D. 493, 495 (D.S.C. 1998) (collecting cases). For the reasons that follow, plaintiff's request is denied and defendants' motion is granted.

As a preliminary matter, the court addresses plaintiff's contention that defendants are violating prior orders of this court by refusing to agree to the presence of his advocate. This contention is based on a fundamental misunderstanding. Plaintiff's portion of the Joint Statement refers to the presence of his advocate as a "Court ordered Accommodation," and repeatedly asserts that the undersigned has "already granted the Plaintiff's ADA right to reasonable accommodations" by approving the assistance of his "ADA Advocate." See ECF No. 87 at 9, 10.

1  The court has made no such ruling.  The court has permitted, as a courtesy and solely for the
2  purpose of appearances in the undersigned's courtroom, plaintiff's "ADA Advocate" to sit next to
3  him at counsel table.  The court has not found that plaintiff has any legal entitlement to the
4  assistance of an advocate as an accommodation.  Indeed, the court has not previously addressed
5  that question.

6  In opposition to the motion to compel, plaintiff maintains that he has a legal right under
7  the ADA to the assistance of a "certified ADA Advocate" as an accommodation, both in general
8  and in relation to the Rule 35 examination.[1]  He has produced no authority for this proposition,
9  and the court has identified none.[2]  Plaintiff argues that the advocate is necessary for his
10 participation due to his disability, and that excluding her would be analogous to banning a
11 wheelchair or "seeing eye" dog from the exam room.  The court rejects this analogy.  Ms. Hagan
12 is plaintiff's advocate rather than an aide, and she is a person rather than an inanimate object or an
13 animal.   Neither mobility assistance devices nor service animals perform an advocacy function or
14 are likely to affect the exam by their presence.

15 When asked at hearing to explain how the presence of his advocate would accommodate
16 his disability, plaintiff explained that she helps him to calm down when distressed.  Plaintiff's
17 mental and emotional state is the subject of the examination.  Third parties are excluded from
18 forensic mental examinations, as a general rule, precisely because their presence can contaminate
19 the exam.  Ragge, 165 F.R.D. at 609-10; see also ECF No. 87-1 (Declaration of Mary Ann Yaeil
20 Kim, Ph.D.).[3]  Plaintiff's own reason for wanting his advocate in the room demonstrates why she

---

[1] Plaintiff has provided no information regarding the nature of the "certification," or his assistant's background and training.

[2] Plaintiff relies on general accommodation principles.  The court's research has identified no statutory or regulatory authority requiring the provision of "ADA Advocates" as an accommodation, and no case law permitting (or even specifically addressing) the presence of an "ADA Advocate" or "ADA Assistant" at a Rule 35 exam.

[3] Dr. Kim, the Rule 35 examiner, declares: "In my more than 30 years of clinical experience, I have never permitted the presence of a third party in the examination room while the interview and examination are being conducted. The presence of a third party would inhibit the examination. The presence of a third party, regardless of the intention of that third party, impacts and alters the results of the testing. The presence of a third party could render much of the testing invalid." ECF No. 87-1 at 3.

1  may not be – her presence is likely to affect plaintiff's emotional state, which is the subject of the

2  evaluation.  Accordingly, the advocate's presence would create doubts about the validity of the

3  exam.  That would defeat the purposes of Rule 35.

4        Because the presence of a third party would adversely affect the evaluation, the court

5  agrees with those many district courts which have excluded observers from Rule 35 mental

6  examinations.  See, e.g., Ragge, supra; Tomlin v. Holecek, 150 F.R.D. 628, 631-32 (D. Minn.

7  1993); Galieti vs. State Farm Mutual Automobile Ins. Co., 154 F.R.D. 262, 265 (D. Colo. 1994);

8  Ashley v. San Francisco, 2013 WL 2386655, *3-4 (N.D. Cal. May 30, 2013); Ayat v. Societe Air

9  France, 2007 WL 1120358, * 7 (N.D. Cal. Apr. 16, 2007).[4]  Accordingly, defendants' request that

10  plaintiff's advocate be barred from the exam room during the examination is GRANTED.

11  Plaintiff's advocate will be permitted to accompany plaintiff to his appointment and be present in

12  the waiting room during the examination, but she may not enter the exam room.

13                c.   Request for Recording Mental Examination

14        Plaintiff also requests that the examination be video recorded or, in the alternative, audio

15  recorded.  Videography of a mental examination is inappropriate for the same reason that the

16  assistance of an "ADA Advocate" is impermissible – it involves the presence of a third party,

17  which would undermine the purposes of the examination.  See Holland, 182 F.R.D. at 496.

18  Plaintiff's request for video recording is therefore denied.

19        Defendants have agreed as a courtesy, and in the spirit of cooperation, to permit audio

20  recording of the examination with limitations that are addressed below.  The court will order the

21  procedures for audio recording that were agreed to by the parties at oral argument.  The court

22  makes no finding that plaintiff is legally entitled to audio recording, but will enforce the

23  agreement of the parties regarding how it shall proceed.[5]

24  ////

---

[4] Plaintiff contends that the opinions of other district courts do not constitute legal authority. Plaintiff is incorrect.  While only authority from the U.S. Supreme Court and Ninth Circuit Court of Appeals is binding on this court and *must* be followed, a federal court may rely on and extrapolate from other district court decisions as persuasive authority.

[5] The court recognizes that plaintiff continues to assert entitlement to the presence of his advocate and to video recording.

Defendants agree to audio-recording of the examination, with the exception of those portions involving proprietary testing (i.e., the administration of psychometric testing instruments that constitute protected intellectual property). At hearing, plaintiff expressed understanding of and agreement to this limitation. Accordingly, the parties are directed to meet and confer and determine who will provide the recording device. Regardless of who provides the recording equipment, the examiner will conduct and have sole control over the recording during the examination. Only the examiner may start and stop the recording. The examiner may stop the recording only during portions of the exam involving the use of proprietary tests. Both parties will be able to access or receive a copy of the recording after completion of the examination. The recording will be subject to the terms of the Protective Order in place in this case.

### III.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Compel Mental Examination Pursuant to Fed. R. Civ. P. 35, ECF No. 83, is GRANTED;
2. Defendants' request that plaintiff's "ADA Advocate" be barred from the exam room while the mental health examination is conducted is GRANTED. However, the advocate may accompany plaintiff to the location of the examination, and remain in the waiting room during the examination.
3. The Rule 35 examination will be audio recorded, using a device provided by either of the parties or by the examiner. The examiner will be in charge of starting and stopping the recording pursuant to the terms set forth above. Both parties will have equal access to or copies of the audio recording of the mental examination.

DATED: July 14, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE