GREGG A. THORNTON (SBN 146282)
gthornton@selmanbreitman.com
DANIELLE K. LEWIS (SBN 218274)
dlewis@selmanbreitman.com
SELMAN BREITMAN LLP
33 New Montgomery, Sixth Floor
San Francisco, CA 94105-4537
Telephone: 415.979.0400
Facsimile: 415.979.2099

Attorneys for Defendants
CITY OF SUISUN CITY, SUISUN CITY COUNCIL, MAYOR
PEDRO SANCHEZ, CITY COUNCIL MEMBERS JANE DAY and
MIKE HUDSON,  SUISUN CITY POLICE DEPARTMENT,
POLICE CHIEF EDMOND DADISHO, COMMANDER TIM
MATTOS, SERGEANT ANDREW WHITE, and OFFICER
MICHAEL URLAUB

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GIDDENS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUISUN; SUISUN CITY COUNCIL; MAYOR PEDRO SANCHEZ (DOE 3); CITY COUNCIL MEMBERS JANE DAY (DOE 4); MIKE HUDSON (DOE 5); MIKE SEGALA (DOE 6); LORI WILSON (DOE 7); CITY MANAGER SUSAN BRAGDON; SUISUN CITY ATTORNEY ANTHONY TAYLOR (DOE 1); SUISUN CITY POLICE DEPARTMENT; POLICE CHIEF EDMOND DADISHO; COMMANDER TIM MATTOS; SERGEANT ANDREW WHITE; OFFICER MICHAEL URLAUB; BRANDON BLUFORD (DOE 2); AND DOES 8-10,<br><br>Defendants. | Case No. 2:14-cv-0943 TLN AC (PS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:      December 20, 2017<br>Time:      10:00 a.m.<br>Judge:     Hon. Allison Claire<br>Ctrm.:     26<br><br>Trial Date:        April 16, 2018 |

Selman Breitman LLP
ATTORNEYS AT LAW

376591 1 555 33710

# TABLE OF CONTENTS

**Page**

I.   CONCISE STATEMENT OF ISSUES TO BE DECIDED AND RELIEF SOUGHT ........................................................................... 1

II.  INTRODUCTION ................................................................................. 1

III. STATEMENT OF FACTS ..................................................................... 3

IV.  POINTS AND AUTHORITIES .............................................................. 7

    A.  Summary Judgment Is Appropriate Where There Is No Genuine Issue As To Any Material Fact................................................ 7

    B.  GIDDENS' Claims Under The Fourth Amendment Are Barred As The Actions Of Defendants Were Reasonable As A Matter Of Law ................................................................................ 8

        (1)  There Was Reasonable Suspicion Sufficient To Detain GIDDENS ........................................................................ 8

        (2)  GIDDENS' Cannot Prevail On His Claim For Unlawful Arrest As Defendants Had Probable Cause To Arrest ....................................................................................... 9

            a)  There Was Probable Cause To Arrest GIDDENS For Violation of Penal Code § 245(a)(1) ...................................................................... 11

            b)  There Was Probable Cause To Arrest GIDDENS For Violation of Penal Code § 69 .............. 12

            c)  There Was Probable Cause To Arrest GIDDENS For Violation of Penal Code § 148(a)(1) ...................................................................... 13

        (3)  The Force Used By MATTOS And URLAUB Did Not Violate GIDDENS' Fourth Amendment Rights As The Force Used Was Reasonable As A Matter Of Law.................................................................................... 15

            a)  Detention/Arrest.................................................... 16

            b)  Handcuffing ......................................................... 18

    C.  GIDDENS' Claims Under The First Amendment Are Barred.................................................................................... 18

Selman Breitman LLP
ATTORNEYS AT LAW

ii

376591 1 555 33710

D.   Defendants Cannot Be Held Liable Under *Monell* ............................. 20

E.   Defendants Are Entitled To Qualified Immunity For Their
Actions And Are Immune From Suit ........................................ 22

   (1)   Defendants' Actions Did Not Violate GIDDENS'
Constitutional Rights ................................................. 23

   (2)   Defendants Are Entitled to Qualified Immunity ...................... 23

F.   GIDDENS' Claims For False Arrest/Imprisonment Are
Barred As The Defendant Officers' Actions Conformed
With The Law ........................................................ 24

   (1)   MATTOS and URLAUB Are Not Liable For False
Arrest/Imprisonment As There Was Reasonable
Cause To Arrest GIDDENS ........................................... 24

   (2)   MATTOS And URLAUB Are Not Liable For False
Arrest/Imprisonment As The Arrest Was Made
Following A Citizen's Arrest ....................................... 24

G.   GIDDENS Cannot Establish Claims For Assault Or Battery ............. 25

H.   GIDDENS Cannot Establish A Claim For Intentional
Infliction Of Emotional Distress Or Negligent Infliction Of
Emotional Distress .................................................. 26

   (1)   Intentional Infliction of Emotional Distress ........................... 26

   (2)   Negligent Infliction of Emotional Distress ............................ 27

I.   GIDDENS' Claim For Violation of the Unruh Act Is Barred ............. 28

V.   CONCLUSION ......................................................... 29

Selman Breitman LLP
ATTORNEYS AT LAW

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591.1 555 33710

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page(s)**

*Alabama v. White*
    496 U.S. 325 (2000) ................................................................... 8

*Alexander v. City and Cnty of San Francisco*
    29 F.3d 1355 (9th Cir. 1994) .................................................... 15

*Anderson v. Creighton*
    483 U.S. 635 (1987) ................................................................... 22

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ..................................................................... 7

*Arkansas v. Sullivan*
    532 U.S. 769 (2001) (per curiam).............................................. 13

*Arpin v. Santa Clara Valley Trans. Agency*
    261 F.3d 912 (9th Cir. 2001) ..................................................... 11

*Atwater v. City of Lago Vista*
    532 U.S. 318 (2001) ................................................................... 10

*Billington v. Smith*
    292 F.3d 1177 (9th Cir. 2002) ................................................... 15

*Bingham v. City of Manhattan Beach*
    341 F.3d 939 (9th Cir. 2003) ..................................................... 13

*Blankenhorn v. City of Orange*
    485 F.3d 463 (9th Cir. 2007) .............................................. 12, 23

*Burke v. Cty. of Alameda*
    352 F. App'x 216 (9th Cir. 2009)............................................... 26

*Cabrera v. City of Huntington Park*
    159 F.3d 374 (9th Cir. 1998) ..................................................... 10

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ..................................................................... 7

*Devenpeck v. Alford*
    543 U.S. 146 (2004) .............................................................. 10, 13

Selman Breitman LLP
ATTORNEYS AT LAW

iv

376591.1 555.33710

*Dietrich v. John Ascuaga's Nugget*
   548 F.3d 892 (9th Cir. 2008) ......................................................... 19

*Field v. Cty. of Orange*
   349 F.App'x 222 (9th Cir. 2009) ................................................... 14

*Forrester v. City of San Diego*
   25 F.3d 804 (9th Cir. 1994) .......................................................... 16

*Graham v. Connor*
   490 U.S. 386 (1989) ............................................................... 15, 24

*Ha v. Liberty Lake*
   2010 WL 4065491 (E.D. Wa. Oct. 15, 2010) ................................. 17

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ...................................................................... 21

*Haynie v. County of Los Angeles*
   339 F.3d 1071 (9th Cir. 2003) ...................................................... 22

*Horton v. California*
   496 U.S. 128 (1990) ...................................................................... 13

*Hunter v. Bryant*
   502 U.S. 224 (1991) ................................................................. 21-23

*I.H. by & through Hunter v. Oakland Sch. for Arts*
   234 F. Supp. 3d 987 (N.D. Cal. 2017) .......................................... 27

*Illinois v. Gates*
   462 U.S. 213 (1983) .................................................................. 9, 12

*Illinois v. Wardlow*
   528 U.S. 119 (2000) ........................................................................ 8

*Jackson v. City of Bremerton*
   268 F.3d 464 (9th Cir. 2001) ........................................................ 15

*Jackson v. City of Bremerton*
   268 F.3d 646 (9th Cir. 2001) ........................................................ 22

*Jeffers v. Gomez*
   267 F.3d 895 (9th Cir. 2001) ........................................................ 18

*John v. City of El Monte*
   505 F.3d 907 (9th Cir. 2007) ........................................................ 10

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

376591 1 555 33710

*John v. City of El Monte*
  515 F.3d 936 (9th Cir. 2008) ............................................................... 9

*Johnson v. County of Los Angeles*
  340 F.3d 787 (9th Cir. 2003) ..........................................................14-15

*Jones v. Williams*
  297 F.3d 930 (9th Cir. 2002) ...........................................................9-10

*Long v. City and County of Honolulu*
  511 F.3d 901 (9th Cir.2007), cert. denied, 555 U.S. 816 (2008) ............... 26

*Luong v. City & County of San Francisco*
  2012 WL 5869561 (N.D. Cal. Nov. 19, 2012) ..................................... 17

*Maidhof v. Celaya*
  641 Fed. Appx. 734 (9th Cir. 2016) ................................................... 19

*Maldonado v. Harris*
  370 F.3d 945 (9th Cir. 2004) ............................................................ 18

*Malley v. Briggs*
  475 U.S. 335 (1986) ....................................................................... 23

*McDade v. West*
  223 F.3d 1135 (9th Cir. 2000) .......................................................... 21

*Mejia v. City of San Bernardino*
  2012 WL 1079341 (C.D.Cal. March 30, 2012)...................................... 25

*Mendocino Environmental Center v. Mendocino County*
  192 F.3d 1283 (9th Cir. 1999) .......................................................... 18

*Meyers v. Redwood City*
  400 F.3d 765 (9th Cir. 2005) ............................................................ 24

