UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD GIDDENS,

                Plaintiff,

     v.

CITY OF SUISUN, et al.,

                Defendants.

No.  2:14-cv-00943 TLN AC (PS)

FINDINGS AND RECOMMENDATIONS

       Plaintiff is proceeding in this action pro se, and the case was accordingly referred to the undersigned by Local Rule 302(c)(21).  This matter is before the court on a motion for summary judgment brought by defendants City of Suisun, the Suisun City Council, Mayor Pedro Sanchez, City Council Members Jane Day and Mike Hudson, Suisun City Police Department, Police Chief Edmond Dadisho, Commander Tim Mattos, Sergeant Andrew White, and Officer Michael Urlaub ("public defendants").  ECF No. 107.  Plaintiff opposes the motion, ECF No. 108, and defendants submitted a reply, ECF No. 110.

## I.    Procedural Background

       The case proceeds on the operative Second Amended Complaint ("SAC"), ECF No. 39.  Nine causes of action remain against the moving defendants:  (1) Fourth Amendment, Unlawful Arrest, 42 U.S.C. § 1983, against defendants Dadisho, Mattos, White, and Urlaub; (2) Fourth Amendment, Excessive Force, 42 U.S.C. § 1983, against Mattos and Urlaub; (3) Deprivation of

1

1  First Amendment Rights, 42 U.S.C. § 1983, against Suisun City, Dadisho, and Urlaub; (4)

2  Supervisor (Monell) Liability, 42 U.S.C. § 1983 against Suisun City, City Council, Suisun City

3  Police Department, Sanchez, Dadisho, Mattos, and Urlaub; (5) Assault & Battery against Mattos

4  and Urlaub; (6) False Imprisonment/False Arrest against Mattos and Urlaub; (7) Intentional

5  Infliction of Emotional Distress against Mattos and Urlaub; (8) Negligent Infliction of Emotional

6  Distress against Mattos and Urlaub; and (9) Unruh Civil Rights Act against Suisun City, City

7  Council, Suisun City Police Department, Dadisho, Mattos, White, Day, and Hudson.  See ECF

8  No. 46 (Findings and Recommendations), ECF No. 48 (Order adopting Findings and

9  Recommendations).  The motion for summary judgment addresses all pending claims against the

10  public defendants.[1]

## II.    Standard for Summary Judgment

12  Summary judgment is appropriate when the moving party "shows that there is no genuine

13  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

14  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

15  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

16  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

17  moving party may accomplish this by "citing to particular parts of materials in the record,

18  including depositions, documents, electronically stored information, affidavits or declarations,

19  stipulations (including those made for purposes of the motion only), admissions, interrogatory

20  answers, or other materials" or by showing that such materials "do not establish the absence or

21  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

22  support the fact."  Fed. R. Civ. P. 56(c)(1).

23  "Where the non-moving party bears the burden of proof at trial, the moving party need

24  only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

25  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

---

[1] Claims also remain against Brandon Bluford, a private citizen who has not appeared and is not
party to the motion.  Default has been entered against Bluford, ECF No. 94, and petitioner's
motion for default judgment has been denied without prejudice to renewal upon final disposition
of all claims against the public defendants.  ECF No. 103.

2

1  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

2  motion, against a party who fails to make a showing sufficient to establish the existence of an

3  element essential to that party's case, and on which that party will bear the burden of proof at

4  trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

5  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

6  a circumstance, summary judgment should "be granted so long as whatever is before the district

7  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

8  56(c), is satisfied." Id.

9       If the moving party meets its initial responsibility, the burden then shifts to the opposing

10  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

11  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

12  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

13  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

14  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

15  Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

16  fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

17  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809

18  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

19  reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

20  In the endeavor to establish the existence of a factual dispute, the opposing party need not

21  establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed

22  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

23  truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities

24  Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce

25  the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

26  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

27       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

28  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

the opposing party's obligation to produce a factual predicate from which the inference may be

drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

U.S. at 289).

### III.    Evidentiary Challenges

Plaintiff submits several exhibits in support of his opposition to summary judgment, and

defendants object to four of them.  See ECF No. 110-2 (Objections).  Three exhibits are

challenged on grounds that they are not authenticated.  Specifically, defendants seek to exclude

consideration of Plaintiff's Exhibit C (a two page document entitled "Transcript of KCRA news

report, Man Taken Down By Police At Community Meeting") (ECF No. 108 at 66-69); Exhibit D

(three photographs that plaintiff offers to document his injuries) (id. at 70-73); and Exhibit E

(excerpt of the Reporter's Transcript in the matter of People of the State of California v. Richard

Giddens) (id. at 74-77) as unauthenticated.