*Michigan v. DeFillippo*
  443 U.S. 31 (1979) .......................................................................... 9

*Monell v. Dep't of Soc. Servs.*
  436 U.S. 658 (1978) ....................................................................20-21

*Morgan v. Woesnner*
  997 F.2d 1244 (9th Cir. 1993).........................................................8, 23

*Nadell v. Las Vegas Police Dept.*
  268 F.3d 924 (9th Cir. 2001) ............................................................ 20

vi

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

*Orsak v. Metro. Airports Comm'n Airport Police Dept.*
   675 F.Supp.2d 944 (D.Minn. 2009) ................................................ 17

*Oviatt v. Pearce*
   954 F.2d 1470 (9th Cir.1992) ........................................................ 20

*Pembaur v. City of Cincinnati*
   475 U.S. 469 (1986) ...................................................................... 21

*Peng v. Hu*
   335 F.3d 970 (9th Cir.2003) .......................................................... 11

*Pierson v. Ray*
   386 U.S. 547 (1967) ........................................................................ 9

*Portnoy v. City of Woodland*
   2013 WL 2156560 (E.D. Cal. May 17, 2013), aff'd, 611 F.App'x 921
   (9th Cir. 2015) .............................................................................. 26

*Price v. Cty. of San Diego*
   990 F.Supp. 1230 (S.D.Cal. 1998) ................................................ 27

*Rudebusch v. Hughes*
   313 F.3d 506 (9th Cir. 2002) ........................................................ 23

*Saucier v. Katz*
   533 U.S. 194 (2001) ...................................................................... 22

*Scott v. Henrich*
   39 F.3d 912 (9th Cir. 1994) .......................................................... 15

*Scott v. United States*
   436 U.S. 128 (1978) ...................................................................... 13

*Siegert v. Gilley*
   500 U.S. 226 (1991) ...................................................................... 22

*Spears v. City and Cnty of San Francisco*
   2008 WL 2812022 (N.D.Cal. 2008) .............................................. 20

*Tatum v. City and County of San Francisco*
   441 F.3d 1090 (9th Cir. 2006) ...................................................... 16

*Taylor v. List*
   880 F.2d 1040 (9th Cir.1989) ..................................................... 9-10

Selman Breitman LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591 1 555 33710

*Tekle v. United States*
    511 F.3d 839 (9th Cir. 2007) ................................................................... 24

*Terry v. Ohio*
    392 U.S. 1 (1968) ................................................................................... 15

*Thompson v. City of Los Angeles*
    885 F.2d 1439 (9th Cir. 1989) ................................................................. 21

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996) ..................................................................... 21

*United States v. Del Vizo*
    918 F.2d 821 (9th Cir.1990) ..................................................................... 10

*United States v. Lopez*
    482 F.3d 1067 (9th Cir. 2007) .................................................................... 9

*United States v. Mota*
    982 F.2d 1384 (9th Cir. 1993) ............................................................ 10-11

*United States v. Valencia*
    *24 F.3d 1106 (9th Cir. 1994)* ................................................................. 10

*Villegas v. Gilroy Garlic Festival Ass'n*
    541 F.3d 950 (9th Cir. 2008) ................................................................... 20

*Whitaker v. Garcetti*
    486 F.3d 572 (9th Cir. 2007) ................................................................... 20

*Whren v. United States*
    517 U.S. 806 (1996) ............................................................................... 13

**State Cases**

*Cole v. Fair Oaks Fire Protection District*
    43 Cal.3d 148 (1987) ............................................................................. 25

*Davidson v. City of Westminster*
    32 Cal.3d 197 (1982) ............................................................................. 25

*Edson v. City of Anaheim*
    63 Cal.App.4th 1269 (1998) ............................................................... 24-25

*Fluharty v. Fluharty*
    59 Cal.App.4th 484 (1997) ..................................................................... 26

Selman Breitman LLP
ATTORNEYS AT LAW

viii

376591.1 555 33710

*In re Gregory S.*
    112 Cal.App.3d 764 (1980) ................................................................. 14, 16

*Hamburg v. Wal-Mart Stores*
    116 Cal.App.4th 497 (2004) ...................................................................... 24

*J.L. v. Children's Institute, Inc.*
    177 Cal.App.4th 388 (2009) ...................................................................... 27

*In re Jose D.R.*
    137 Cal.App.3d 269 (1982) .......................................................................... 8

*Levin v. United Airlines*
    158 Cal.App.4th 1002 (2008) .................................................................... 23

*In re Manuel G.*
    16 Cal.4th 805 (1997) ................................................................................ 12

*Myung Chang v. Lederman*
    172 Cal.App.4th 67 (2009) ........................................................................ 25

*People v. Aguilar*
    16 Cal.4th 1023 (1997) ........................................................................... 8-11

*People v. Allen*
    109 Cal.App.3d 981 (1980) ........................................................................ 14

*People v. Mower*
    28 Cal.4th 457 (2002) ................................................................................ 23

*People v. Russell*
    129 Cal. App. 4th 776 (2005) .................................................................. 8, 11

*People v. Smith*
    57 Cal.4th 232 (2013) ................................................................................ 12

*People v. Wingo*
    14 Cal.3d 169 (1975) ............................................................................... 9, 11

*People v. Wright*
    100 Cal.App.4th 703 (2002) ................................................................... 8, 11

*Potter v. Firestone Tire & Rubber Co.*
    6 Cal.4th 965 (1993) .................................................................................. 26

*Susag v. City of Lake Forest*
    94 Cal.App.4th 1401 (2002) ...................................................................... 25

Selman Breitman LLP
ATTORNEYS AT LAW

ix

376591.1 555.33710

*In re Tony C.*
   21 Cal.3d 888 (1978) .......................................................................... 14, 16

**Federal Statutes**

42 USC § 1983 ...........................................................................2, 9-10, 18

Federal Rule of Civil Procedure 56 ................................................................ 14

**State Statutes**

Civil Code § 51.7 ................................................................................... 34

Code of Civil Procedure § 335.1 ................................................................ 18

Penal Code § 69 ............................................................................... 5, 12

Penal Code § 148(a)(1) ........................................................................... 14

Penal Code § 245(a)(1) ..................................................................5, 8, 10-13

Penal Code § 834(a) ............................................................................... 14

Penal Code § 847 (b) ............................................................................... 23

Vehicle Code § 23103 ............................................................................... 8

Selman Breitman LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591 1 555 33710

1    I.    **CONCISE STATEMENT OF ISSUES TO BE DECIDED AND RELIEF SOUGHT**

2          Defendants CITY OF SUISUN CITY, SUISUN CITY COUNCIL, MAYOR PEDRO

3    SANCHEZ ("SANCHEZ"), CITY COUNCIL MEMBERS JANE DAY ("DAY") and

4    MICHAEL HUDSON ("HUDSON"), SUISUN CITY POLICE DEPARTMENT, EDMOND

5    DADISHO ("DADISHO"), TIM MATTOS ("MATTOS"), ANDREW WHITE ("WHITE") and

6    MICHAEL URLAUB ("URLAUB") (collectively "Defendants") hereby move this court for an

7    order of summary judgment on the grounds that (1) MATTOS, URLAUB, WHITE, and

8    DADISHO cannot be held liable to plaintiff RICHARD GIDDENS ("GIDDENS") for any

9    alleged violation of his rights under the Fourth Amendment; (2) DADISHO, URLAUB, and

10   CITY OF SUISUN CITY cannot be held liable to GIDDENS for any alleged violation of his

11   rights under the First Amendment; (3) CITY OF SUISUN CITY, SUISUN CITY COUNCIL,

12   SUISUN CITY POLICE DEPARTMENT, SANCHEZ, DADISHO, MATTOS, and WHITE

13   cannot be held liable to GIDDENS under *Monell*; (4) Defendants are qualifiedly immune from

14   this suit; (5) MATTOS and URLAUB cannot be held liable to GIDDENS for false arrest or

15   false imprisonment; (6) MATTOS and URLAUB are not liable to GIDDENS for assault or

16   battery; (7) MATTOS and URLAUB cannot be held liable to GIDDENS for intentional

17   infliction of emotional distress or negligent infliction of emotional distress; and (8) CITY OF

18   SUISUN CITY, SUISUN CITY COUNCIL, SUISUN CITY POLICE DEPARTMENT,

19   DADISHO, MATTOS, WHITE, DAY, and HUDSON cannot be held liable to GIDDENS under

20   the Unruh Act.