"A trial court can only consider admissible evidence in ruling on a motion for summary

judgment," and authentication is required for admissibility.  Orr v. Bank of America, 285 F.3d

764, 773 (9th Cir. 2002).  The Ninth Circuit has "repeatedly held that unauthenticated documents

cannot be considered in a motion for summary judgment."  Orr, 285 F.3d at 773.  However, the

court will "not focus on the admissibility of the evidence's form [but] instead focus on the

admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  Thus,

evidence may be considered on summary judgment to the extent it could be made admissible at

trial.  Id.[2]  Accordingly, the court considers whether the disputed exhibits, though not formally

_____

[2]  See also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007)
(district court abused its discretion in not considering plaintiff's evidence at summary judgment,
"which consisted primarily of litigation and administrative documents involving another prison
and letters from other prisoners," where the evidence could be made admissible at trial through

4

authenticated, appear to be capable of authentication and thus could be made admissible at trial.

The transcript from plaintiff's criminal case appears to be genuine. Plaintiff has included a cover page indicating the case name and number, court, date of proceeding, appearances, and identity of the certified court reporter. ECF No. 108 at 75. This document is plainly capable of authentication and the objection is therefore overruled. The photographs at Exhibit D could also be easily authenticated. For purposes of summary judgment, the court accepts plaintiff's representations as a proffer of testimony that these are photographs of himself taken on the day after the alleged incident of excessive force. The undersigned recognizes plaintiff as the individual in the first photograph, id. at 71. Because the photos could be made admissible at trial, the objection to Exhibit D is also overruled.

The purported transcript of a local news broadcast, however, lacks not only formal authentication but any indicia of authenticity. The document does not appear to have been generated by KCRA or transcribed by a certified reporter. Id. at 67-69. A link to the KCRA website is provided as the "source" for the transcript, id. at 69, but the link is not currently active. Accordingly, this transcript is not capable of authentication and could not be made admissible at trial. Moreover, the transcript consists largely of inadmissible hearsay. For these reasons, the objection to Exhibit C is sustained.

Defendants also object to Exhibit A, the report of plaintiff's proffered expert witness, Timothy T. Williams, Jr. ("Williams Report"). Williams is offered as an expert in the areas of police procedures and use of force. Defendants object to the Williams Report to the extent it contains legal conclusions. Expert testimony, in general, exists to help the trier of fact understand evidence or determine a fact at issue. Fed. R. Evid. 702; Aguilar v. Int'l Longshoremen's Union Local # 10, 966 F.2d 443, 447 (9th Cir. 1992). Because Williams may qualify as an expert witness at trial, the objection is overruled. However, for purposes of summary judgment the undersigned will disregard any legal opinions or conclusions contained in the Williams Report.

_____

the other inmates' testimony). See Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

## IV.    Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.  The public defendants' statement of undisputed facts is located at ECF No. 107-2.  Plaintiff's responses are located at ECF No. 108 at 16-21.  The public defendants' reply is at ECF No. 110-1.

A.  Facts Related to The Arrest and Use of Force (Claims Involving Fourth Amendment Rights, False Arrest/Imprisonment, Assault and Battery, and Emotional Distress)

On April 18, 2012, Mattos was attending and speaking at a community meeting at the Joe Nelson Community Center.  Declaration of Timothy Mattos ("Mattos Decl.") at ¶ 4.  Dadisho, White, and Urlaub were in attendance at the meeting.  Declaration of Edmond Dadisho ("Dadisho Decl.") at ¶ 3; Declaration of Michael Urlaub ("Urlaub Decl.") at ¶ 3.  Plaintiff Richard Giddens also attended the meeting.  Deposition of Richard Giddens ("Giddens Depo.") at 23:18-25; 25:2-4; Urlaub Decl. at ¶ 3.

At approximately 7:43 p.m., Police Dispatch notified White that officers were investigating a report that Giddens had attempted to run down his neighbors with his vehicle.  Declaration of Andrew White ("White Decl.") at ¶ 5.  White understood this had occurred while Giddens was in route to the community meeting.  Id.  White contacted Officer David O'Brien, the investigating officer, via telephone to inform him that Giddens was at the meeting.  Id.  Officer O'Brien briefed White on the investigation and informed White that one of the victims, Brandon Bluford, requested that Giddens be place under citizen's arrest and that Mr. Bluford had signed a citizen's arrest form.  White Decl. at ¶ 6.  Officer O'Brien informed White that the probable cause to connect plaintiff to the vehicular assault with a deadline weapon, the crime connected to the alleged incident, was "very borderline."  Plaintiff's Exhibit E (testimony of White at plaintiff's criminal trial), ECF No. 108 at 77 ("White Testimony").  White understood that Bluford alleged Giddens had been driving his vehicle, had accelerated towards the victims, and that his victims

////

////

1    had to jump out of the way to avoid being hit. White Decl. at ¶ 6.[3] White briefed Dadisho and

2    Mattos regarding the incident. White Decl. at ¶ 7. White did not inform Mattos and Urlaub that

3    the probable cause connecting plaintiff to the crime of vehicular assault with a deadly weapon

4    was "very borderline." White Testimony, ECF No. 108 at 77. It was determined that Mattos and

5    Urlaub would contact Giddens and detain him if he left prior to Officer O'Brien's arrival. White

6    Decl. at ¶ 7; Dadisho Decl. at ¶ 4; Mattos Decl. at ¶ 4; Urlaub Decl. at ¶ 4.

7        Giddens remained at the meeting until it ended. Giddens Depo. at 32:19-20. After the

8    meeting concluded, Giddens exited the large conference room where the meeting was being held.