21   II.   **INTRODUCTION**

22          On April 17, 2014, GIDDENS filed a complaint against CITY OF SUISUN CITY,

23   BRAGDON, SUISUN CITY ATTORNEY, DADISHO, MATTOS, WHITE, and URLAUB.

24   (ECF 1)  On September 2, 2014, Defendants moved to dismiss GIDDENS' complaint.  (ECF 6)

25   On October 20, 2014, this court issued findings and recommendations.  (ECF 19)  On

26   November 17, 2014, District Judge Troy Nunley issued an order adopting the findings and

27   recommendations in full.  (ECF 21)

28   ///

Selman Breitman LLP
ATTORNEYS AT LAW

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591 1 555 33710

1    On December 22, 2014, GIDDENS filed a First Amended Complaint for Damages.

2    (ECF 23)  On January 6, 2015, Defendants filed a motion to dismiss. (ECF 27)  On February 17,

3    2015, this court issued findings and recommendations. (ECF 35)  On April 24, 2015, District

4    Judge Nunley issued an order adopting the findings and recommendations in full. (ECF 37)

5    Next, on June 5, 2015, GIDDENS filed a motion for leave to file an amended complaint

6    (ECF 38) and filed a second amended complaint.  (ECF 39).  Defendants filed an opposition to

7    GIDDENS' motion for leave to file an amended complaint. (ECF 41)  On January 29, 2016, this

8    court issued findings and recommendations. (ECF 44)  On February 5, 2016, this court issued

9    amended findings and recommendations. (ECF 46)  On March 23, 2016, District Judge Nunley

10   issued an order adopting the findings and recommendations in full. (ECF 48) GIDDENS' second

11   amended complaint was deemed to be the operative complaint. *Id.*

12   GIDDENS' action now consists of the following claims:  (1) Fourth Amendment—

13   Unlawful Arrest, 42 USC §1983 against DADISHO, MATTOS, WHITE and URLAUB; (2)

14   Fourth Amendment—Excessive Force, 42 USC §1983 against MATTOS and URLAUB; (3)

15   Deprivation of First Amendment Rights, 42 USC §1983 against SUISUN CITY, DADISHO,

16   and URLAUB; (4) Supervisor (*Monell*) Liability, 42 USC §1983 against SUISUN CITY, CITY

17   COUNCIL, SUISUN CITY POLICE DEPARTMENT, SANCHEZ, DADISHO, MATTOS, and

18   URLAUB; (5) Assault & Battery against MATTOS and URLAUB; (6) False Imprisonment/

19   False Arrest against MATTOS and URLAUB; (7) Intentional Infliction of Emotional Distress

20   against MATTOS and URLAUB; (8) Negligent Infliction of Emotional Distress, against

21   MATTOS and URLAUB, and (9) Unruh Civil Rights Act – against SUISUN CITY, CITY

22   COUNCIL, SUISUN CITY POLICE DEPARTMENT, DADISHO, MATTOS, WHITE, DAY,

23   AND HUDSON.[1]  (ECF 46, 48)  The Court's order deemed that the claim under the Unruh

24   Civil Rights Act would be construed to be based upon GIDDENS' political affiliation.  (ECF 46,

25   48).

_____

27   [1] Defendant BRANDON BLUFORD is alleged to be a private citizen and is not represented by counsel
herein.  To the extent any claims are alleged against BRANDON BLUFORD, those claims are not the
28   subject of this motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

376591 1 555 33710

III.   **STATEMENT OF FACTS**

**April 18, 2012**

On April 18, 2012, MATTOS was attending and speaking at a community meeting at the Joe Nelson Community Center. (Statement Undisputed Facts "SUF" 1)  DADISHO, WHITE, and URLAUB were also in attendance at the community meeting. (SUF 2)  GIDDENS also attended the meeting. (SUF 3)

At approximately 7:34 p.m., police dispatch notified WHITE that officers were investigating a report of GIDDENS attempting to run down his neighbors with his vehicle. WHITE understood that this had occurred while GIDDENS was in route to the community meeting. (SUF 4)

WHITE contacted Officer David O'Brien, the investigating officer, via telephone to let him know that GIDDENS was at the meeting. (SUF 5)  Officer O'Brien briefed WHITE on the investigation and informed WHITE that one of the victims, Brandon Bluford, requested that GIDDENS be placed under citizen's arrest and had signed a citizen's arrest form.  (SUF 6) WHITE understood that GIDDENS had been driving his vehicle, had accelerated towards the victims and that his victims had to jump out of the way to avoid being hit. (SUF 7)  WHITE understood from Officer O'Brien that there was probable cause to arrest GIDDENS. (SUF 8) WHITE informed Officer O'Brien that GIDDENS would be detained if he attempted to leave prior to Officer O'Brien's arrival. (SUF 9)

WHITE briefed DADISHO and MATTOS regarding the incident.  DADISHO and MATTOS understood that GIDDENS had been driving his vehicle, had accelerated towards the victims and that his victims had to jump out of the way to avoid being hit. (SUF 10) DADISHO and MATTOS understood that Brandon Bluford requested that GIDDENS be placed under citizen's arrest and had signed a citizen's arrest form. (SUF 10) DADISHO and MATTOS understood that there was probable cause to arrest. (SUF 10)  It was determined that MATTOS and URLAUB would contact GIDDENS and detain him if he left prior to Officer O'Brien's arrival. (SUF 11)

///

3

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

1    GIDDENS remained at the meeting until the end of the meeting. (SUF 12) After the

2   meeting concluded, GIDDENS exited the large conference room where the meeting was being

3   held. (SUF 13)  As GIDDENS exited the large conference room, he was met by MATTOS in

4   the hallway. (SUF 14) MATTOS stated that he would like to speak to GIDDENS. (SUF 14)

5   URLAUB was in full Suisun City Police Department uniform and MATTOS was in slacks, a

6   long sleeved shirt and tie with his police badge and firearm on his side in plain view. (SUF 15)

7   GIDDENS was aware that MATTOS and URLAUB were police officers. (SUF 16)

8    MATTOS asked GIDDENS to step over to the area near the wall so MATTOS could

9   talk to GIDDENS.  (SUF 17)  MATTOS wanted to have GIDDENS with a wall to his back in

10  order to use the wall as a third person in order to prevent GIDDENS from backing away,

11  eliminating an additional escape route. (SUF 18)  GIDDENS refused to move to the area

12  MATTOS was directing GIDDENS toward. (SUF 19)  URLAUB explained to GIDDENS that

13  they did not want him in the middle of the hallway. (SUF 20)  MATTOS told GIDDENS he

14  would explain everything to GIDDENS but that he needed GIDDENS to step to the area

15  MATTOS was indicating next to the wall. (SUF 21)  GIDDENS again refused MATTOS' order

16  for GIDDENS to move. (SUF 22)

17   MATTOS told GIDDENS that he was a police officer and that he was giving GIDDENS

18  a lawful order to move near the wall. (SUF 23)  GIDDENS continued to refuse to comply with

19  MATTOS. (SUF 24)  GIDDENS walked away from MATTOS and back towards the large

20  conference room. (SUF 25)  MATTOS stated to GIDDENS "I'm giving you a lawful order.

21  Stop." (SUF 26)  MATTOS continued to tell GIDDENS to stop and GIDDENS continued

22  walking. (SUF 27)  URLAUB attempted to walk in front of GIDDENS to block his escape.

23  (SUF 28)  GIDDENS did not respond to MATTOS' repeated orders to stop.  MATTOS moved

24  to a position in front of GIDDENS to prevent him from re-entering the meeting area.  (SUF 29)

25  GIDDENS continued to ignore GIDDENS' requests to stop.  (SUF 29)  MATTOS placed both

26  of his open hands on GIDDENS' chest area, grabbed a handful of GIDDENS' shirt, and pushed

27  GIDDENS against the South wall of the hallway. (SUF 30) MATTOS pulled GIDDENS toward

28  him and downward, putting GIDDENS onto the ground.  (SUF 31)

---

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

1   Once on the ground, MATTOS attempted to gain control of GIDDENS' left arm. (SUF

2   32) MATTOS and URLAUB attempted to gain control of GIDDENS on the ground. (SUF33)

3   GIDDENS was moving and twisting around on the ground as MATTOS and URLAUB were

4   attempting to gain control of GIDDENS. (SUF 34)  GIDDENS ignored MATTOS and

5   URLAUB's commands and orders.  (SUF 35)  MATTOS continually told GIDDENS to give

6   MATTOS his arm, to put his arms behind his back, and to stop resisting. (SUF 36)  URLAUB

7   attempted to put GIDDENS into a figure four leg lock to control GIDDENS' legs, help keep

8   GIDDENS on his stomach and gain control of GIDDENS' arms.  (SUF 37)  URLAUB was

9   continuing to tell GIDDENS "stop" and "stop resisting".  (SUF 37)

10   While on the ground, MATTOS remained in a semi-cross body position and attempted

11   to gain control of GIDDENS' arm. (SUF 38) As GIDDENS was on the ground, MATTOS and

12   URLAUB repeatedly told GIDDENS to "stop resisting." (SUF 39) While MATTOS and

13   URLAUB were attempting to gain control of GIDDENS' arms, GIDDENS ignored commands

14   and orders.  GIDDENS continued to moved his arms and legs away from MATTOS and

15   URLAUB. (SUF 40)  MATTOS and URLAUB were finally able to gain control of GIDDENS'

16   arms and place GIDDENS in handcuffs. (SUF 41)  GIDDENS was placed under arrest for

17   violation of Penal Code § 245(a)(1) and § 69. (SUF 42)

18   **First Amendment**

19   GIDDENS contends that DADISHO interfered with his First Amendment rights at a

20   City Council meeting that occurred in November 2010 or November 2011. (SUF 43)

21   GIDDENS remained at the City Council meeting after his interaction with DADISHO.  (SUF

22   44)  GIDDENS did not have any substantive interactions with DADISHO aside from an

23   interaction at a City Council meeting that occurred in November 2010 or November 2011.