9    Id. at 36:23-37:10. As Giddens left the conference room, he was met by Mattos in the hallway.

10    Mattos stated that he would like to speak to Giddens. Id. at 37:11-14. Urlaub was in full Suisun

11    City Police Department Uniform and Mattos was in slacks, long sleeves and a tie, with his police

12    badge and handgun in plain sight. Urlaub Decl. at ¶ 5. Giddens was aware that Mattos and

13    Urlaub were police officers. Giddens Depo. at 45:17-46:11.

14        Mattos asked Giddens to "step over here." Giddens Depo. at 38:4-5. Mattos wanted to

15    have Giddens with a wall to his back to prevent Giddens from backing up and to eliminate a

16    potential escape route. Mattos Decl. at ¶ 7. Giddens refused to move toward the area that Mattos

17    indicated. Mattos Decl. at ¶ 7. Giddens was asked a second time to "step over here." Giddens

18    Depo. at 38:8-12. Mattos told Giddens that he was a police officer and that he was giving him a

19    lawful order to stop. Id. at 38:20-22. Giddens turned away and waked towards a television crew

20    and said "Hey News Media!" SAC at 7. Giddens was facing away from Mattos and Urlaub, and

21    walking back towards the large conference room. Giddens Depo. at 39:19-22; Mattos Decl. at ¶

22    7.

23        Urlaub attempted to walk in front of Giddens to prevent him from continuing to move

24    forward. Urlaub Decl. at ¶ 6. Mattos moved into a position in front of Giddens to prevent him

25

26    [3] Plaintiff objects to paragraphs 9-11 of the public defendants' statement of undisputed facts on the grounds that they are based on inadmissible hearsay. ECF No. 108 at 16. These objections

27    are overruled. The statements at issue are contained in sworn declarations, in which the declarants attested to what they personally did or said. These are not inadmissible hearsay

28    statements, they are proffers of admissible witness testimony. See Fed. R. Evid. 801, 802.

from re-entering the meeting area. Mattos Decl. at ¶ 8. Mattos placed both of his open hands on Giddens's chest area, grabbed a handful of Giddens's shirt, and pushed Giddens against the south wall of the hallway. Mattos Decl. at ¶ 8. Giddens's head hit the wall.[4] Mattos pulled Giddens towards him and downward, putting Giddens onto the ground. Mattos Decl. at ¶ 8. Once on the ground, Mattos attempted to gain control of Giddens's left arm. Mattos Decl. at ¶ 8. Mattos and Urlaub attempted to gain control of Giddens on the ground. White Decl. at ¶ 8, Dadisho Decl. at ¶ 5, Urlaub Decl. at ¶ 6. Giddens was moving and twisting around on the ground as Mattos and Urlaub were attempting to gain control of Giddens. Giddens Depo. at 50:10-13, White Decl. at ¶ 9, Urlaub Decl. at ¶ 6.

Mattos repeatedly told Giddens to give Mattos his arm, to put his arms behind his back, and to stop resisting. Mattos Decl. at ¶ 8. Urlaub attempted to put Giddens into a figure four leg lock to control Giddens's legs, help keep Giddens on his stomach, and gain control of Giddens's arms. Urlaub repeatedly told Giddens to "stop" and "stop resisting." Urlaub Decl. at ¶ 6. While on the ground, Mattos remained in a semi-cross body position and attempted to gain control of Giddens's arm. Mattos Decl. at ¶ 9. While Mattos and Urlaub were attempting to gain control of Giddens's arms, Giddens ignored commands and orders. Giddens moved his arms and legs away from Mattos and Urlaub. Urlaub Decl. at ¶ 6-7; Mattos Decl. at ¶ 8-9. Mattos and Urlaub were able to gain control of Giddens's arms and place Giddens in handcuffs. The handcuffs were checked for tightness and double-locked. Mattos Decl. at ¶ 9; Urlaub Decl. at ¶ 8.

Urlaub and Mattos put Giddens into their squad car and brought him to jail. After assessing his injuries, the jail refused to accept custody and sent Giddens to North Bay Hospital. SAC at 7. Giddens refused treatment because he did not want to pay for it; his insurance provided for treatment elsewhere. Id. at 7-8. Plaintiff was returned to jail and was bailed out the next morning. Id. at 8. Plaintiff then went to Travis Air Force Base Hospital Emergency Room and was medically examined. Id. He had photos taken of himself showing dried blood on his inner ear canal. Id. As a result of this incident, Giddens was put in a neck brace, sustained a

---

[4] As the court explains more fully below, the degree of force used by Mattos and the manner in which plaintiff's head hit the wall are disputed.

1  bruise on his knee, and had some blood on his ear.  Id., Giddens Exhibit D, ECF No. 108 at 71-

2  73.  As of the filing of the SAC, plaintiff remained under medical care for concussive symptoms

3  and emotional stress.  SAC at 8.