24   (SUF 45)  GIDDENS returned to City Council meetings after the City Council meeting in

25   November 2010 or November 2011. (SUF 46)

26   GIDDENS spoke at the public meeting on April 18, 2012, and remained until the end of

27   the meeting. (SUF 47)  DADISHO did not personally interact with GIDDENS on April 18,

28   2012. (SUF 48)  DADISHO's interactions with others related to GIDDENS on April 18, 2012

Selman Breitman LLP
ATTORNEYS AT LAW

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591 1 555 33710

1  were not in any way related to anything said by GIDDENS at the community meeting. (SUF 49)

2  URLAUB's interactions with GIDDENS on April 18, 2012 were not related in any way to

3  anything said by GIDDENS at the public community meeting.  (SUF 50)  GIDDENS has

4  attended City Council meetings since April 2012.  (SUF 51)

5      ***Monell***

6      GIDDENS has not identified any specific policy or procedure for Suisun City Police

7  Department.  (SUF 52)

8      SANCHEZ did not possess final authority to establish municipal policy with respect to

9  the Suisun City Police Department. (SUF 53)  Councilmembers DAY and HUDSON did not

10  possess final authority to establish municipal policy with respect to the Suisun City Police

11  Department. (SUF 54)  DADISHO, MATTOS, and WHITE did not possess final authority to

12  establish municipal policy with respect to the Suisun City Police Department. (SUF 55)

13      SANCHEZ was not present at the Joe Nelson Community Center on April 18, 2012.  He

14  did not provide any direction or instruction regarding the detention or arrest of GIDDENS to

15  anyone affiliated with Suisun City Police Department. (SUF 56)

16  **Unruh Act**

17      GIDDENS has not been asked about his political affiliation by anyone at SUISUN

18  CITY.  (SUF 57) DADISHO has never had knowledge of GIDDENS' political affiliation. (SUF

19  58) DADISHO's interactions with GIDDENS have never been motivated by GIDDENS'

20  political affiliation. (SUF 59)  MATTOS has never had knowledge of GIDDENS' political

21  affiliation. (SUF 60)  MATTOS' interactions with GIDDENS have never been motivated by

22  GIDDENS' political affiliation. (SUF 61)   WHITE has never had knowledge of GIDDENS'

23  political affiliation. (SUF 62)   WHITE's interactions with GIDDENS have never been

24  motivated by GIDDENS' political affiliation. (SUF 63)  DAY has never had knowledge of

25  GIDDENS' political affiliation. (SUF 64)  GIDDENS' alleged interaction with DAY occurred at

26  a City Council meeting in November 2010 or November 2011. (SUF 65)  DAY's interactions

27  with GIDDENS have never been motivated by GIDDENS' political affiliation. (SUF 66)

28  GIDDENS' alleged interactions with HUDSON consisted of HUDSON making a comment to

Selman Breitman LLP
ATTORNEYS AT LAW

6

376591 1 555 33710

1  GIDDENS at a Sewer Board meeting that GIDDENS was kicked out of the Air Force, and

2  HUDSON making a statement about GIDDENS on social media. (SUF 67)  HUDSON's

3  interactions with GIDDENS have never involved or been motivated by GIDDENS' political

4  affiliation. (SUF 68)

5  **IV.   POINTS AND AUTHORITIES**

6         **A.   Summary Judgment Is Appropriate Where There Is No Genuine Issue As
             To Any Material Fact**

7

8         Federal Rule of Civil Procedure 56(b) provides the Court with the authority to

9  summarily dismiss a cause of action or an entire action:

10        A party against whom a claim, counterclaim, or cross-claim is asserted or a
          declaratory judgment is sought, may, at any time, move with or without
11        supporting affidavits for a summary judgment in the party's favor as to all or any
          part thereof. *Fed.R.Civ.Proc.* 56(b)

12

13        Summary judgment is proper when the "pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

15  genuine issue as to any material fact and that the moving party is entitled to judgment as a

16  matter of law." Fed.R.Civ.Proc. 56(c).  An issue is "genuine" only if there is sufficient evidence

17  for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*

18  477 U.S. 242, 248, 249 (1986).  A fact is "material" if the fact may affect the outcome of the

19  case. *Id.* at 248.

20        A court will grant summary judgment "against a party who fails to make a showing

21  sufficient to establish the existence of an element essential to that party's case, and on which that

22  party will bear the burden of proof at trial … since a complete failure of proof concerning an

23  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

24  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If Rule 56 standards are met, summary

25  judgment is not to be regarded as a disfavored procedural shortcut. *Id.* at 326.

26  ///

27  ///

28  ///

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555 33710

**B.     GIDDENS' Claims Under The Fourth Amendment Are Barred As The Actions Of Defendants Were Reasonable As A Matter Of Law**

**(1)     There Was Reasonable Suspicion Sufficient To Detain GIDDENS**

A police officer may seize a citizen for a brief investigatory stop or detention if they have "reasonable suspicion" of criminal activity. *Morgan v. Woesnner*, 997 F.2d 1244, 1252 (9th Cir. 1993). "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In *Alabama v. White*, 496 U.S. 325, 330 (2000), the United States Supreme Court characterized "reasonable suspicion" as a standard less demanding than probable cause "not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Id.*

Next, Penal Code § 245(a)(1) provides: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." As used in Penal Code § 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." *People v. Aguilar*, 16 Cal.4th 1023, 1028-29 (1997); (quoting *In re Jose D.R.*, 137 Cal.App.3d 269, 275–276 (1982)) A vehicle qualifies as a "deadly weapon" and California courts have uniformly determined that "a person who operates or drives a vehicle in an attempt to injure another person has committed assault with a deadly weapon, to wit, the car." *People v. Russell*, 129 Cal. App. 4th 776, 782 (2005) (citing *People v. Wright*, 100 Cal.App.4th 703, 706 (2002)).

///

///

///

8

Selman Breitman LLP
ATTORNEYS AT LAW

376591 1 555 33710

Here, the evidence demonstrates that DADISHO, WHITE, MATTOS, and URLAUB had reasonable suspicion to detain GIDDENS for violation of Penal Code § 245(a)(1).[2]  The information provided to them was that GIDDENS had attempted to run down his neighbors with his vehicle. (SUF 4, 10)  Specifically, GIDDENS was reported to have accelerated his vehicle towards the victims and the victims had to jump out of the way to avoid being hit. (SUF 4, 7, 10).  The Defendants were also aware that one of the victims, Brandon Bluford, requested that GIDDENS be placed under Citizen's Arrest and that Mr. Bluford had signed a Citizen's Arrest form. (SUF 6, 10)  Notably, the officers did not need information that anyone was injured by GIDDENS' actions as "[o]ne may commit an assault without making actual physical contact with the person of the victim ... whether the victim in fact suffers any harm is immaterial." *People v. Aguilar*, supra, 16 Cal.4th at 1028; *People v. Wingo*, 14 Cal.3d 169, 176 (1975).

At the time MATTOS and URLAUB attempted to detain GIDDENS, the evidence demonstrates that Defendants had reasonable suspicion that GIDDENS had engaged in criminal activity, and were justified in detaining GIDDENS.[3]

**(2)  GIDDENS' Cannot Prevail On His Claim For Unlawful Arrest As Defendants Had Probable Cause To Arrest**

An officer is not liable for damages based on a claim of unlawful seizure or arrest if there was probable cause to make the arrest. *Pierson v. Ray*, 386 U.S. 547, 555-557 (1967); *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).   "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested."[4]

---

[2] The same evidence demonstrates that DADISHO, WHITE, MATTOS and URLAUB had reasonable suspicion to detain GIDDENS for violation of Vehicle Code § 23103 ("A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.")

[3] Liability under 42 U.S.C. section 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Plaintiff must prove that each of the individual defendants personally participated in the alleged constitutional violations. *Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002).  Here, there is no evidence that DADISHO or WHITE detained GIDDENS.  Even assuming *arguendo* that liability can attach to DADISHO or WHITE, they were in possession of sufficient information to justify the detention of GIDDENS.

[4] "[P]robable cause requires only a probability or a substantial chance of criminal activity, not an actual

9

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

1   *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (quoting *United States v. Lopez*, 482

2   F.3d 1067, 1072 (9th Cir. 2007)).  The determination of whether there was probable cause is

3   based on the information the officer had at the time of making the arrest.  *Devenpeck v. Alford*,

4   543 U.S. 146, 152 (2004).  "Probable cause is an objective standard and the officer's subjective

5   intention in exercising his discretion to arrest is immaterial in judging whether his actions were

6   reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 505 F.3d 907, 911 (9th

7   Cir. 2007).  "When there has been communication among agents, probable cause can rest upon

8   the investigating agents' 'collective knowledge.' " *United States v. Valencia, 24 F.3d 1106, 1108*

9   (9th Cir. 1994) (quoting *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir.1990) (other

10   citation omitted)).

11        To prevail on a § 1983 claim based on false arrest, plaintiff must demonstrate that there

12   was no probable cause to arrest him.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380

13   (9th Cir. 1998).  Notably, "[t]he standard of probable cause 'applie[s] to all arrests, without the

14   need to "balance" the interest and circumstances involved in particular situations.' [Citation.]."

15   *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

16        Moreover, liability under 42 U.S.C. section 1983 "arises only upon a showing of

17   personal participation by the defendant."  *Taylor*, 880 F.2d at 1045.  Plaintiff must prove that

18   each of the individual defendants personally participated in the alleged constitutional violations.

19   *Jones*, 297 F.3d at 934–35.

20   ///

21   ///

22   ///

23

24   _____

     showing of such activity … innocent behavior frequently will provide a basis for a showing of probable

25   cause." *Illinois v. Gates*, 462 U.S. 213, 245, n.13 (1983).  "The validity of the arrest does not depend on
     whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the

26   offense for which he is arrested is irrelevant to the validity of the arrest. [The Supreme Court has] made
     clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are

27   not prerequisites to a valid arrest." *Michigan v. DeFillippo*, supra, 443 U.S. at 36.

     Additionally, as a general matter, "an officer need not have probable cause for every element of the
28   offense." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citation omitted).

     _____
                                         10

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

a)  **There Was Probable Cause To Arrest GIDDENS For Violation of Penal Code § 245(a)(1)**

As set forth above, Penal Code § 245(a)(1) provides: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." As used in Penal Code § 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury."[5] *Aguilar*, supra, 16 Cal.4th at 1028-29. Again, "a person who operates or drives a vehicle in an attempt to injure another person has committed assault with a deadly weapon, to wit, the car." *Russell*, supra, 129 Cal.App.4th at 782 (citing *Wright*, supra, 100 Cal.App.4th at 706). Notably, the officers did not need information that anyone was injured by GIDDENS' actions as "[o]ne may commit an assault without making actual physical contact with the person of the victim ... whether the victim in fact suffers any harm is immaterial." *People v. Aguilar*, 16 Cal.4th 1023, 1028 (1997); *People v. Wingo*, 14 Cal.3d 169, 176 (1975).