4      B.  Facts Related to First Amendment Claims

5          Giddens contends that Dadisho interfered with his First Amendment Rights at a City

6  Council meeting that occurred in November 2010 or November 2011.  Giddens Depo. at 78:12-

7  16; 80:24-81:1; 81:21-82:18.  Giddens remained at the City Council meeting after his interaction

8  with Dadisho.  Giddens Depo. at 84:20-23.  Giddens did not have any substantive interactions

9  with Dadisho aside from an interaction at a City Council meeting that occurred in November

10  2010 or November 2011.  Giddens Depo. at 83:25-84:19.  Giddens returned to City Council

11  meetings after the City Council meeting in November 2010 or November 2011.  Giddens Depo. at

12  84:24-85:2.

13          Giddens spoke at a public meeting on April 18, 2012, and remained until the end of the

14  meeting.  Giddens Depo at 23:18-25, 25:2-4, 29:19-21, 32:19-20.  Dadisho did not personally

15  interact with Giddens on April 18, 2012.  Dadisho Decl. at ¶ 7.  Dadisho's interactions with

16  others related to Giddens on April 18, 2012 were not in any way related to anything said by

17  Giddens at the community meeting.  Dadisho Decl. at ¶ 4-8.[5]  Giddens has attended City Council

18  meetings since April 2012.  Giddens Depo. at 92:19-93:17.  Urlaub's interactions with Giddens

19  on April 18, 2012 were not related in any way to anything said by Giddens at the public

20  community meeting.  Urlaub Decl. at ¶ 3-9.

21      C.  Facts Related to Alleged Monell Liability

22          Giddens has not identified any specific unlawful policy or procedure of the Suisun City

23  _____

24  [5]  Giddens responds to the public defendants' statement of undisputed facts at paragraphs 49-50,
    52-56, and 58-68 by noting that he cannot "admit or deny" the "alleged undisputed fact" because
    the defendants have refused to comply with his discovery requests.  ECF No. 108 at 19-21.

25  Discovery in this matter was closed on November 1, 2017.  ECF No. 102.  Because this response

26  does not actually dispute the proposed undisputed fact, and because plaintiff cannot succeed on
    summary judgment by merely suggesting there is theoretical doubt as to material facts, the court

27  reads these responses as non-opposition to the public defendants' corresponding proposed
    material facts.  See, City of Long Beach v. Standard Oil Co. of California, 872 F.2d 1401, 1404

28  (9th Cir.), opinion amended on denial of reh'g, 886 F.2d 246 (9th Cir. 1989).

9

Police Department.  Giddens Depo. at 85:3-86:23.  During the relevant time period, Pedro

Sanchez did not possess any final authority to establish municipal policy with respect to the

Suisun City Police Department.  Declaration of Pedro Sanchez ("Sanchez Decl.") at ¶ 2-3.

Councilmembers Day and Hudson did not possess any final authority to establish municipal

policy with respect to the Suisun City Police Department.  Declaration of Michael Hudson

("Hudson Decl.") at ¶ 3, Declaration of Jane Day ("Day Decl.") at ¶ 3.  Dadisho, Mattos, and

White did not possess final authority to establish municipal policy with respect to the Suisun City

Police Department.  Dadisho Decl. at ¶ 6, Mattos Decl. at ¶ 3, White Decl. at ¶ 3.  Sanchez was

not present at the Joe Nelson Community Center on April 18, 2012.  He did not provide any

direction or instruction regarding the detention or arrest of Giddens to anyone affiliated with the

Suisun City Police Department.  Sanchez Decl. at ¶ 4.

    D.  <u>Facts Related to Unruh Civil Rights Act Claim</u>

       Giddens has not been asked about his political affiliation by anyone at Suisun City.

Giddens Depo. at 88:20-22.  Dadisho never had knowledge of Giddens's political affiliation.

Dadisho Decl. at ¶ 9, Giddens Depo. at 91:4-9.  Dadisho's interactions with Giddens have never

been motivated by Giddens's political affiliation.  Dadisho Decl. at ¶ 9.  Mattos has never had any

knowledge of Giddens's political affiliation.  Mattos Decl. at ¶ 12, Giddens Depo. at 90:17-91:3.

Mattos's interactions with Giddens have never been motivated by Giddens's political affiliation.

Mattos Decl. at ¶ 12.  White has never had any knowledge of Giddens's political affiliation.

White Decl. at ¶ 11.  White's interactions with Giddens have never been motivated by Giddens's

political affiliation.  White Decl. at ¶ 11.

       Day has never had any knowledge of Giddens's political affiliation.  Day Decl. at ¶5,

Giddens Depo. at 90:17-20.  Giddens's alleged interaction with Day occurred at a City Council

meeting in November 2010 or November 2011.  Giddens Depo. at 78:22-79:25, 80:23-81:1,

83:10-18.  Day's interactions with Giddens have never been motivated by Giddens's political

affiliation.  Day Decl. at ¶ 5.