In our present case, the evidence demonstrates that the knowledge and information available to DADISHO, WHITE, MATTOS, and URLAUB would cause a reasonable person to believe the crime of assault with a deadly weapon had been committed and, therefore, there was probable cause to arrest GIDDENS for violation of Penal Code § 245(a)(1). (SUF 4-10) Defendants understood that GIDDENS had attempted to run down his neighbors with his vehicle. (SUF 4, 10) Specifically, GIDDENS was reported to have accelerated his vehicle towards the victims and the victims had to jump out of the way to avoid being hit. (SUF 4, 7, 10).

///

---

[5] "In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir. 1993).

11

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555 33710

Additionally, DADISHO, WHITE, MATTOS, and URLAUB understood that Mr. Bluford wanted to place GIDDENS under a Citizen's Arrest and had signed a Citizen's Arrest form. (SUF 6, 10) Defendants recognize that "[i]n establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the [citizen's] knowledge or interview other witnesses." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). "A sufficient basis of knowledge is established if the [citizen] provides 'facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.' " *Peng v. Hu*, 335 F.3d 970, 978 (9th Cir.2003) (quotation omitted). In our case, as set forth above, Mr. Bluford's information, combined with the other information relayed to WHITE, would cause a reasonable person to believe a crime had been committed by GIDDENS. The information available to MATTOS and URLAUB, as well as DADISO and WHITE, was sufficient to establish probable cause to arrest GIDDENS for a violation of Penal Code § 245(a)(1). This is true regardless of an actual showing of criminal activity. *Illinois v. Gates*, supra, 462 U.S. at 245, n.13.

### b) There Was Probable Cause To Arrest GIDDENS For Violation of Penal Code § 69

Penal Code § 69, subdivision (a) provides "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." The California Supreme Court maintains that "section 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.'" *People v. Smith*, 57 Cal.4th 232, 240 (2013) (quoting *In re Manuel G.*, 16 Cal.4th 805, 814 (1997)). Here, the evidence supports that GIDDENS resisted, with physical

12

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

1   force and violence, MATTOS and URLAUB's attempts to detain and gain control of

2   GIDDENS.  GIDDENS moved and twisted around on the ground, and moved his hands and legs

3   away from MATTOS and URLAUB, as they were attempting to gain control of GIDDENS.

4   (SUF 32-40)

### c)   There Was Probable Cause To Arrest GIDDENS For Violation of Penal Code § 148(a)(1)

7   Even assuming *arguendo* that there was not probable cause to arrest GIDDENS for

8   violation of Penal Code § 245(a)(1) or § 69, the facts establish that there was probable cause to

9   arrest GIDDENS.  "It doesn't matter for present purposes if [a § 1983 plaintiff] was charged

10  with a different crime than that for which he was arrested." *Blankenhorn v. City of Orange*, 485

11  F.3d 463, 473 (9th Cir. 2007). "[P]robable cause may exist for an arrest for a closely related

12  offense, even if that offense was not invoked by the arresting officer, as long as it involves the

13  same conduct for which the suspect was arrested." *Bingham v. City of Manhattan Beach*, 341

14  F.3d 939, 950 (9th Cir. 2003) (quotation omitted). "As long as the officers had some reasonable

15  basis to believe [the § 1983 plaintiff] had committed a crime, the arrest is justified as being

16  based on probable cause.  Probable cause need only exist as to any offense that could be

17  charged under the circumstances."  *Id.* at 952 (quotation omitted).

18  The United States Supreme Court cases make clear that an arresting officer's state of

19  mind (except for the facts that he knows) is irrelevant to the existence of probable cause.

20  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806,

21  812–813 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769 (2001) (per curiam).

22  "That is to say, his subjective reason for making the arrest need not be the criminal offense as to

23  which the known facts provide probable cause." *Devenpeck*, supra, 543 U.S. at 153.  " 'The fact

24  that the officer does not have the state of mind which is hypothecated by the reasons which

25  provide the legal justification for the officer's action does not invalidate the action taken as long

26  as the circumstances, viewed objectively, justify that action.' " *Whren*, supra, 517 U.S. at 813

27  (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). "[T]he Fourth Amendment's concern

28  with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the

13

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

1   subjective intent." *Whren*, supra, 517 U.S. at 814. "[E]venhanded law enforcement is best

2   achieved by the application of objective standards of conduct, rather than standards that depend

3   upon the subjective state of mind of the officer." *Horton v. California*, 496 U.S. 128, 138

4   (1990).  "This means that the constitutionality of an arrest under a given set of known facts will

5   'vary from place to place and from time to time,' *Whren*, supra, 517 U.S. at 815, depending on

6   whether the arresting officer states the reason for the detention and, if so, whether he correctly

7   identifies a general class of offense for which probable cause exists." *Devenpeck*, supra, 543

8   U.S. at 153-54.

9        Here, the facts establish that there was probable cause to arrest GIDDENS for violation

10   of Penal Code § 148(a)(1).  Penal Code § 148(a)(1) provides: "Every person who willfully

11   resists, delays, or obstructs any public officer, peace officer, or an emergency medical

12   technician … in the discharge or attempt to discharge any duty of his or her office or

13   employment … shall be punished by a fine not exceeding one thousand dollars ($1,000), or by

14   imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

15        Physical resistance and attempts to depart the scene provide probable cause to arrest for

16   resisting, delaying, or obstructing an officer.  *Field v. Cty. of Orange*, 349 F.App'x 222 (9th Cir.

17   2009)  Here, MATTOS and URLAUB had the legal right to detain GIDDENS, and GIDDENS,

18   in turn, had the concomitant duty to permit himself to be detained.  *People v. Allen*, 109

19   Cal.App.3d 981, 985 (1980) (citing *In re Tony C.*, 21 Cal.3d 888, 894 (1978); Cf., *Penal Code* §

20   834(a))  It is implicit in a lawful detention that the person detained is not free to leave at will

21   and may be kept in the officer's presence by physical restraint, threat of force or assertion of

22   authority.  *In re Gregory S.*, 112 Cal.App.3d 764, 778 (1980) (citing *In re Tony C.*, supra, 21

23   Cal.3d at 895)  GIDDENS ignored the repeated commands and orders of MATTOS and

24   URLAUB, whom GIDDENS knew to be police officers.  (SUF 14-23) In fact, GIDDENS

25   walked away from MATTOS and URLAUB who were giving him lawful orders to stop. (SUF

26   25-27)  Next, GIDDENS ignored the repeated commands and orders of MATTOS and

27   URLAUB to stop resisting and to put his hands behind his back.  (SUF 32-36).  GIDDENS

28   ignored repeated commands for him to stop resisting.  (SUF 36, 39)  GIDDENS moved and

*Selman Breitman* LLP
ATTORNEYS AT LAW

14

376591 1 555 33710

1  twisted around on the ground, and moved his hands and legs away from MATTOS and

2  URLAUB, as they were attempting to gain control of GIDDENS. (SUF 34-40)

3      The evidence demonstrates that MATTOS and URLAUB had probable cause to arrest

4  GIDDENS for "delaying or obstructing a peace officer in the discharge or attempt to discharge

5  any duty of his office or employment." *Penal Code* §148(a)(1).  Summary judgment on the

6  claim of unlawful arrest is appropriate because the facts establish that there was legally

7  sufficient probable cause to arrest GIDDENS.

8      **(3)   The Force Used By MATTOS And URLAUB Did Not Violate**
        **GIDDENS' Fourth Amendment Rights As The Force Used Was**
9       **Reasonable As A Matter Of Law**

10     Defendants acknowledge that "[u]nder the Fourth Amendment, officers may only use

11  such force as is 'objectively reasonable' under the circumstances." *Johnson v. County of Los*

12  *Angeles*, 340 F.3d 787, 792 (9th Cir. 2003) (citing *Jackson v. City of Bremerton*, 268 F.3d 464,

13  651 (9th Cir. 2001), quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  However, it is

14  well-settled that "[t]he 'reasonableness' of a particular use of force must be judged from the

15  perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

16  *Johnson*, supra, 340 F.3d at 792; *Graham*, supra, 490 U.S. at 396.  "Not every push or shove,

17  even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

18  Amendment."  The determination of reasonableness "must embody allowance for the fact that

19  police officers are often forced to make split-second judgments - in circumstances that are tense,

20  uncertain and rapidly evolving – about the amount of force that is necessary in a particular

21  situation." *Graham*, supra, 490 U.S. at 396-397.  "[A]s the test of the Fourth Amendment

22  indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had

23  less intrusive alternatives available to them.  Requiring officers to find and choose the least

24  intrusive alternative available would require them to exercise superhuman judgment." *Scott v.*

25  *Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  Moreover, because of the deference shown to

26  defendant police officers acting in the exercise of their duty, the burden is on plaintiff to show

27  that the police actions were unreasonable.  *Id.* at 396.

28     In evaluating defendants' summary judgment motion challenging excessive force claims,

Selman Breitman LLP
ATTORNEYS AT LAW

15

376591.1 555.33710

1   the court must weigh the reasonableness of the use of force under the circumstances. *Alexander*

2   *v. City and Cnty of San Francisco*, 29 F.3d 1355, 1366 (9th Cir. 1994).  If the court determines

3   that a reasonable officer could have believed his conduct was justified, then the court must grant

4   summary judgment in favor of defendants. *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir.

5   2002).