       Giddens's alleged interactions with Hudson consisted of Hudson allegedly making a

comment to Giddens at a Sewer Board meeting that Giddens was kicked out of the Air Force, and

Hudson allegedly making a statement about Giddens on social media akin to "Why don't you go

take your medication." Giddens Depo. at 93:20-94:22. Hudson's interactions with Giddens have

never involved or been motivated by Giddens's political affiliation. Hudson Decl. at ¶ 5.

**V.     Analysis**

A. Claim One: Unlawful Arrest In Violation of the Fourth Amendment

The public defendants move for summary judgment on the grounds of qualified immunity

and on the merits. See ECF No. 107-1 at 17-28. Government officials are immune "from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold

public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably."

Pearson v. Callahan, 555 U.S. 223, 231 (2009). Ideally, qualified immunity is determined at the

earliest possible stage in litigation to avoid unnecessary burden and expense. Hunter v. Bryant,

502 U.S. 224, 227 (1991) (per curiam).

In Saucier v. Katz, the Supreme Court set forth a two-step inquiry for determining

whether qualified immunity applies. 533 U.S. 194, 201 (2001) (overruled in part by Pearson, 555

U.S. 223). First, a court must ask, "[t]aken in the light most favorable to the party asserting the

injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id.

Second, if the answer to the first inquiry is "yes," the court must ask whether the constitutional

right was "clearly established." Id. This second inquiry is to be undertaken in the specific

context of the case. Id. In Pearson v. Callahan, the Supreme Court removed any requirement that

the Saucier test be applied in a rigid order, holding "[t]he judges of the district courts and the

courts of appeals should be permitted to exercise their sound discretion in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

Here, it is clear from the uncontroverted facts that officers Dadisho, Mattos, White, and

Urlaub did not violate plaintiff's rights by arresting him, ending this court's qualified immunity

1  inquiry at the first prong.  The Fourth Amendment to the U.S. Constitution protects individuals,

2  in relevant part, from unlawful arrest.  U.S. Const. amend.  IV.  It is well established that "an

3  arrest without probable cause violates the Fourth Amendment and gives rise to a claim for

4  damages under § 1983."  Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988).  An officer

5  who makes an arrest without probable cause, however, may be entitled to qualified immunity if

6  he reasonably believed there to have been probable cause.  See Ramirez v. City of Buena Park,

7  560 F.3d 1012, 1024 (9th Cir. 2009).

8  When analyzing a claim of unlawful arrest to see if qualified immunity applies, a court

9  looks to a two pronged test:  "(1) whether there was probable cause for the arrest; and (2) whether

10  it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable

11  officers could disagree as to the legality of the arrest such that the arresting officer is entitled to

12  qualified immunity."  Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011).

13  Probable cause for a warrantless arrest exists when "the facts and circumstances within [an

14  officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has

15  committed a crime."  Id.

16  In California, private individuals may arrest another for offenses committed or attempted

17  in their presence.  Cal. Penal Code § 837.  "A private person making a citizen's arrest need not

18  physically take the suspect into custody, but may delegate that responsibility to an officer, and the

19  act of arrest 'may be implied from the citizen's act of summoning an officer, reporting the

20  offense, and pointing out the suspect.'"  Meyers v. Redwood City, 400 F.3d 765, 772 (9th Cir.

21  2005) (quoting Padilla v. Meese, 184 Cal. App. 3d 1022, 1030-31 (1986)).  An officer who makes

22  an arrest pursuant to a citizen's complaint is not subject to liability for false arrest or false

23  imprisonment.  Cal. Penal Code § 847(b)(3).  "California courts have held that . . . an officer

24  cannot be sued civilly if he makes the arrest and, it turns out, there were no grounds for the

25  citizen's arrest."  Meyers, 400 F.3d at 772-73 (citing Kinney v. County of Contra Costa, 8 Cal.

26  App. 3d 761, 768–69 (1970) and Shakespeare v. City of Pasadena, 230 Cal. App. 2d 375, 382

27  (1964)).

28  ////

12

1    Here, Dadisho, Mattos, White, and Urlaub had probable cause to effectuate the arrest of

2    Mr. Giddens because they were doing so pursuant to a citizen's arrest. White Decl. at ¶ 6-7.

3    Because the officers acted with probable cause to arrest Giddens, they did not violate Giddens's

4    Fourth Amendment protection from unlawful arrest. Having committed no constitutional

5    violation, the public defendants are entitled to qualified immunity. It is recommended that

6    judgment be entered in favor of the public defendants as to plaintiff's First Cause of Action.

7        B.   Claim Two: Use of Excessive Force in Violation of the Fourth Amendment

8        Plaintiff alleges that defendants Mattos and Urlaub used excessive force, in violation of

9    his Fourth Amendment rights, while executing his arrest. "An objectively unreasonable use of

10   force is constitutionally excessive and violates the Fourth Amendment's prohibition against

11   unreasonable seizures." Torres v. City of Madera, 648 F.3d 1119, 1123-24 (9th Cir. 2011), cert.