6              **a)    Detention/Arrest**

7         The Fourth Amendment does not prohibit a police officer's use of reasonable force

8   during an arrest or detention. *Graham*, supra, 490 U.S. at 396 ("the right to make an arrest or

9   investigatory stop necessarily carries with it the right to use some degree of physical coercion or

10  threat thereof to effect it") (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)).  Moreover, it is

11  implicit in a lawful detention that the person detained is not free to leave at will and may be kept

12  in the officer's presence by physical restraint, threat of force or assertion of authority.  *In re*

13  *Gregory S.*, supra, 112 Cal.App.3d at 778 (citing *In re Tony C.*, supra, 21 Cal.3d at 895)

14        Moreover, the Ninth Circuit has upheld the use of a control hold and other compliance

15  techniques in placing a suspect under arrest. *Tatum v. City and County of San Francisco*, 441

16  F.3d 1090, 1096-1097 (9th Cir. 2006) (finding use of a control hold to facilitate placing a

17  suspect in handcuffs was not excessive force); *Forrester v. City of San Diego*, 25 F.3d 804, 807

18  (9th Cir. 1994) (pain compliance techniques are less significant than those used in most claims

19  of excessive force).  Moreover, "whether [an officer] hypothetically could have used less

20  painful, less injurious or more effective force in executing an arrest is simply not the issue." *Id.*

21  at 807-808.

22        The use of physical force here was made necessary only by GIDDENS' unlawful attempt

23  to end the lawful detention.  As GIDDENS exited the large conference room, he was met by

24  MATTOS in the hallway. (SUF 14)  GIDDENS was aware that MATTOS and URLAUB were

25  police officers. (SUF 16)  MATTOS asked GIDDENS to step over to the area near the wall so

26  MATTOS could talk to GIDDENS.  (SUF 17)  MATTOS wanted to have GIDDENS with a

27  wall to his back in order to use the wall as a third person to prevent GIDDENS from backing

28  away, eliminating an additional escape route. (SUF 18) GIDDENS refused repeated orders to

Selman Breitman LLP
ATTORNEYS AT LAW

16

376591.1 555.33710

1  move to the area MATTOS was directing GIDDENS toward. (SUF 19-22)

2      MATTOS told GIDDENS that MATTOS was a police officer and that he was giving

3  GIDDENS a lawful order to move near the wall. (SUF 23)  GIDDENS continued to refuse to

4  comply with MATTOS. (SUF 24)  GIDDENS walked away from MATTOS and back towards

5  the large conference room. (SUF 25-27)  URLAUB attempted to walk in front of GIDDENS to

6  block his escape. (SUF 28)  GIDDENS did not respond to MATTOS' repeated orders to stop.

7  MATTOS moved to a position in front of GIDDENS to prevent him from re-entering the

8  meeting area. (SUF 29)  GIDDENS continued to ignore GIDDENS' requests to stop.  (SUF 29)

9  Only then did MATTOS placed both of his open hands on GIDDENS' chest area, grabbed a

10 handful of GIDDENS' shirt, and pushed GIDDENS against the South wall of the hallway. (SUF

11 30)  MATTOS pulled GIDDENS toward him and downward, putting GIDDENS onto the

12 ground. (SUF 31)  The restraint of GIDDENS was reasonable both in nature and timing.

13     Once on the ground, MATTOS attempted to gain control of GIDDENS' left arm. (SUF

14 32)  MATTOS and URLAUB attempted to gain control of GIDDENS on the ground. (SUF33)

15 GIDDENS was moving and twisting around on the ground as MATTOS and URLAUB were

16 attempting to gain control of GIDDENS. (SUF 34)  GIDDENS ignored MATTOS and

17 URLAUB's repeated commands and orders.  (SUF 35)  MATTOS continually told GIDDENS

18 to give MATTOS his arm, to put his arms behind his back, and to stop resisting. (SUF 36)

19 URLAUB attempted to put GIDDENS into a figure four leg lock to control GIDDENS' legs,

20 help keep GIDDENS on his stomach and gain control of GIDDENS' arms.  (SUF 37)

21 MATTOS remained in a semi-cross body position and attempted to gain control of GIDDENS'

22 arm. (SUF 38)

23     MATTOS and URLAUB continued to attempt to gain control of GIDDENS' arms, while

24 GIDDENS ignored commands and orders.  MATTOS and URLAUB continued to tell

25 GIDDENS "stop" and "stop resisting".  (SUF 37, 39)  GIDDENS continued to moved his arms

26 and legs away from MATTOS and URLAUB. (SUF 40)  MATTOS and URLAUB were finally

27 able to gain control of GIDDENS' arms and placed GIDDENS in handcuffs. (SUF 41)

28 ///

Selman Breitman LLP
ATTORNEYS AT LAW

17

376591 1 555.33710

### b) Handcuffing

It is well-recognized that "[t]he use of handcuffs, unlike the use of a taser, is standard practice in nearly every arrest. To allow excessive force claims to survive summary judgment every time a plaintiff alleged that handcuffs were painful would disregard the inherent necessity of the use of handcuffs in the context of an arrest." *Luong v. City & County of San Francisco*, 2012 WL 5869561, 5 (N.D. Cal. Nov. 19, 2012) (quoting *Orsak v. Metro. Airports Comm'n Airport Police Dept.*, 675 F.Supp.2d 944, 957 (D.Minn. 2009)); *Ha v. Liberty Lake*, 2010 WL 4065491 (E.D. Wa. Oct. 15, 2010). Here, the evidence demonstrates that handcuffs were placed on GIDDENS only after he refused to comply with repeated commands and orders of MATTOS and URLAUB, and as GIDDENS was being placed under arrest. (SUF 14-41) The handcuffs were check for tightness and double locked. (SUF 41)

### C. GIDDENS' Claims Under The First Amendment Are Barred

GIDDENS' First Amendment claim is brought against DADISHO, URLAUB, and CITY OF SUISUN CITY. (ECF 48 at p.2) At the outset, GIDDENS' claims against DADISHO are barred by the statute of limitations. GIDDENS contends that DADISHO interfered with his First Amendment rights at a City Council meeting that occurred in November 2010 or November 2011. (SUF 43) GIDDENS did not have any substantive contact with DADISHO after that November 2010/2011 City Council meeting. (SUF 45) The Ninth Circuit has determined that California's statute of limitations for personal injury actions governs a plaintiff's 42 U.S.C. §1983 claims. See *Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004). California Code of Civil Procedure §335.1 provides that a personal injury action must be brought within two years. *Code Civ. Proc.* §335.1. As such, the two year statute of limitations applies to claims under 42 U.S.C. § 1983. Here, GIDDENS' claims against DADISHO are barred as his only interaction with DADISHO occurred in November 2011, at the latest, and his lawsuit was not brought until April 2014 more than three years after the alleged violation of his First Amendment rights.

To the extent GIDDENS attempts to expand on his deposition testimony against DADISHO to include the events of April 18, 2012, which Defendants contend would be

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555 33710

1    improper, there is no evidence that DADISHO, or URLAUB, violated GIDDENS' First

2    Amendment rights.  To establish a §1983 claim based on an alleged First Amendment violation,

3    a plaintiff must show: (1) Defendants acted with an intent to inhibit or chill his free speech; (2)

4    the intent was a substantial or motivating factor in his arrest; and (3) Defendants' acts would

5    inhibit or chill a person of ordinary firmness from future First Amendment activities.

6    *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir.

7    1999).  GIDDENS must show that Defendants' desire to chill his speech was a but-for cause of

8    defendants' allegedly unlawful conduct.  Where retaliation is alleged, plaintiff must present

9    "specific, nonconclusory" evidence of a retaliatory motive. *Jeffers v. Gomez*, 267 F.3d 895, 907

10   (9th Cir. 2001).

11        Here, the evidence does not demonstrate that DADISHO and URLAUB acted with any

12   intent to or desire to curb, chill or inhibit GIDDENS' First Amendment rights to free speech or

13   assembly.  There is also no evidence supporting that any purported desire to chill speech was a

14   but-for cause of Defendants' allegedly unlawful conduct.  DADISHO did not personally interact

15   with GIDDENS on April 18, 2012. (SUF 48)  DADISHO's interactions with others regarding

16   GIDDENS on April 18, 2012 were not in any way related to anything said by GIDDENS at the

17   community meeting.  (SUF 49)  Similarly, URLAUB's interactions with GIDDENS on April 18,

18   2012 were not related in any way to anything said by GIDDENS at the community meeting.

19   (SUF 50)

20        Neither DADISHO nor URLAUB were motivated by anything said by GIDDENS at the

21   community meeting.  (SUF 48-50)  There is no specific, nonconclusory evidence to the

22   contrary.  Rather, as discussed above, the facts demonstrate that GIDDENS was detained

23   because Defendants had reasonable suspicion that GIDDENS had committed the crime of

24   assault with a deadly weapon, and GIDDENS was arrested because Defendants had probable

25   cause to believe that GIDDENS had committed the crimes of reckless driving/assault with a

26   deadly weapon and resisting.  "The existence of probable cause to arrest, while not dispositive,

27   "undoubtedly 'ha[s] high probative force'" and "undermines a finding that in transporting the

28   arrestees to [jail,] [the defendant officer] was motivated by a desire to chill [plaintiffs'] protected

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

1  activities." *Maidhof v. Celaya*, 641 Fed. Appx. 734, 735 (9th Cir. 2016) (quoting *Dietrich v.*

2  *John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (citation omitted).