12   denied, 132 S. Ct. 1032 (2012). The Fourth Amendment requires police officers making an arrest

13   to use only an amount of force that is objectively reasonable in light of the circumstances facing

14   them. Tennessee v. Garner, 471 U.S. 1, 7–8 (1985). Excessive force cases often turn on

15   credibility determinations, and "[the excessive force inquiry] 'nearly always requires a jury to sift

16   through disputed factual contentions, and to draw inferences therefrom.'" Smith v. City of

17   Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (alteration in original) (quoting Santos v. Gates, 287

18   F.3d 846, 853 (9th Cir. 2002)). Therefore, "'summary judgment or judgment as a matter of law

19   in excessive force cases should be granted sparingly.'" Id. The Ninth Circuit has "held

20   repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."

21   Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

22       In evaluating a claim of excessive force, a court must balance the "nature and quality of

23   the intrusion" against the "countervailing government interests at stake." Graham v. Connor, 490

24   U.S. 386, 396 (1989) (citations omitted). Factors to be considered in assessing the government

25   interests include, but are not limited to, "the severity of the crime at issue, whether the suspect

26   poses an immediate threat to the safety of the officers or others, and whether he is actively

27   resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. When

28   determining whether officers are entitled to qualified immunity in an excessive force case, the

13

inquiry is whether "under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable." Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004) (quoting Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003)). If the pertinent circumstances are disputed, summary judgment on qualified immunity grounds is not appropriate.

Here, though many facts regarding Giddens's arrest are undisputed, others remain in dispute. While it is undisputed that Giddens was resisting arrest, [6] the reasonableness of the force used to subdue him necessarily depends on the degree of his physical resistance, which is not capable of determination on the basis of dueling declarations. The manner in which Giddens's head hit the wall, most significantly including whether or not Mattos "slammed" it, is also disputed. In his verified complaint,[7] plaintiff states that Mattos "grabbed" him, "slammed his head into the wall with great force, causing head trauma" and then "threw" plaintiff to the ground. SAC at 7. Mattos's declaration is silent as to any impact of plaintiff's head against the wall; he neither denies "slamming" it nor provides an alternate account. Mattos Decl. at ¶ 8. Plaintiff asserts that blood filled his left inner ear immediately upon impact with the wall, and that he repeatedly screamed "what are you doing?! Stop it, you're hurting me!" while the officers yelled "stop resisting!" SAC at 7. Plaintiff has provided photographic evidence of his injuries, although neither the extent of those injuries or their cause cannot be inferred from the photographs.

Because neither the degree of plaintiff's physical resistance nor the degree of force used against him can be determined without resolving credibility issues, the Fourth Amendment reasonableness inquiry must be undertaken by a jury. Defendants are not entitled to summary

---

[6] As previously noted, it is undisputed that Giddens was aware that Urlaub and Mattos were police officers (Giddens Depo. at 45:17-46:11) and that Giddens did not comply when Mattos asked Giddens, multiple times, to "step over here." Giddens Depo. at 38:4-8; Mattos Decl. at ¶ 7; Urlaub Decl. at ¶ 5. Giddens does not dispute that Mattos placed both of his open hands on Giddens's chest area, grabbed a handful of Giddens's shirt, and pushed Giddens against the South wall of the hallway. Mattos Decl. at ¶ 8; Urlaub Decl. at ¶ 5. Giddens does not dispute that he was moving and twisting around on the ground as Mattos and Urlaub were attempting to gain control of him. Giddens Depo. at 50:10-13; White Decl. at ¶ 9; Urlaub Decl. at ¶ 5.

[7] Because the complaint is verified, its allegations regarding matters within plaintiff's personal knowledge are treated here as an affidavit. Moran v. Selig, 447 F.3d 748, 760, n. 16 (9th Cir. 2006).

1  judgment based on qualified immunity or on the merits.[8]

2      C. Claim Four: Violation of First Amendment Rights

3          Plaintiff claims that Dadisho, the City, and Urlaub violated his First Amendment right to

4  free speech.  SAC at 23.  He alleges that Dadisho and/or the Suisun City Council had police

5  officers come to City Council hearings to intimidate him when he spoke, creating a chilling effect

6  on his First Amendment rights.  Id.  In order to demonstrate a First Amendment violation, a

7  plaintiff must provide evidence showing that by his actions the defendant deterred or chilled the

8  plaintiff's political speech and such deterrence was a substantial or motivating factor in the

9  defendant's conduct.  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.

10 1999).  This standard requires only a demonstration that defendants *intended* to interfere with

11 plaintiff's First Amendment rights.  Id.  "Because it would be unjust to allow a defendant to

12 escape liability for a First Amendment violation merely because an unusually determined plaintiff

13 persists in his protected activity, we conclude that the proper inquiry asks 'whether an official's

14 acts would chill or silence a person of ordinary firmness from future First Amendment

15 activities.'"  Id. (quoting Crawford–El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996), vacated on

16 other grounds, 520 U.S. 1273 (1997)).