3       The evidence demonstrates that, on April 18, 2012, GIDDENS attended at a public

4  meeting at the Joe Nelson Community Center, spoke at that public hearing, and remained at the

5  public hearing until the end of the meeting. (SUF 47) There is no evidence that DADISHO or

6  URLAUB or any other named defendant interfered with GIDDENS' First Amendment rights.

7  Moreover, there is no evidence supporting a finding that GIDDENS was inhibited from future

8  First Amendment activities. GIDDENS himself admitted that he continued to attend City

9  Council meetings after his April 18, 2012 arrest. (SUF 51)

10      **D.**    **Defendants Cannot Be Held Liable Under *Monell***

11       A local government entity "may not be sued under § 1983 for an injury inflicted solely

12  by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). When an

13  individual sues a municipality for violation of a constitutional right, the municipality is liable

14  only if the individual can establish that the municipality "had a deliberate policy, custom or

15  practice that was the 'moving force' behind the constitutional violation he suffered." *Id.* at 694-

16  95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007). Where "there is no constitutional

17  violation, there can be no municipal liability." *Villegas v. Gilroy Garlic Festival Ass'n*, 541

18  F.3d 950, 957 (9th Cir. 2008). Here, as GIDDENS is unable to establish a constitutional

19  violation, he cannot recover under a *Monell* theory of liability.

20       Even if a constitutional violation had been established, there is no evidence that liability

21  can attach to SUISUN CITY Defendants. In order to hold a public entity liable, a plaintiff must

22  demonstrate that the unlawful government action was part of the public entity's policy or

23  custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury.

24  *Monell*, supra, 436 U.S. at 690-692, 694-695. A plaintiff must establish the existence of an

25  official policy, and that this policy evidences a deliberate indifference to his constitutional

26  rights. *Oviatt v. Pearce*, 954 F.2d 1470, 1476–77 (9th Cir.1992).

27       Here, the evidence demonstrates that GIDDENS has not identified any specific policy or

28  procedure for Suisun City Police Department in support of his *Monell* claim. (SUF 52) There

*Selman Breitman* LLP
ATTORNEYS AT LAW

20

376591.1 555.33710

is no evidence that any action taken on the part of the Defendant officers was part of Suisun City's policy or custom or that any policy or custom evidences a deliberate indifference to GIDDENS' constitutional rights.  GIDDENS cannot demonstrate a nexus between any specific policy or custom and GIDDENS' alleged injury.

Further, GIDDENS cannot establish *Monell* liability based solely on the actions of Defendants on April 18, 2012.  "Random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom." *Spears v. City and Cnty of San Francisco*, 2008 WL 2812022, 1, 7 (N.D.Cal. 2008); see *Nadell v. Las Vegas Police Dept.*, 268 F.3d 924, 930 (9th Cir. 2001) (finding no municipal liability because there was no evidence at trial establishing that the use of excessive force was a formal policy, that there was a widespread practice of the police department or that previous constitutional violations had occurred for which there was no reprimand or discharge); *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

To the extent GIDDENS' theory against Defendants relies on a *Monell* claim based on the actions of a policymaker, GIDDENS claim also fails.  While a single act of a policymaker in some instances may be sufficient for a *Monell* claim, such a scenario requires that "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. " *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986).  "Municipal liability only attaches where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  …  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 481-83 (citations and footnotes omitted).

In the present case, GIDDENS' *Monell* claim is asserted against individuals SANCHEZ, DADISHO, MATTOS, and WHITE.  None of these named defendants possess final authority to establish policy for Suisun City Police Department.  (SUF 53, 55)  SANCHEZ was not present at the Joe Nelson Community Center on April 18, 2012.  He did not provide any direction or instruction regarding the detention or arrest of GIDDENS to anyone affiliated with Suisun City

21

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

1  Police Department. (SUF 56)  Moreover, to the extent that City Council is implicated,

2  Councilmembers DAY and HUDSON did not possess final authority to establish municipal

3  policy with respect to the Suisun City Police Department. (SUF 54)  There is no evidence to the

4  contrary and liability cannot attach.

5        **E.**    **Defendants Are Entitled To Qualified Immunity For Their Actions And Are**

6                 **Immune From Suit**

7        Defendants are entitled to qualified immunity.  Qualified immunity is based on the

8  policy concern that few individuals would enter public service if they risked personal liability

9  for their official actions.  *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).  The immunity

10  protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v.*

11  *Bryant*, 502 U.S. 224, 228 (1991).  Qualified immunity is not a defense on the merits, but is an

12  "entitlement not to stand trial or face the burdens of litigation." *Siegert v. Gilley*, 500 U.S. 226,

13  232 (1991).

14        A determination as to an official's entitlement to qualified immunity involves a two-

15  prong inquiry.  First, a determination is required as to whether the facts, viewed in the light

16  most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional

17  right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been

18  violated were the allegations established, there is no necessity for further inquiries concerning

19  qualified immunities." *Id.*  Second, if a constitutional violation can be established, the next

20  inquiry is to determine whether the right was clearly established." *Id.*  "The relevant, dispositive

21  inquiry in determining whether a right was clearly established is whether it would be clear to a

22  reasonable officer [or official] that his conduct was unlawful in the situation he confronted." *Id.*

23  at 202.  Officials performing discretionary duties have qualified immunity, which shields them

24  "from civil damages liability as long as their actions could reasonably have been thought

25  consistent with the rights they are alleged to have violated." *Haynie v. County of Los Angeles*,

26  339 F.3d 1071, 1077 (9th Cir. 2003) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

27  ///

28  ///

Selman Breitman LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591 1 555 33710

1    **(1)    Defendants' Actions Did Not Violate GIDDENS' Constitutional**
2    **Rights**

3    As set forth fully above, Defendants' actions did not violate GIDDENS' constitutional

4    rights, which ends the inquiry.  *Saucier*, supra, 533 U.S. at 201-202; *Jackson v. City of*

5    *Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (affirming entry of summary judgment in

6    defendant's favor where plaintiff could not prove the officer violated her constitutional rights).

7    **(2)    Defendants Are Entitled to Qualified Immunity**

8    Even assuming *arguendo* that a constitutional violation is found, Defendants are still

9    qualifiedly immune.  Under the second prong of the *Saucier* analysis, GIDDENS bears the

10   burden of proving that it would have been clear to a reasonable officer or government official

11   that his conduct was unlawful in the situation he confronted.  In the present case, it would not

12   have been clear to a reasonable officer or reasonable government official that Defendants'

13   conduct was unlawful in the situation they confronted.

14   Moreover, the standard for qualified immunity "'gives ample room for mistaken

15   judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the

16   law.'"  *Hunter*, supra, 502 U.S. at 229 (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343

17   (1986); *Rudebusch v. Hughes*, 313 F.3d 506, 517-18 (9th Cir. 2002).  It cannot be said that

18   DADISHO, WHITE, MATTOS or URLAUB were "plainly incompetent" or "knowingly

19   violated the law," such that no reasonable officer or official could conclude that his actions were

20   lawful.  *Moran*, supra, 147 F.3d at 844.  Clearly, an officer of reasonable competence could

21   have believed that DADISHO, WHITE, MATTOS, and URLAUB's actions were lawful.  To

22   the extent Plaintiff's constitutional claims are permitted against any of the named government

23   officials, an official of reasonable competence could have believed that their actions were

24   lawful.  Defendants are entitled to qualified immunity.

25   ///
26   ///
27   ///
28   ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555 33710

**F.**   **GIDDENS' Claims For False Arrest/Imprisonment Are Barred As The Defendant Officers' Actions Conformed With The Law**

   **(1)**   **MATTOS and URLAUB Are Not Liable For False Arrest/Imprisonment As There Was Reasonable Cause To Arrest GIDDENS**

Penal Code § 847 (b) states: "[t]here shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer … acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances: (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful … " *Id.* "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." *People v. Mower* 28 Cal.4th 457, 473 (2002). California courts look to cases decided under the Fourth Amendment to determine whether reasonable cause existed. *Levin v. United Airlines*, 158 Cal.App.4th 1002, 1017 n.18 (2008); *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). As set forth above, the evidence demonstrates there was reasonable cause to arrest GIDDENS.

   **(2)**   **MATTOS And URLAUB Are Not Liable For False Arrest/Imprisonment As The Arrest Was Made Following A Citizen's Arrest**

"A peace officer who accepts custody of a person following a citizen's arrest is not required to correctly determine whether the arrest was justified, and cannot be held liable for the arrest if it was improper." *Hamburg v. Wal-Mart Stores*, 116 Cal.App.4th 497, 503 (2004) (internal citation omitted); see also *Meyers v. Redwood City*, 400 F.3d 765, 772-73 (9th Cir. 2005) (stating "California courts have held that … an officer cannot be sued civilly if he makes [an arrest pursuant to a citizen's arrest] and, it turns out, there were no grounds for the citizen's arrest.") Here, Defendants understood that Brandon Bluford wanted to place GIDDENS under a Citizen's Arrest. (SUF 6) Brandon Bluford had signed the Citizen's Arrest form to that effect. (SUF 6) While Officer O'Brien and others had conducted their own investigation and believed there was probable cause to arrest, the presence of the citizen's arrest by Mr. Bluford eliminates liability for false arrest/imprisonment.

Selman Breitman LLP
ATTORNEYS AT LAW

---

24

376591.1 555 33710

### G.   GIDDENS Cannot Establish Claims For Assault Or Battery

To allege a cognizable assault claim under California law, a plaintiff must show (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted).  For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. *Id.* at 855.

State law assault and battery claims have been determined to be a counterpart to a federal claim of excessive use of force.  *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1274-1275 (1998).  All claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham*, supra, 490 U.S. at 394.  "[A] prima facie battery is not established unless and until plaintiff proves unreasonable force was used." *Edson*, supra, 63 Cal.App.4th.at 1273; *Mejia v. City of San Bernardino*, 2012 WL 1079341, *12 (C.D.Cal. March 30, 2012)

In applying the Fourth Amendment reasonableness standard to state tort claims, the court in *Edson* was acutely aware of the important policy reasons dictating that the same analysis be used for federal and state tort excessive force claims based on the same conduct. *Edson*, supra, 63 Cal.App.4th at 1273-1274.  The court in *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1413 (2002) adopted the holding in *Edson* that the same reasonableness standard used in federal excessive force claims against police officers should be used to determine liability under state tort claims based on the same conduct.  The court determined it would be "… unsound to distinguish between section 1983 claims [for excessive force] and state law claims arising from the same alleged misconduct."  *Id.* at 1413.