17         Plaintiff's evidence falls far short of establishing a First Amendment violation.  Giddens's

18 assertion in his SAC that Dadisho once approached him  and asked him to leave a meeting, and

19 that following this interaction more police officers attended City Council meetings, does not

20 demonstrate, or support a reasonable inference, that any defendant intended to chill plaintiff's

21 political speech.  SAC at 18.  Likewise, Hudson's two insults do not constitute action that would

22 "silence a person of ordinary firmness" from future speech.  Id.  Even drawing all permissible

23

24 [8]  See Hauck v. Walker, 651 F. App'x 576, 577 (9th Cir. 2016) (reversing a grant of summary
   judgment because questions of material fact existed, finding "Hauck provided evidence that
25 Walker slammed her head into the ground using the full weight of his body when she turned
   toward him while being escorted to the patrol car and that she was not attempting to spit on him.
26 Accordingly, Hauck raised a genuine dispute of material fact as to whether Walker's actions were
   objectively unreasonable.").  See Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions
27 may be cited not for precedent but to indicate how the Court of Appeals may apply existing
28 precedent).

1  inferences in plaintiff's favor, no reasonable jury could conclude from the negative remarks some

2  City officials have made about plaintiff that police officers were deployed at City Council

3  meetings for the purpose of intimidating and silencing him.

4       Having committed no constitutional violation, the public defendants are entitled to

5  qualified immunity.  See Pearson, 555 U.S. at 236.  Even if qualified immunity did not apply,

6  defendants would be entitled to summary judgment on grounds that plaintiff has failed to present

7  evidence to support an essential element of his claim.  See Celotex, 477 U.S. at 325.

8       D. Claim Seven: Supervisor/Monell Liability

9       Plaintiff alleges that defendants Suisun City, Suisun City Council, the Police Department

10  of Suisun City, Dadisho, Mattos, and White "possessed the power and authority to adopt policies

11  and prescribe rules, regulations, and practices affecting the operation of Suisun City Government

12  and Police[.]"  SAC at 27.  Plaintiff alleges that the defendants knowingly promulgated,

13  maintained, and applied policies and practices in violation of the First, Fourth, Fifth, Ninth,

14  Tenth, and Fourteenth Amendments to the U.S. Constitution.  SAC at ¶ 193.

15       Because section 1983 does not provide for vicarious liability, local governments "may not

16  be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. Dep't

17  of Soc. Servs. of New York, 436 U.S. 658, 694 (1978).  Instead, local government entities can be

18  directly liable under § 1983 for monetary, declaratory, or injunctive relief only if the allegedly

19  unconstitutional actions were taken pursuant to a "policy statement, ordinance, or decision

20  officially adopted and promulgated by that body's officers" under what is known as Monell

21  liability.  Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1171 (E.D. Cal. 2005) (quoting Monell,

22  436 U.S. at 659, 690-91).  Alternatively, local government entities can be liable for adopting an

23  unconstitutional custom, even if such custom has not received formal approval through the body's

24  official decision-making channels.  Id.  A single decision by a municipal policymaker may be

25  sufficient to trigger section 1983 liability under Monell, but only where the policymaker has final

26  authority to establish municipal policy with respect to the action ordered.  Gillette v. Delmore,

27  979 F.2d 1342, 1347 (9th Cir.1992).

28  ////

16

1    Here, plaintiff has not identified any particular policy or practice that he believes is

2    unlawful, and he has not tendered evidence that any defendant in this case has final policy making

3    authority.  Plaintiff's failure of proof on essential elements of this claim entitles defendants to

4    summary judgment on this claim.  See Celotex, 477 U.S. at 325.

5        E.  Claim Nine: Assault and Battery

6        Plaintiff claims that Mattos and Urlaub committed assault and battery against him by their

7    use of unreasonable force when attempting to arrest him.  SAC at 30-31.

8              Assault and battery are defined in the California Penal Code.
             Assault is the 'unlawful attempt, coupled with a present ability, to
9             commit a violent injury on the person of another.'  Cal. Penal Code
             § 240.  'A battery is any willful and unlawful use of force or
10            violence upon the person of another.'  Cal. Penal Code § 242.

11   Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007).

12       Under California law, "a prima facie battery is not established unless and until plaintiff

13   proves unreasonable force was used."  Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273

14   (1998).  In Edson, the California court explicitly recognized that actions under § 1983 in arrest

15   cases are the federal counterpart to state battery claims.  Id. at 1274.  Because summary judgment

16   is not appropriate on plaintiff's constitutional excessive force claim, discussed above, plaintiff's

17   assault and battery claim should also be allowed to proceed to trial.

18       F.  Claim Ten: False Imprisonment/False Arrest

19       Plaintiff claims Mattos and Urlaub wrongfully arrested him.  SAC at 31.  As discussed

20   above, when an officer executes an arrest pursuant to a citizen's arrest, the officer "cannot be

21   sued civilly if he makes the arrest and, it turns out, there were no grounds for the citizen's arrest."

22   Meyers, 400 F.3d at 772-73.  California law expressly provides that an officer who makes an

23   arrest pursuant to a citizen's complaint is not subject to liability for false arrest or false

24   imprisonment.  Cal. Penal Code § 847(b)(3).  Accordingly, defendants are entitled to judgment as

25   a matter of law on this claim.