As such, the reasonableness standard used in federal excessive force claims is appropriate for evaluating whether the force used by MATTOS and URLAUB in this instance

25

Selman Breitman LLP
ATTORNEYS AT LAW

376591 1 555 33710

1   was reasonable, and whether liability can attach for battery, unlawful search and seizure or

2   excessive force.  As discussed fully above, the use of force was reasonable as a matter of law

3   and no liability can attach.

### H.   GIDDENS Cannot Establish A Claim For Intentional Infliction Of Emotional Distress Or Negligent Infliction Of Emotional Distress

#### (1)   Intentional Infliction of Emotional Distress

7   To recover for intentional infliction of emotional distress, a plaintiff must prove "(1)

8   outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the

9   probability of causing emotional distress, (3) severe emotional suffering and (4) actual and

10  proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Protection District*, 43

11  Cal.3d 148, 155 (1987); *Myung Chang v. Lederman*, 172 Cal.App.4th 67 (2009) (internal

12  quotations and marks omitted).  "Conduct to be outrageous must be so extreme as to exceed all

13  bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32

14  Cal.3d 197, 209 (1982).

15  Here, GIDDENS cannot establish that Defendants engaged in "extreme and outrageous

16  conduct."  When an officer's actions incident to the plaintiff's arrest are reasonable as a matter of

17  law, the plaintiff cannot establish that the officer engaged in extreme or outrageous conduct.

18  *Long v. City and County of Honolulu*, 511 F.3d 901, 908 (9th Cir.2007), cert. denied, 555 U.S.

19  816 (2008) (holding that where an officer's actions in fatally shooting a criminal suspect were

20  reasonable as a matter of law, that officer's behavior could not be considered "outrageous"

21  conduct for purposes of the plaintiff's intentional infliction of emotional distress claim).  "Where

22  a plaintiff fails to establish a Fourth Amendment violation, the officer's behavior is generally

23  not outrageous." *Burke v. Cty. of Alameda*, 352 F. App'x 216, 219 (9th Cir. 2009);

24  *Long*, supra, 511 F.3d at 908.

25  MATTOS and URLAUB acted reasonably under the circumstances, and fulfilled their

26  duties as a law enforcement officer reasonably and prudently.  Accordingly, GIDDENS cannot

27  establish defendants engaged in "extreme and outrageous conduct," and Defendants are entitled

28  to summary judgment.

26

376591 1 555 33710

(2)     **Negligent Infliction of Emotional Distress**

The California Supreme Court has repeatedly recognized the direct victim theory provides no independent tort of negligent infliction of emotional distress.[6] *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993).  In order to state a prima facie case of negligent infliction of emotional distress, plaintiff must plead and prove "[t]he traditional elements of duty, breach of duty, causation and damages." *Portnoy v. City of Woodland*, 2013 WL 2156560, at *18 (E.D. Cal. May 17, 2013), aff'd, 611 F.App'x 921 (9th Cir. 2015) (quoting *Fluharty v. Fluharty*, 59 Cal.App.4th 484, 490 (1997)); *Potter*, supra, 6 Cal.4th at 984.  Generally there is "no duty to avoid negligently causing emotional distress to another..." *Potter*, supra, 6 Cal.4th at 984.  Recovery for emotional distress is available only if the defendant has breached that duty or some other legal duty and the emotional distress is proximately caused by that breach.  *Id.*  To prevail on his negligence claim, GIDDENS must show that MATTOS and URLAUB acted unreasonably and that the unreasonable behavior harmed GIDDENS.  *Price v. Cty. of San Diego*, 990 F.Supp. 1230, 1245 (S.D.Cal. 1998) (citation omitted).

Here, the crux of GIDDENS' negligence claim, that MATTOS and URLAUB breached their duties to comply with the law in detaining and arresting him, fails as a matter of law. There is no evidence that MATTOS or URLAUB breached a duty to GIDDENS.  *J.L. v. Children's Institute, Inc.*, 177 Cal.App.4th 388, 396 (2009).  The undisputed facts demonstrate that the officers' conduct was lawful and justified, and that the conduct was not unreasonable. Thus, MATTOS and URLAUB breached no duty to GIDDENS in detaining and arresting him.

GIDDENS cannot establish a cause of action for negligent infliction of emotional distress and no liability can attach to MATTOS or URLAUB.

///

///

///

---

[6] California law imposes a duty to avoid causing emotional distress in two general situations.  The first involves "bystander" situations in which a plaintiff seeks to recover damages as a percipient witness to the injury of another person. The second situation, applicable here, is found where the plaintiff is alleged to be a "direct victim."

Selman Breitman LLP
ATTORNEYS AT LAW

376591 1 555 33710

I.     **GIDDENS' Claim For Violation of the Unruh Act Is Barred**

GIDDENS was permitted to bring a claim under the Unruh Act against CITY OF SUISUN CITY, CITY COUNCIL, SUISUN CITY POLICE DEPARTMENT, DADISHO, MATTOS, WHITE, DAY and HUDSON, and the claim was to be construed to be based solely upon GIDDENS' political affiliation. (ECF 48)

The Unruh Act, Civil Code §51.7, provides:

"All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics."

A claim under Section 51.7 requires a plaintiff to show: "(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's [protected characteristic]; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *I.H. by & through Hunter v. Oakland Sch. for Arts*, 234 F. Supp. 3d 987, 995 (N.D. Cal. 2017) (citations omitted).

The second element requires a showing that Defendant was motivated by his or her perception of plaintiff's political affiliation. GIDDENS cannot establish that element for any Defendant named in this claim. Here, the evidence establishes that GIDDENS has never been asked about his political affiliation by anyone at SUISUN CITY. (SUF 57) DADISHO has never had knowledge of GIDDENS' political affiliation. (SUF 58) DADISHO's interactions with GIDDENS have never been motivated by GIDDENS' political affiliation. (SUF 59) MATTOS has never had knowledge of GIDDENS' political affiliation. (SUF 60) MATTOS' interactions with GIDDENS have never been motivated by GIDDENS' political affiliation. (SUF 61) WHITE has never had knowledge of GIDDENS' political affiliation. (SUF 62) WHITE's interactions with GIDDENS have never been motivated by GIDDENS' political affiliation. (SUF 63) DAY has never had knowledge of GIDDENS' political affiliation. (SUF 64) DAY's interactions with GIDDENS have never been motivated by GIDDENS' political affiliation. (SUF 66) HUDSON's interactions with GIDDENS have never involved or been

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555.33710

1   motivated by GIDDENS' political affiliation. (SUF 68)

2        Turning to the first element, GIDDENS cannot establish that DADISHO, MATTOS,

3   WHITE, DAY, or HUDSON threatened or committed violent acts against GIDDENS.

4   DADISHO did not have any contact with GIDDENS on April 18, 2012. (SUF 48)  There is

5   also no evidence that WHITE had direct contact with GIDDENS on April 18, 2012, or that

6   WHITE threatened or committed any violent act against GIDDENS.  MATTOS' contact with

7   GIDDENS is more fully described above; MATTOS never threatened GIDDENS and did not

8   commit a violent act towards him.

9        Turning to GIDDENS' alleged interaction with DAY, that event occurred at a City

10  Council meeting in November 2010 or November 2011. (SUF 65)  That interaction allegedly

11  consisted of DAY telling GIDDENS his time had expired, GIDDENS responding that it had

12  not, DAY responding she did not care, and DAY being unresponsive to his concerns. (Giddens

13  Depo at 79:2-11; 81:2-15)  There is no evidence that the interaction involved any threat or

14  violent act on the part of DAY.

15       Similarly, GIDDENS' alleged interactions with HUDSON consisted of HUDSON

16  allegedly making a comment to GIDDENS at a Sewer Board meeting that GIDDENS was

17  kicked out of the Air Force, and HUDSON allegedly making a statement about GIDDENS on

18  social media akin to "Why don't you go take your medication." (SUF 67)  Clearly, neither

19  HUDSON's alleged comments nor alleged statement on social media constituted a threat or

20  violent act against GIDDENS.  No liability can attach to Defendants under the Unruh Act.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**Selman Breitman** LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
2:14-cv-0943 TLN AC (PS)

376591.1 555.33710

1    V.    **CONCLUSION**

2         Based on the foregoing, Defendants CITY OF SUISUN CITY, SUISUN CITY

3    COUNCIL, SANCHEZ, DAY, HUDSON, SUISUN CITY POLICE DEPARTMENT,

4    DADISHO, MATTOS, WHITE, and URLAUB respectfully request that this court grant

5    Defendants' motion for summary judgment or, in the alternative, partial summary judgment.

6

7    DATED:  November 22, 2017                SELMAN BREITMAN LLP

8

9

10                                        By:   _*/s/ Gregg A. Thornton*_
                                               GREGG A. THORNTON
11                                             DANIELLE K. LEWIS
                                               Attorneys for Defendants
12                                             CITY OF SUISUN CITY, SUISUN
                                               CITY COUNCIL, MAYOR PEDRO
13                                             SANCHEZ, CITY COUNCIL
                                               MEMBERS JANE DAY and MIKE
14                                             HUDSON,  SUISUN CITY POLICE
                                               DEPARTMENT, POLICE CHIEF
15                                             EDMOND DADISHO, COMMANDER
                                               TIM MATTOS, SERGEANT
16                                             ANDREW WHITE, and OFFICER
                                               MICHAEL URLAUB
17

18

19

20

21

22

23

24

25

26

27

28

                                          30

Selman Breitman LLP
ATTORNEYS AT LAW

376591.1 555 33710