26       G.  Claim Thirteen: Intentional Infliction of Emotional Distress

27       Plaintiff contends officers Mattos and Urlaub intentionally inflicted emotional distress

28   upon him by wrongly arresting him and using excessive force.  SAC at 32.  The elements of a

17

1  prima facie claim for intentional infliction of emotional distress are as follows: "(1) extreme and

2  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

3  probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

4  distress; and (3) actual and proximate causation of the emotional distress by the defendant's

5  outrageous conduct." Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982) (citations

6  omitted). For conduct to be outrageous, it "must be so extreme as to exceed all bounds of that

7  usually tolerated in a civilized community." Id.

8      Defendants argue that because plaintiff cannot establish a Fourth Amendment violation,

9  this claim also fails. ECF No. 107-1 at 36 ("When an officer's actions incident to the plaintiff's

10  arrest are reasonable as a matter of law, the plaintiff cannot establish that the officer engaged in

11  extreme or outrageous conduct."). Defendants make no arguments regarding the state of the

12  evidence related to plaintiff's mental state or the causation of his alleged emotional distress. Id.

13  Because defendants' are not entitled to summary judgment on plaintiff's excessive force claim for

14  the reasons previously explained, their motion fails as directed to this claim.

15      H. Claim Fourteen: Negligent Infliction of Emotional Distress

16      Plaintiff alleges Mattos and Urlaub negligently inflicted emotional distress upon him by

17  their actions in arresting him. SAC at 32-33. California does not recognize an independent cause

18  of action for the negligent infliction of emotional distress. The California Supreme Court "[has]

19  repeatedly recognized that the negligent causing of emotional distress is not an independent tort,

20  but the tort of negligence." Burgess v. Superior Court, 2 Cal.4th 1064, 1072 (1992) (internal

21  citations and quotations omitted).

22      The elements of a cause of action for negligence are well established. They are: (1) a

23  legal duty to use due care; (2) a breach of such legal duty; and (3) the breach is the proximate or

24  legal cause of the resulting injury. Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996); see

25  also Truong v. Nguyen, 156 Cal. App. 4th 865, 875 (2007). "The existence of a duty is the

26  threshold element of a negligence cause of action." Friedman v. Merck & Co., 107 Cal. App. 4th

27  454, 463 (2003). "The determination of duty is a question of law." Hall v. Superior Court, 108

28  Cal. App. 4th 706, 711 (2003).

18

1    Defendants' sole argument for summary judgment is that plaintiff cannot establish a

2    breach of duty because the undisputed facts demonstrate that the officers' conduct was lawful and

3    justified. ECF No. 107-1 at 37. While the court agrees that the arrest was lawful, as discussed

4    above, the degree of force used to effect the arrest cannot be deemed reasonable as matter of law

5    because the material facts are in dispute. Accordingly, defendants' motion fails as to this claim.

6        I.   Claim Fifteen: Unruh Civil Rights Act

7            Plaintiff brings a claim under California's Unruh Civil Rights Act against Suisun City,

8    City Council, Suisun City Police Department, Dadisho, Mattos, White, Day, and Hudson. SAC at

9    35. The court has already construed this claim to be based solely on Giddens's political

10   affiliation. ECF No. 48 at 2.

11           California Civil Code § 51.7, the Unruh Civil Rights Act, codifies the "right to be free

12   from any violence, or intimidation by threat of violence, committed against their persons or

13   property because of political affiliation[.]" Plaintiff has not presented evidence that any of the

14   defendants were aware of his political affiliation, let alone discriminated against him because of

15   it. Each of the public defendants has testified that they were never made aware of Giddens's

16   political affiliation and have never taken action against Giddens motivated by his political

17   affiliation, and Giddens has confirmed that he did not inform the defendants of his political

18   affiliation. Giddens Depo. at 88:20-22, 90:17-91:3, 91:4-9; Dadisho Decl. at ¶ 9; Mattos Decl. at

19   ¶ 12; White Decl. at ¶ 11; Day Decl. at ¶ 5; Hudson Decl. at ¶ 5. In light of these facts, it is clear

20   that no reasonable jury could find that Giddens suffered violence, intimidation, or threats from

21   defendants due to his political affiliation. Defendants are entitled to summary judgment on this

22   claim.

23                                    **VI.    Conclusion**

24           Accordingly, for the reasons explained above, IT IS RECOMMENDED that the public

25   defendants' motion for summary judgment (ECF No. 107) be GRANTED IN PART and

26   DENIED IN PART as follows:

27       1.  GRANTED as to Claims One (Fourth Amendment Unlawful Arrest), Four (First

28           Amendment), Seven (Monell), Ten (False Arrest/Imprisonment) and Fifteen (Unruh Civil

                                            19

Rights Act);

2.  DENIED as to Claims Two (Fourth Amendment Excessive Force), Nine (Assault and Battery), Thirteen (Intentional Infliction of Emotional Distress) and Fourteen (Negligent Infliction of Emotional Distress) against Defendants Mattos and Urlaub; and

3.  Defendants Dadisho, White, Sanchez, Day, Hudson, the City, the City Council and the Police Department should be terminated from this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: February 2, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE